Robert P. Goe - State Bar No. 137019
Donald W. Reid – State Bar No. 281743
Charity J. Miller – State Bar No. 286481
**GOE & FORSYTHE, LLP**
18101 Von Karman Avenue, Suite 1200
Irvine, CA 92612
rgoe@goeforlaw.com
dreid@goeforlaw.com
cmiller@goeforlaw.com
Telephone:  (949) 798-2460
Facsimile:   (949) 955-9437

Proposed Counsel for Debtor and Debtor in Possession
Russel Dennis Hiles, III

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>RUSSEL DENNIS HILES, III,<br><br>    Debtor and Debtor-in-Possession. | Case No. 6:16-bk-16877-WJ<br>Chapter 11 Proceeding<br><br>**ERRATA RE DEBTOR'S NOTICE OF MOTION AND MOTION FOR AUTHORITY TO:**<br>**(1) EMPLOY CONCIERGE AUCTIONS, LLC TO AUCTION DEBTOR'S PROPERTY (66876 Gist Rd., Bend, OR 97703) AND PAYMENT OF MARKETING FEES AND AUCTIONEER FEES (BUYERS PREMIUM);**<br>**(2) EMPLOY CASCADE SOTHEBY'S INTERNATIONAL REALTY AS REAL ESTATE BROKER;**<br>**(3) SELL THE PROPERTY AT AUCTION SUBJECT TO COURT APPROVAL AND ALLOWING ACCEPTANCE OF BACK-UP BIDDERS;**<br>**(4) ESTABLISH BIDDING PROCEDURES;**<br>**(5) SCHEDULE HEARING DATE FOR APPROVAL OF AUCTION;**<br>**(6) PAY SECURED CREDITOR, PROPERTY TAXES, AND CLOSING COSTS; AND**<br>**(7) APPROVE OF SALE FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. SECTION 363(f)**<br>**DECLARATIONS OF RUSSEL D. HILES, LAURA BRADY, AND BOBBY LOCKREM IN SUPPORT THEREOF**<br><br>**Hearing**:<br>Date:       September 13, 2016<br>Time:       1:00 p.m.<br>Ctrm:       304 |

1

**TO THE HONORABLE WAYNE JOHNSON, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE AND ALL CREDITORS:**

**PLEASE TAKE NOTICE** that Debtor and Debtor-in-Possession, Russel Dennis Hiles, III ("Debtor"), filed his *Motion* with the Court for an Order for authority to: (1) employ Concierge Auctions, LLC ("Concierge") to auction Debtor's property located at 66876 Gist Rd., Bend, OR 97703 ("Property") and authorize payment of marketing fees and auctioneer fees (buyers premium) pursuant to that certain Auction Marketing Agreement dated as of August 16, 2016; (2) employ Cascade Sotheby's International Realty ("Sotheby's") as real estate broker; (3) sell the Property at auction subject to Court approval and allowing acceptance of back-up bidders; (4) establish bidding procedures; (5) schedule hearing date for approval of auction results; (6) pay secured creditor, property taxes, and closing costs; and (7) Approve of sale free and clear of liens pursuant to 11 U.S.C. Section 363(f) ("Motion") as Docket No. 32, which **Exhibit "2"** was incomplete.

Attached hereto is the correct **Exhibit "2"** to the Motion.

DATED: August 22, 2016            **GOE & FORSYTHE, LLP**

By: /s/Robert P. Goe
    Robert P. Goe
    Proposed Attorneys for Russel Dennis
    Hiles, III, Debtor and Debtor-in-Possession

# EXHIBIT 2

# EXHIBIT 2

# CONCIERGE AUCTIONS



This Auction Marketing Agreement (this "Agreement") is effective as of August 11, 2016 between Concierge Auctions, LLC, a Florida limited liability company, with offices at 405 Lexington Avenue, 26th Floor, New York, NY 10174, 212-202-2940 ("Concierge"), and Russel D. Hiles, whose address is 155 Metate Place, Palm Desert, CA 92260 ("Owner"). The Auction Date shall be October 13, 2016 at approximately 6:00 p.m., unless modified by Concierge, and the Auction shall be conducted through Concierge's mobile bidding application.

The Parties acknowledge that Owner has filed for bankruptcy protection and is a Chapter 11 debtor in possession of the Property and further agree that this Agreement and Concierge's professional employment and compensation are subject to approval by the U.S. Bankruptcy Court for the Central District of California and Owner agrees to use best efforts, at its sole expense, promptly to obtain such approval. Concierge shall have the prior right to approve any application for employment filed with such court, in its reasonable discretion.

The "Property" is described as follows: 66876 Gist Road, Bend, Oregon 97703. Unless Owner notifies Concierge otherwise in writing, the Property shall be offered for sale <u>unfurnished</u> in its current condition.

**Auction Method:**

The Auction shall be conducted without reserve. Owner shall be obligated to sell the Property to the highest bidder, regardless of price.

**Engagement Fee:**

The "Engagement Fee" in the amount of $35,000, shall be due and payable by Owner to Concierge upon closing of the sale of the Property.

**Existing Mortgages/Liens on the Property:**

| Description | Lender | Balance |
|---|---|---|
| First Mortgage | Bank of America | +/- $800,000 |

**Opening Bids:**

Owner agrees to provide a 5% credit of the amount of any opening bid to any bidder that submits a pre-auction opening bid, assuming that such opening bidder is the winning bidder at the Auction. This opening bidder incentive shall be applied at closing of the sale of the Property as a credit from Owner to such Buyer against the purchase price for the Property.

Concierge Auctions, LLC

By: Laura Brady
Its: President

Owner:

Name: Russel D. Hiles, Chapter 11 debtor in possession

By signing above, Owner and Concierge agree to be bound by the terms and conditions of this Agreement on the following pages, and any related documents and addenda, all of which form the Agreement between Concierge and Owner. In the event of any inconsistency or conflict between the terms contained on this face page of the Agreement and the attached terms and conditions (as amended), this face page shall control.

1. **Engagement.** Owner engages Concierge on an exclusive basis to market the Property for sale via auction (the "Auction"). The Property will be offered for sale by the Owner's listing agent on an "AS-IS, WHERE IS AND WITH ALL FAULTS" basis.

2. **Services of Concierge.** Concierge will use commercially reasonable efforts to market the Property for Auction. Concierge may change the Auction Date by up to 30 days and Concierge will promptly notify Owner of any such change. Concierge agrees to provide written notice of pre-auction opening bids to Owner prior to commencement of the Auction. Concierge will have the right, in its sole discretion, to decline the registration of any potential bidder for the pre-auction or Auction, or to include potential bidders with whom it has a past business relationship without requiring pre-Auction deposits.

3. **Duties of Owner.** Owner agrees to cooperate with Concierge in all ways consistent with this Agreement and in connection with the Auction of the Property. Owner will provide Concierge, its agents, the listing broker and potential bidders with access to the Property at all reasonable times. Owner will maintain the Property to a standard consistent with luxury homes, and will, at its expense, timely complete any necessary repairs (as a result of damages occurring during the term of this Agreement) and maintenance to the Property. Owner will convey fee simple, insurable title to the Property by appropriate deed if the Property is sold. Owner shall immediately remove or clear any title defects or other monetary liens not previously disclosed to Concierge, if they may impact a sale of the Property. Owner will promptly notify Concierge of any inquiries regarding the Auction, and will instruct such person(s) to contact Concierge. The Owner will not allow the Property to become subject to any mortgages, liens or encumbrances other than those listed herein. Owner will not enter into any agreement to sell any portion of the Property, or grant any person the right to acquire any portion of the Property or any interest in the Property, except under this Agreement. Owner agrees to take such other actions and execute such documents consistent with the terms of this Agreement as may be reasonably requested by Concierge to conduct the Auction and to complete the sale of the Property. Owner may not bid, or instruct, or permit any other person to bid on his/her/its behalf, for the Property.

If the Property is sold at the Auction, Owner will immediately execute a contract substantially in the form delivered by Concierge and/or prepared by the state's realtor's association or similar entity and any required addenda (the "Purchase and Sale Contract") with the winning bidder (or any backup bidder) to sell the Property at the Auction price. If Concierge has received pre-Auction bids, at Concierge's request, Owner agrees to execute a Purchase and Sale Contract with the opening bidder on or before the Scheduled Auction Date; provided that any such Pre-Auction Purchase and Sale Contract will only be released if there is no higher bid at the Auction. In connection with the sale of the Property, Owner shall pay all costs associated with title and title insurance and Buyer shall pay all other costs associated with the transfer of the Property.

4. **Representations of Owner.** Owner represents and warrants to Concierge that: (i) Owner has full power and authority to execute this Agreement and to consummate the transactions contemplated by this Agreement, which is a valid and binding agreement of Owner, enforceable against Owner in accordance with its terms; (ii) Owner has good and marketable fee simple title to the Property, free and clear of all liens, claims and/or encumbrances or limitations of any nature except as set forth herein; (iii) Owner has not caused any work or improvements to be performed upon the Property for which there remains outstanding any obligation that could serve as the basis for any lien or encumbrance; and (iv) no litigation or proceeding is pending which could affect title to the Property.

5. **Compensation to Concierge.** In addition to the Engagement Fee, Concierge will receive as compensation for its services, a buyer's premium equal to the greater of: (i) ten percent (10%) of either (a) the high bid for the Property at Auction, or (b) the accepted purchase price of the Property if sold outside of Auction, or (ii) $175,000.00 (the "Buyer's Premium"). The successful bidder will be required to pay the Buyer's Premium to Concierge if the Property is sold at Auction and the Buyer's Premium shall be deemed earned upon the conclusion of the Auction. Owner acknowledges and agrees that Capstone Title shall hold any bidder deposits and that the Buyer's Premium shall be disbursed to Concierge by Capstone Title upon closing. In the event that the Property is sold prior to the Auction, Owner will be obligated to pay Concierge the Buyer's Premium. In the event that the Property is not sold at the Auction (or the Auction is cancelled and this Agreement is terminated) and is contracted to be sold or otherwise transferred by Owner during the one hundred and twenty (120) day period after the expiration of this Agreement, Owner will be obligated to pay Concierge the Buyer's Premium. A sale or transfer of the Property shall include any long-term lease or other form of conveyance intended to accomplish the equivalent of a sale of the Property. After execution by Owner and buyer of a Purchase and Sale Contract, if the sale of the Property does not close due to the intentional actions of Owner or its agents or assigns, Owner shall pay Concierge the Buyer's Premium as if the Property had sold for the contracted sale price. Owner shall be obligated to provide Concierge with a copy of the Purchase and Sale Contract.

If Owner elects to sell the Property after the date of execution of this Agreement but before the Auction, Owner agrees that the terms of such sale shall be substantially similar to the Purchase and Sale Contract. At a minimum the offer shall be an "as is" sale with no contingencies or conditions, requiring a minimum 10% cash deposit from such buyer and closing no later than 60 days after acceptance, as long as such terms are acceptable based on applicable real estate laws and regulations. Seller further agrees and acknowledges that Concierge shall be entitled to its full compensation from Owner as set forth in this Section 5.

The Buyer's Premium shall be reflected on any settlement statement issued for the Property regardless of who is paying the Buyer's Premium and regardless of whether the Property is sold at Auction or otherwise. Owner hereby authorizes Concierge to provide the title company and/or settlement agent a breakdown of all fees and commissions to be paid, and by whom. Owner also authorizes the title company and/or settlement agent to provide Concierge with a copy of the settlement statement for the Property.

6. **Buyer Default.** In the event that Owner enters into any contract for the sale of the Property for which Concierge would be entitled to the Buyer's Premium, and the buyer defaults, then Concierge and Owner each will be entitled to receive 50% of any deposit made by the buyer under the Purchase and Sale Contract (or any other amounts collected from the buyer). In addition, Concierge shall have the right at no additional cost, in its sole discretion, to conduct another auction of the Property at any time within the 60-day period after Owner provides written notice to Concierge of Buyer's default. Notwithstanding the foregoing, Concierge shall have no obligation to initiate legal action or otherwise to pursue any action to enforce buyer's obligations under the Purchase and Sale Contract.

7. **Expenses.** Each of the parties will pay all expenses it incurs in connection with its performance under this Agreement, except as otherwise provided in this Agreement. Concierge will be responsible for the cost of marketing the Property as set forth in its proposal referenced in Section 2 above. Owner authorizes Concierge to conduct a survey of the Property and a professional home inspection, all at Owner's cost and expense.

8. <u>Acknowledgements of Owner</u>. Owner acknowledges and agrees that: (i) there is no guarantee that the Property will be sold at the Auction, that any buyer will perform its obligations or that Owner will receive any specific amount or sales price from the Auction or otherwise; (ii) that Concierge may, in its discretion, choose: (a) to offer the Property for sale exclusively online through the Internet, and/or (b) to include other properties in the Auction in order to decrease costs or to increase public attendance at the Auction; (iii) Concierge shall have no responsibility whatsoever for any act associated with the closing or consummation of any sale, and Owner and/or its third party agents are solely responsibile for such acts; (iv) Owner authorizes Concierge: (a) to place an "Auction" sign on the Property and to remove all other signs, (b) to maintain utility services at the Property, at Owner's expense, (c) to permit inspections of the Property, (d) to disseminate any information regarding the Property, (e) to Auction the Property for sale to registered bidders, (f) to regulate all aspects of the Auction bidding process, (g) to disclose Owner as Principal, (h) intentionally omitted; and (i) to publicly announce and publicize the high bid of the Property post auction; (v) Owner shall maintain at all times adequate insurance coverage pertaining to the Property, including liability insurance for the duration of the sale, the Auction and related activities; (vi) Owner agrees to assist in gaining the cooperation of the listing broker with the auction marketing process, or to replace any listing broker who is generally uncooperative or unresponsive to Concierge; and (vii) Owner is responsible for all commissions due to the listing broker and selling or cooperating broker, if any. Owner agrees to execute and to cause its listing broker to execute Concierge's standard Addendum to Listing Agreement (a copy of which is attached) in advance of the marketing of the Property. Owner authorizes Concierge and its representatives to enter upon and use the Property for all purposes related to its services under this Agreement, without any fee. Owner acknowledges that Concierge is acting as agent for Owner only in its capacity as auctioneer and is not acting as its real estate broker. Concierge shall not be deemed to represent any bidder for any purpose, or Owner for any purpose other than as expressly set forth herein. Owner is responsible for the accuracy of the information provided to Concierge and expressly releases Concierge from any liability in connection with the sale of the Property; provided that Concierge presented such Property in good faith with information available at the Auction.

9. <u>Limitation of Liability</u>. Owner acknowledges and agrees that Concierge shall not be responsible for damage or injury to the Property resulting from or arising in connection with the sale of the Property, except to the extent that such damage or injury is caused by Concierge's gross negligence. Concierge shall not be liable for any loss suffered by Owner relating to the Property, including but not limited to a bidder/buyer that refuses to enter into a Purchase and Sale Contract or to perform its obligations.

Concierge's maximum liability for the breach of any obligation in connection with this Agreement, and for damages of any type or nature (whether in contract or in tort, compensatory, consequential or punitive in nature) sustained or claimed by Owner or any other person in connection with this Agreement, even if such party shall have been informed of the possibility of such damages or could have foreseen such damages, shall be limited to the compensation actually received by Concierge under this Agreement. In no event shall Concierge be liable to Owner for any indirect, incidental, consequential, special or punitive damages arising out of any breach of its obligations in connection with this Agreement.

10. <u>Cancellation of Auction and Termination</u>. The term of this Agreement will commence upon execution and terminate either (i) on the date of the closing of the sale of the Property or (ii) the date of delivery of written notice of termination if permitted herein. Concierge shall have the right to cancel, postpone or reschedule the Auction in its sole discretion for any reason. If Concierge cancels the Auction as permitted under this Agreement, this Agreement shall terminate on such date and Concierge shall promptly inform all registered and prospective bidders of such cancellation and shall provide prompt written notice of termination to the other party. Upon the termination of this Agreement, this Agreement shall become null and void and have no effect and both parties will be relieved of all rights and obligations and liabilities hereunder, except for those obligations which by their terms survive the termination of this Agreement.

11. <u>Notices</u>. Any notice to a party under this Agreement shall be in writing and shall be delivered by electronic mail (to Concierge at laura.brady@conciergeauctions.com), by facsimile, personally or sent by registered mail, return receipt requested, postage prepaid, or prepaid overnight courier to the parties at the addresses set forth on the signature page of this Agreement.

12. <u>Entire Agreement</u>. This Agreement and the related Exhibits/Addendum contain the complete and final obligation and understanding between the parties relating to the subject matter hereof and merge all prior discussions, negotiations and agreements between them, whether written or oral, and the parties shall not be bound by any representations, warranties, covenants, or other understandings, except as expressly provided or referred to herein.

13. <u>Assignment</u>. This Agreement may not be assigned by any party without the written consent of all of the other parties; except that Concierge may assign to its affiliates. This Agreement shall be binding upon and inure to the benefit of the parties and their successors, heirs, representatives, and permitted assigns.

14. <u>Waiver and Amendment</u>. This Agreement may be amended or modified only in writing signed by both parties. Compliance with any provision of this Agreement may be waived only by a writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought. Time is of the essence of this Agreement.

15. <u>Intentionally Omitted</u>.

16. <u>Technology</u>. Owner acknowledges that the Auction may be conducted online over the Internet and that it may utilize third party technology in order to conduct the Auction and/or to accept bids, all in Concierge's discretion. CONCIERGE DOES NOT WARRANT THAT THE FUNCTIONS, FEATURES OR CONTENT CONTAINED IN ITS WEBSITE OR ANY AUCTION PLATFORM OR BIDDING SOFTWARE, INCLUDING ANY THIRD-PARTY SOFTWARE, PRODUCTS OR OTHER MATERIALS USED IN CONNECTION WITH THE AUCTION, WILL BE TIMELY, SECURE, UNINTERRUPTED OR ERROR-FREE, OR THAT DEFECTS WILL BE CORRECTED.

17. <u>Venue; Prevailing Party</u>. The parties agree to submit all controversies, disputes, claims and matters of difference arising out of or relating to this Agreement, including but not limited to its enforcement, scope and/or interpretation, exclusively in the US Bankruptcy Court for the Central District of California. In the event of any such court action, the prevailing party shall be entitled to reimbursement from the non-prevailing party of all reasonable attorney's fees and costs/expenses of the prevailing party and any award of the court will include costs and reasonable attorneys' fees to the prevailing party.

18.  Severability. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of this Agreement.

19.  Governing Law. This Agreement has been entered into and shall be construed and enforced in accordance with the laws of the State of California without regard to conflicts of law principles.

20.  Licensing/Bonding. Concierge is licensed and/or bonded in the following states: California Auction Bond No. 62662376 (on file with the Secretary of State); Colorado Real Estate License No. EL100032451; Connecticut Real Estate License No. REB0789006; Florida Auction License No. AB2760; Florida Real Estate License No. CQ1032600; Georgia Auction License No. AU-C002842; Illinois Auction License No. 481.011750; Illinois Real Estate License No. CA 471011750; Minnesota Real Estate License No. CA #40259032; North Carolina Auction License No. NCAL#9427; North Carolina Real Estate License No. 23755; Nevada Clark County Auction Bond No. 523455; New York Real Estate License No. 10991209483; Pennsylvania Auction License No. AY002062; South Carolina Auction License No. 4023; Tennessee Auction License No. 00005704; Tennessee Real Estate License No. 00261683; Texas Auction License No. 16847; Vermont Auction License No. 057.0088758; Virginia Auction License No. AU# 2907 002987; Virginia Real Estate License No. 2908000-850; Washington Auction Bond No. 10003391H; Wyoming Real Estate License No. 190600.

## Addendum to Listing Agreement

This Addendum to Listing Agreement (the "Addendum") is made and entered into as of August 11, 2016 between Bobby Lockrem of Cascade Sotheby's International Realty ("Broker") and Russel D. Hiles ("Owner").

A.    The Broker and Owner entered into a listing agreement (the "Listing Agreement") with respect to Property located at 66876 Gist Road, Bend, Oregon 97703 (the "Property").

B.    Broker acknowledges that Owner and Concierge Auctions, LLC ("Concierge") have entered into that certain Auction Marketing Agreement dated as of August 11, 2016 (the "AMA") pursuant to which Concierge will seek to market the Property for auction (the "Auction").

C.    The Broker has agreed to cooperate with Concierge in connection with the Auction in order to make the Auction a success, and agrees not to interfere with the AMA, as more fully set forth in this Addendum and in Concierge's Listing Broker Handbook.

NOW THEREFORE, in consideration of the foregoing recitals and for other good and valuable consideration (the receipt and sufficiency of which is mutually acknowledged), the parties agree as follows:

1.    Consent. The Broker consents to Owner's execution of the AMA. In the event of any conflict between this Addendum and the Listing Agreement, the provisions of this Addendum shall be deemed to be paramount and shall prevail.

2.    Services of Broker. During the term of the AMA, in addition to any other services to be performed by Broker pursuant to the Listing Agreement, Broker agrees to cooperate with Concierge in all commercially reasonable ways in order to market the Property for auction and to conduct the Auction, including but not limited to the following (and more fully described in Concierge's Listing Broker Handbook):

- assist in the collection of material for creation of marketing material;
- present the Auction at earliest opportunity to Broker's office;
- coordinate with Owner to provide Concierge with all available (or required) documentation including, but not limited to, Property specification list, disclosures, survey, appraisal, inspection, any relevant Home Owner Association documents, etc.;
- a minimum of ten professional Property photos, including one aerial, if appropriate and available;
- input and/or amend the Multiple Listing profile per directions from Concierge 24 hours prior to commencement of marketing;
- remove brokerage sign from Property and replace with one co-branded sign that advertises auction;
- auction-opportunity quote for use in public relations exposure;
- local MLS board database and allow Concierge to distribute eblasts to the list, all via Rezora (privacy secured eblast technology use by Concierge);
- company logo, personal and brokerage licensure information as filed with the state as well as identify any signage and open house restrictions and/or community access issues;
- work with Concierge in-house counsel to prepare the auction sale contract, including all necessary addenda and disclosures;
- entire MLS history for the Property, including all prior listings, sales, price reductions, etc.
- full MLS profiles for all currently active properties in the area that could be considered reasonable comparable homes, include all sold properties (last 180 days) and currently pending sales (include listing history such as list price, reductions, etc.);
- showing and offer history of the Property;
- conduct a broker caravan for cooperating brokers outside of Broker's office;
- submit weekly prospect log (provided by Concierge) that includes all inquiries, showings, and open house visitors (names, phone numbers, emails); and
- be available for periodic update calls with Concierge management, including calls with Owner.

3.    Pre-Auction Offers. Broker agrees to notify Concierge via email immediately upon receipt of any pre-auction offers. If Owner elects to accept a Pre-Auction offer, Broker acknowledges that Owner has contractually agreed only to accept "as is" offers without contingencies or conditions, have a minimum 10% non-refundable cash deposit and closing no later than 60 days after acceptance.

4.    Broker Services; Commissions; Co-Brokerage/Referral Fees. The Broker acknowledges that Concierge is not providing any real estate brokerage services to Owner. The Broker will be responsible for all Broker duties and Property-related disclosures per the applicable laws of the state and, if applicable, local jurisdiction where the Property is located. Broker agrees to defend and indemnify Concierge against any liability arising out of the Broker's failure to comply with such disclosure laws. Notwithstanding the foregoing, Broker acknowledges that Concierge may be entitled to receive a brokerage or referral fee for services provided to a buyer of Owner's property to the extent that such buyer is not represented by a third party broker and that such fee is consistent with applicable law. Further, Broker acknowledges and agrees to pay any cooperating broker or referral agent registered with Concierge on behalf of the high bidder in connection with the Auction its share of any commission due in connection with the sale of the Property as determined by Concierge in its

reasonable discretion. Under no circumstances will Concierge be required to pay any commission due to any broker or referral agent in connection with the sale of Owner's property.

     5.    Execution of Auction Day Purchase and Sale Agreement. Owner agrees that it will pre-execute the purchase and sale agreement to be used for the Auction. The pre-executed contract will be held in trust by the Broker and Broker will be authorized to complete such contract (including adding the purchase price and other details determined by the winning bid amount at Auction) on Auction day in accordance with the AMA and the Auction Terms and Conditions, and then submit the contract to the winning bidder for execution.

     6.    Miscellaneous. This Addendum will be effective as of the date first set forth above, upon execution of this Addendum by the Broker and Owner. This Addendum may be executed in any number of counterparts, each of which shall be deemed an original and all of which, taken together, will constitute one and the same Addendum. Except as expressly provided above, the terms and conditions of the Listing Agreement remain in full force and effect, unmodified, as of the date hereof.

IN WITNESS WHEREOF, the parties have executed this Addendum as of the date set forth above.

Broke[r] ___tional Realty       Owner:

By: B[*Bobby Lockrem*]       Name: Russel D. Hiles
Its: Broker

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 18101 Von Karman Avenue, Suite 1200, Irvine, CA 92612

A true and correct copy of the foregoing document entitled (*specify*): **ERRATA RE DEBTOR'S NOTICE OF MOTION AND MOTION FOR AUTHORITY TO: (1) EMPLOY CONCIERGE AUCTIONS, LLC TO AUCTION DEBTOR'S PROPERTY (66876 Gist Rd., Bend, OR 97703) AND PAYMENT OF MARKETING FEES AND AUCTIONEER FEES (BUYERS PREMIUM); (2)  EMPLOY CASCADE SOTHEBY'S INTERNATIONAL REALTY AS REAL ESTATE BROKER; (3)   SELL THE PROPERTY AT AUCTION SUBJECT TO COURT APPROVAL AND ALLOWING ACCEPTANCE OF BACK-UP BIDDERS; (4) ESTABLISH BIDDING PROCEDURES; (5) SCHEDULE HEARING DATE FOR APPROVAL OF AUCTION; (6) PAY SECURED CREDITOR, PROPERTY TAXES, AND CLOSING COSTS; AND (7) APPROVE OF SALE FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. SECTION 363(f); DECLARATIONS OF RUSSEL D. HILES, LAURA BRADY, AND BOBBY LOCKREM IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 22, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **William F McDonald**    Caecf@tblaw.com, wfm@tblaw.com;snchampney@tblaw.com
- **Jason K Schrader**    jason.K.Schrader@usdoj.gov
- **United States Trustee (RS)**    ustpregion16.rs.ecf@usdoj.gov
- **Rebecca J Winthrop**    rebecca.winthrop@nortonrosefulbright.com, darla.rodrigo@nortonrosefulbright.com
- **Jennifer C Wong**    bknotice@mccarthyholthus.com

**2.    SERVED BY UNITED STATES MAIL**:
On (*date*) August 22, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Brian T. Moynihan, Chairman & CEO, Bank of America, 100 N. Tryon St., Charlotte, NC 28255
Bank of America, Resident Agent, CT Corp. System, 818 W. 7th St., #930, Los Angeles, CA 90017

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: (state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) August 22, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- Honorable Wayne Johnson, USBC, 3420 Twelfth Street, Riverside, CA 92501

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 22, 2016 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

3