1  Leonard M. Shulman - Bar No. 126349
   Rika M. Kido - Bar No. 273780
2  **SHULMAN HODGES & BASTIAN LLP**
   100 Spectrum Center Drive, Suite 600
3  Irvine, California 92618
   Telephone:     (949) 340-3400
4  Facsimile:      (949) 340-3000
   Email: lshulman@shbllp.com,
5          rkido@shbllp.com

6  Attorneys for Lynda T. Bui,
   Chapter 7 Trustee
7

8            **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION**

10

11 In re                              Case No.  6:16-bk-16877-WJ

12 **RUSSEL DENNIS HILES, III,**      Chapter  7

13 Debtor.                            **CHAPTER 7 TRUSTEE'S APPLICATION
                                      FOR AN ORDER AUTHORIZING**
14                                    **EMPLOYMENT OF GLASSRATNER
                                      BROKERAGE SERVICES, INC.;**
15                                    **DECLARATION OF STEVEN SPEIER IN
                                      SUPPORT**
16
                                      [No Hearing Set Pursuant to
17                                    Local Bankruptcy Rule 2014-1(b)]

18

19

20      **TO THE HONORABLE WAYNE E. JOHNSON, UNITED STATES BANKRUPTCY**

21 **JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL INTERESTED**

22 **PARTIES**:

23      Lynda T. Bui ("Trustee"), the duly appointed, qualified, and acting Chapter 7 Trustee for the

24 bankruptcy estate ('Estate') of Russel Dennis Hiles, III ("Debtor"), brings this application

25 ("Application") for an order authorizing the employment of GlassRatner Brokerage Services, Inc.

26 ("Broker") as the Trustee's real estate broker in this bankruptcy case to assist the Trustee in the

27 listing, marketing and negotiating of a sale of the Estate's interest in certain real property identified

28 below.  In support of the Application, the Trustee respectfully represents as follows:

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1

Employ App GlassRatner TC Hiles

I.     **BACKGROUND INFORMATION**

**A.     Case Information**

The Debtor filed a chapter 11 bankruptcy petition on August 1, 2016 ("Petition Date"), in the United States Bankruptcy Court, Central District of California, Case No. 6:16-bk-16877-WJ. Pursuant to order entered on December 21, 2017 (docket 275), the case was converted to a Chapter 7 and Lynda T. Bui was subsequently appointed as the Chapter 7 trustee for this Estate.

**B.     The Palm Desert Property**

On his Schedule A/B, the Debtor lists his ownership of the residence located at 155 Metate Place, Palm Desert, California 92260 ("Palm Desert Property"). The Debtor valued the Palm Desert Property at $2,750,000.00 and on his Schedule D, listed the following liens totaling $2,824,674.62: (1) lien in favor of Bank of America in the amount of $1,395,102.00; (2) lien in favor of De Castro West et al. ("De Castro") in the amount of $60,000.00; and (3) lien in favor of the California Franchise Tax Board ("FTB") in the amount of $1,369,572.62.  On his Schedule C, the Debtor claimed an exemption in the amount of $175,000.00 pursuant to California Code of Civil Procedure § 704.730.

From the Debtor's Schedules, it appears there is no equity in the Palm Desert Property for the benefit of the Estate and its creditors.  However, the Trustee is advised that the liens in favor of De Castro and the FTB were each recorded within 90 days prior to the Petition Date and are both subject to avoidance under the Trustee's powers under the Bankruptcy Code, including Section 547.

The Trustee has been informed by the Broker that the Debtor appears to have over-stated the value of the Palm Desert Property on his Schedules.  The Broker has advised that based on comparable properties in the area, a realistic value of the Palm Desert Property is approximately $2,650,000.00.  Even with this lower value and after deducting the costs of sale and amount due on the mortgage, after the Trustee successfully avoids the De Castro and FTB liens (which total $1,429,572.62), there appears to be substantial equity in the Palm Desert Property for the benefit of the Estate and its creditors.[1]

---

[1]    The last day to timely file proof of claims in this case is April 9, 2018.  Government claims were due by June 5, 2017.  The Court's claims register indicates that as of February 5, 2018, there have been 27 claims filed totaling

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

2

Employ App GlassRatner TC Hiles

## II.    <u>SERVICES TO BE PERFORMED</u>

In order to market the Palm Desert Property for sale in the most effective manner and thereby to liquidate it for the best and highest price in the current real estate market, the Trustee has solicited the assistance of the Broker, which is a California licensed real estate broker with offices located at 19800 MacArthur Boulevard, Suite 820, Irvine, California, telephone number 949-510-4018. Attached to the Declaration of Steven Speier ("Speier Declaration") as **Exhibit 1** is a true and correct copy of the Residential Listing Agreement (Exclusive Authorization and Right to Sell) and its addenda, for which the Trustee seeks Court approval.   Attached as **Exhibit 2** to the Speier Declaration is a copy of Mr. Speier's resume, the associate of the Broker firm, who will oversee the listing and marketing of the Palm Desert Property for sale.

The Broker is familiar with the sale of real property in the context of a bankruptcy case and will be able to provide knowledge that is unique to the sale of Palm Desert Property and to negotiate a sale to address any potentially complex bankruptcy sale issues.  The Trustee is informed that the Broker is experienced in real estate sales and marketing, including the area in which the Property is located, and is well qualified in negotiating sales of real property similar to the Palm Desert Property.  The employment of the Broker is anticipated to benefit the Estate by providing marketing coverage as well as services that are unique to the sale of real property in the context of a bankruptcy case.

The Broker, on the Trustee's behalf, has examined the Palm Desert Property and has agreed to advertise the Property at its expense, to show the Palm Desert Property to interested parties, to represent the Estate as seller in connection with the sale of the Palm Desert Property, and to advise the Trustee with respect to obtaining the highest and best offers available for the property in the present market.  The proposed listing price for the Palm Desert Property is $2,650,000.00.

Any sale of the Palm Desert Property by the Trustee will be conducted in accordance with Bankruptcy Code Section 363 and Federal Rule of Bankruptcy Procedure 6004 upon a noticed motion to be filed in the Debtor's bankruptcy case.

---

$22,713,290.50, consisting of secured claims $3,956,552.40, priority claims of $4,150,470.09, administrative claims of $325.00 and general unsecured claims of $14,605,943.01.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

3

Employ App GlassRatner TC Hiles

A.      **Compensation Procedure**

In consideration for the Broker's services, subject to further application and Court order, the Broker will receive, upon consummation of any such sale, a real estate agent's commission in an amount of five percent (5%) of the purchase price.  The Broker has agreed to cooperate with outside brokers. In the event any broker or agent other than the Broker represents a purchaser of the Palm Desert Property (a "Selling Broker"), the commission will be split between the Broker and the Selling Broker in amounts to be determined.  In any event, the total commission will not exceed five percent (5%) of the total purchase price.

The Broker has been informed and understands that no sale of the Palm Desert Property may be consummated until after (a) notice to creditors with the opportunity for a hearing on the proposed sale, and (b) entry of a Court order approving the sale.

The Broker has been informed and understands that the Palm Desert Property is being sold on an "as is – where as" basis with all faults and conditions then existing at the Palm Desert Property, and thus understands that (a) the Trustee is not making any representations, warranties, either express or implied, as to the condition of the Palm Desert Property, uses (prior, present and future), or otherwise; (b) the Trustee shall not provide the buyer with any reports as to the use or condition of the Palm Desert Property; (c) the Trustee shall not provide the buyer with any warranty protection plan with any building permits or plans; and (d) the Trustee is selling the Palm Desert Property solely in her capacity as the Chapter 7 Trustee of the Estate.

The Broker has agreed to be compensated subject to the provisions of Bankruptcy Code Section 328.  The Broker is aware of the provisions of Bankruptcy Code Section 328(a) and has agreed, notwithstanding the terms and conditions of employment here, that the Court may allow compensation different from the compensation provided here, if such terms and conditions prove to have been improvident in light of developments unanticipated at the time of the fixing of such terms and conditions.

B.      **The Broker is "Disinterested"**

To the best of the Trustee's knowledge, and as set forth in the Speier Declaration, other being employed as a real estate broker in other non-related bankruptcy cases, the Broker and members of

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

4

Employ App GlassRatner TC Hiles

1  its office:  (a) do not hold or represent any interest adverse to the Trustee, the Debtor, the Debtor's

2  creditors or the Estate; (b) have no connections with the Debtor, the Debtor's creditors, any other

3  party in interest, their respective attorneys and accountants, the United States Trustee, any person

4  employed in the office of the United States Trustee, (except that Mr. Speier is a member of the

5  Chapter 7 Bankruptcy Trustee panel for the Central District of California appointed and supervised

6  by the Office of the United States Trustee) or any bankruptcy judge presiding in the United States

7  Bankruptcy Court for the Central District of California; and (c) is a disinterested person as that term

8  is defined in Bankruptcy Code Section 101 (14) and used in Bankruptcy Code Section 327(a).

9      Based on the above and her experiences as a trustee, the Trustee has determined that

10  employment of the Broker under the above terms and conditions is in the best interest of the Estate.

11      **WHEREFORE**, the Trustee requests that she be authorized to employ the Broker as her

12  real estate broker on the terms and conditions set forth above, and that the Trustee be authorized to

13  execute the Residential Listing Agreement (Exclusive Authorization and Right to Sell) attached to

14  the Speier Declaration as **Exhibit 1**, and for such other and further relief as is just.

16  Dated:  February 6, 2018

17  Lynda T. Bui
Chapter 7 Trustee  for the bankruptcy estate of
18  *In re Russel Dennis Hiles, III*, Case No. 6:16-bk-16877-WJ

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5

Employ App GlassRatner TC Hiles

# DECLARATION

1

## DECLARATION OF STEVEN SPEIER

2      I, Steven Speier, declare and state as follows:

3      1.      The matters stated here are true and correct and within my personal knowledge.  If

4  called as a witness, I could and would competently testify thereto.  I am a real estate broker, duly

5  licensed in the State of California and associated with GlassRatner Brokerage Services, Inc. located

6  at 19800 MacArthur Boulevard, Suite 820, Irvine, CA 92612; telephone 949-510-4018.  I make this

7  declaration in support of the Application for Order Authorizing Employment of GlassRatner

8  Brokerage Services, Inc. ("Application") filed by Lynda T. Bui, the Chapter 7 trustee ("Trustee")

9  for the bankruptcy estate ("Estate") of *In re Russel Dennis Hiles, III* ("Debtor"), Case No. 6:16-bk-

10  16877-WJ.

11      2.      I have read the Application and am familiar with the real property located at 155

12  Metate Place, Palm Desert, California 92260 ("Property").

13      3.      The Broker has agreed to accept employment on the terms and conditions set forth

14  in the Application and as set forth in the Residential Listing Agreement (Exclusive Authorization

15  and Right to Sell) and its addenda, a copy of which is attached here as **Exhibit 1** and incorporated

16  here by this reference.  I believe that the Broker is qualified to represent the Trustee and the Estate

17  in connection with the marketing of the Property and negotiating a sale.  Attached here as **Exhibit**

18  **2** is a copy of my resume.

19      4.      I have been informed and understand that no sale of the Property may be

20  consummated until after (a) notice to creditors with the opportunity for a hearing on the proposed

21  sale, and (b) entry of a Court order approving the sale.

22      5.      I have been informed and understand that the Property is being sold on an "as is –

23  where as" basis with all faults and conditions then existing at the Property, and thus understand that:

24  (a) the Trustee is not making any representations, warranties, either express or implied, as to the

25  condition of the Palm Desert Property, uses (prior, present and future), or otherwise; (b) the Trustee

26  shall not provide the buyer with any reports as to the use or condition of the Property; (c) the Trustee

27  shall not provide the buyer with any warranty protection plan with any building permits or plans;

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6

Employ App GlassRatner TC Hiles

1  and (d) the Trustee is selling the Property solely in her capacity as the Chapter 7 trustee of the

2  Debtor's Estate.

3      6.      The Broker has agreed and understand that notwithstanding the terms and conditions

4  of employment set forth here, that the Court may allow compensation different from the

5  compensation provided here if such terms and conditions prove to have been improvident in light

6  of development unanticipated at the time of the fixing of such terms and conditions.

7      7.      The Broker has no pre-petition claim against the Debtor's Estate.

8      8.      The Broker received no retainer for the services to be performed.

9      9.      To the best of my knowledge after full investigation, the Broker firm and its

10  principals, employees, agents and I:

11          a.   do not hold or represent any interest adverse to the Trustee, the Debtor, Debtor's

12  creditors or the Estate;

13          b.   Other than being employed as a real estate broker in other non-related bankruptcy

14  cases, have no connections with the Debtor, the Debtor's creditors, any other party in interest, their

15  respective attorneys and accountants, the United States Trustee, any person employed in the office

16  of the United States Trustee (except that I am a member of the Chapter 7 Bankruptcy Trustee panel

17  for the Central District of California appointed and supervised by the Office of the United States

18  Trustee), or any  bankruptcy judge presiding in the United States Bankruptcy Court for the Central

19  District of California;

20          c.   are "disinterested" as that term is defined in Bankruptcy Code Section 101 (14)

21  and used in Bankruptcy Code Section 327(a) because we:

22              i.      are not a creditor or an insider;

23              ii.     are not and were not an investment banker for any outstanding

24  security of the Debtor;

25              iii.    have not been, within three years before the date of the filing of the

26  Debtor's petition, an investment banker for the security of the Debtor or an attorney for such an

27  investment banker in connection with the offer, sale or issuance of a security of the Debtor;

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

7

Employ App GlassRatner TC Hiles

1             iv.    are not and were not, within two years before the date of the filing of

2 the Debtor's petition, a director, officer or employee of the Debtor or of an investment banker

3 specified in subparagraphs (b) or (c) of this paragraph 9; and

4             v.    do not have an interest materially adverse to the interest of the Estate

5 or any class of creditors or equity security holders, by reason of any direct or indirect relationship

6 to, connection with, or interest in the Debtor as an investment banker as specified in subparagraphs

7 (b) or (c) of this paragraph 9, or for any other reason.

8      10.    The Broker shall not engage in dual representations or undertake representation of

9 any interest adverse to the Estate under 11 U.S.C. §327(a).

10      11.    Under the terms of the proposed listing contract, a real estate commission shall be

11 paid upon closing of a court-approved sale of the Property.

12     I declare under penalty of perjury under the laws of the United States of America that the

13 foregoing is true and correct.

14     Executed on February 6, 2018, at Irvine, California.

17                        _____

18                       Steven Speier

8

Employ App GlassRatner TC Hiles

# Exhibit 1
# Listing Contract

CALIFORNIA
ASSOCIATION
OF REALTORS®

## DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
(Listing Firm to Seller)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/14)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:

(a)Diligent exercise of reasonable skill and care in performance of the agent's duties.

(b)A duty of honest and fair dealing and good faith.

(c)A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:

(a)Diligent exercise of reasonable skill and care in performance of the agent's duties.

(b)A duty of honest and fair dealing and good faith.

(c)A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.

An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:

(a)A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.

(b)Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____    Date _1/27/18_
                                    Lynda Bui, Ch 7 Trustee

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____    Date _____

Agent _____ GlassRatner Brokerage Services, Inc. _____ BRE Lic. # 01980431
                   Real Estate Broker (Firm)

By _____    BRE Lic. # 01094163 _____    Date _1-29-18_
   (Salesperson or Broker-Associate)    Steven Speier

Agency Disclosure Compliance (Civil Code §2079.14):

When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.

When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

_____ (SELLER/LANDLORD: DO NOT SIGN HERE) _____    (SELLER/LANDLORD: DO NOT SIGN HERE) _____
Seller/Landlord _____ Date _____    Seller/Landlord _____ Date _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Reviewed by _____ Date _____

AD REVISED 12/14 (PAGE 1 OF 2)

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Brian Thompson, Broker 23792 Rockfield Blvd Ste 101 Lake Forest, CA 92630 _____ Phone: (949)581-9120 _____ Fax _____    Hiles-Metate
Brian Thompson _____ Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

# Exhibit 1

**CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)**

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: (a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. (b) "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. (c) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. (d) "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. (e) "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. (f) "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. (g) "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. (h) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. (i) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (j) "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. (k) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (l) "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. (m) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (n) "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. (o) "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. (p) "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

**2079.14** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: (a) The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). (c) Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. (d) The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17** (a) As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller. (c) The confirmation required by subdivisions (a) and (b) shall be in the following form.

| | | |
|---|---|---|
| **(DO NOT COMPLETE. SAMPLE ONLY)** | is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller. | |
| (Name of Listing Agent) | | |
| **(DO NOT COMPLETE. SAMPLE ONLY)** | is the agent of (check one): ☐ the seller exclusively; or ☐ the seller exclusively; or | |
| (Name of Selling Agent if not the same as the Listing Agent) | ☐ both the buyer and seller. | |

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one person does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
• 525 South Virgil Avenue, Los Angeles, California 90020

| | |
|---|---|
| Reviewed by_____ Date_____ |  |

**AD REVISED 12/14 (PAGE 2 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    Hiles-Metate

# Exhibit 1



CALIFORNIA
ASSOCIATION
OF REALTORS®

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
OR SELLER - DISCLOSURE AND CONSENT**
(C.A.R. Form PRBS, 11/14)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: **(a)** Broker, without the prior written consent of the Buyer, will not disclose to seller that the Buyer is willing to pay a price greater than the offered price; **(b)** Broker, without the prior written consent of the seller, will not disclose to the buyer that seller is willing to sell property at a price less than the listing price; and **(c)** other than as set forth in (a) and (b) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| Seller _____ | _Lynda Bui, Ch 7 Trustee_ Date 1/29/18 | |
| Seller _____ | Date _____ | |
| Buyer _____ | Date _____ | |
| Buyer _____ | Date _____ | |
| Real Estate Broker (Firm) _GlassRatner Brokerage Services, Inc._ | CalBRE Lic # _01980431_ Date _____ | |
| By _____ | CalBRE Lic # _01094163_ Date _1-29-18_ | |
| _Steven Speier_ | | |
| Real Estate Broker (Firm) _____ | CalBRE Lic # _____ Date _____ | |
| By _____ | CalBRE Lic # _____ Date _____ | |

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |
|---|

PRBS 11/14 (PAGE 1 OF 1)

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

Brian Thompson, Broker 23792 Rockfield Blvd Ste 101 Lake Forest, CA 92630          Phone: (949)981-9120     Fax:                Hiles-Metate
Brian Thompson          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

# Exhibit 1

**CALIFORNIA ASSOCIATION OF REALTORS®**

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY**
(C.A.R. Form WFA, Revised 12/17)

Property Address: *155 Metate Place, Palm Desert, 92260* ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

### ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

| | | |
|---|---|---|
| Buyer/Tenant | _____ | Date _____ |
| Buyer/Tenant | _____ | Date _____ |
| Seller/Landlord | _____ | *Lynda Bui, Ch 7 Trustee* Date *1/29/18* |
| Seller/Landlord | _____ | Date _____ |

©2016-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
• 525 South Virgil Avenue, Los Angeles, California 90020

WFA REVISED 12/17 (PAGE 1 OF 1)

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

Brian Thompson, Broker 23792 Rockfield Blvd Ste 101 Lake Forest, CA 92630          Phone: (949)981-9120          Fax:          Hiles-Metate
Brian Thompson          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

# Exhibit 1

**CALIFORNIA ASSOCIATION OF REALTORS®**

**RESIDENTIAL LISTING AGREEMENT**
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 6/17)

**Date Prepared:** _01/23/2018_

1. **EXCLUSIVE RIGHT TO SELL:** _____ _Lynda Bui, Ch 7 Trustee_ _____ ("Seller")
   hereby employs and grants _____ _GlassRatner Brokerage Services, Inc._ _____ ("Broker")
   beginning (date) _____January 23, 2018_____ and ending at 11:59 P.M. on (date) _____January 22, 2019_____ ("Listing Period")
   the exclusive and irrevocable right to sell or exchange the real property described as _155 Metate Place_
   _____, situated in _____ _Palm Desert_ _____ (City),
   _____San Bernardino_____ (County), California, ___92260___ (Zip Code), Assessor's Parcel No. _771-300-015_ ("Property").
   ☐ This Property is a manufactured (mobile) home. See addendum for additional terms.
   ☐ This Property is being sold as part of a probate, conservatorship or guardianship. See addendum for additional terms.

2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: _Two Million, Six Hundred Fifty Thousand_ _____
   _____ Dollars ($ _2,650,000.00_ ).
   B. Listing Terms: _____

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ __5.000__ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____,
   AND _____ , as follows:
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
   OR (2) If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _____
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☐ _____ percent of the purchase price, or ☐ $ _____.
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _____
      (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____
      (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

© 2017, California Association of REALTORS®, Inc.
**RLA REVISED 6/17 (PAGE 1 OF 5)**

Seller's Initials ( _____ ) ( _____ )

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

# Exhibit 1

Property Address: *155 Metate Place, Palm Desert,  92260* _____ Date: *01/23/2018*

**4. A.** **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
ADDITIONAL ITEMS EXCLUDED: _____.
ADDITIONAL ITEMS INCLUDED: _____.
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B.** **(1) Leased Or Not Owned Items:** The following items are leased or not owned by Seller:
☐ Solar power system      ☐ Alarm system      ☐ Propane tank      ☐ Water Softener
☐ Other _____
**(2) Liened Items:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system      ☐ Windows or doors      ☐ Heating/Ventilation/Air conditioning system
☐ Other _____
Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**5.** **MULTIPLE LISTING SERVICE:**

**A.** Broker is a participant/subscriber to _____ **CRMLS** _____ Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and (ii) may be provided to the MLS even if the Property was not listed with the MLS.

---

**BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS**

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

Seller's Initials ( _____ )( _____ )          Broker's/Agent's Initials ( _____ )( _____ )

---

Seller's Initials   ( _____ )   ( _____ )



**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Hiles-Metate

# Exhibit 1

Property Address: **155 Metate Place, Palm Desert,   92260**                                          Date: **01/23/2018**

B. MLS rules generally provide that residential real property and vacant lot listings are submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS an appropriate form signed by Seller.
☐ Seller elects to exclude the Property from the MLS as provided by C.A.R. Form SELM or the local equivalent form.

C. MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Seller acknowledges that for any of the below opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

(1) **Property Availability On The MLS; Address On the MLS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet. Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

(2) **Feature Opt-Outs:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

(a) **Comments And Reviews:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

(b) **Automated Estimate Of Value:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display. ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

6. **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

7. **BROKER'S AND SELLER'S DUTIES:**
   A. Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 7C as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.
   B. Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.
   C. Investigations and Reports: Seller agrees, within 5 (or____) Days of the beginning date of this Agreement, to pay for the following pre-sale reports: ☐ Structural Pest Control ☐ General Property Inspection ☐ Homeowners Association Documents ☐ Other _____.
   D. Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property..

8. **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

9. **AGENCY RELATIONSHIPS:**
   A. **Disclosure:** The Seller acknowledges receipt of ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B. **Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.
   C. **Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: (i) Broker, without the prior written consent of Seller, will not disclose to Buyer that Seller is willing to sell the Property at a price less than the listing price; (ii) Broker, without the prior written consent of Buyer, will not disclose to Seller that Buyer is willing to pay a price greater than the offered price; and (iii) except for (i) and (ii) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.
   D. **Confirmation:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

Seller's Initials ( _____ ) ( _____ )

**RLA REVISED 6/17 (PAGE 3 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 5)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com      Hiles-Metate

# Exhibit 1

Property Address: _155 Metate Place, Palm Desert,  92260_____ Date: _01/23/2018_

    **E. Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**10. SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

**11. PHOTOGRAPHS AND INTERNET ADVERTISING:**

    **A.** In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ checked, does not agree) that Broker may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker and agrees that such Images are the property of Broker and that Broker may use such Images for advertising, including post sale and for Broker's business in the future.

    **B.** Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked ) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

**12. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**13. SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**14. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**15. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

**16. ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) ☐ Trust Advisory (C.A.R. Form TA) *1)  Seller is a Bankruptcy Trustee and all sales/commissions are subject to the rules and regulations of Bankruptcy Court and must be approved by same (Hiles, III, Case No. 6:16-bk-16877-WJ).*

*    2)  Section 19 A, B and C do not apply, any and all disputes will be handled by the Bankruptcy Court.*

*    3)  Broker my wish to obtain the services of a "Co Broker" to assist in showing and marketing the property.  Any fees/commissions due the Co Broker will be paid by the Broker, after escrow closes, and will come from Broker's above portion of approved commission (no additional fees/commission to be paid by Seller).*

*    4)  Addendum to Listing Agreement (Attached).*

**17. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

**18. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

**19. DISPUTE RESOLUTION:**

    **A. MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. **Exclusions from this mediation agreement are specified in paragraph 19B.**

Seller's Initials ( ✗ ) ( _____ )

**RLA REVISED 6/17 (PAGE 4 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    Hiles-Metate

# Exhibit 1

Property Address: *155 Metate Place, Palm Desert,  92260* _____ Date: *01/23/2018* _____

    **B. ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

    **C. ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

**20. ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

**21. OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____.

☐ REPRESENTATIVE CAPACITY: This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (i) represents that the entity for which the individual is signing already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

Seller _____ Date 1/29/18

    Lynda Bui, Ch 7 Trustee
Address *3550 Vine Street* _____ City *Riverside* _____ State *CA* ____ Zip *92507* ____
Telephone _____ Fax _____ E-mail _____

Seller _____ Date _____

Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm) *GlassRatner Brokerage Services, Inc.* _____ CalBRE Lic. # *01980431* _____
Address *19800 MacArthur Blvd STE 820* _____ City *Irvine* _____ State *CA* ____ Zip *92612* ____

By _____ Tel.*(949)510-4018* E-mail *sspeier@glassratner.com* CalBRE Lic.#*01094163* Date *1·29·18*
   *Steven Speier*
By _____ Tel. _____ E-mail _____ CalBRE Lic.# _____ Date _____

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 1991-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**RLA REVISED 6/17 (PAGE 5 OF 5)**

**RESIDENTIAL LISTING AGREEMENT -EXCLUSIVE (RLA PAGE 5 OF 5)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Hiles-Metate

# Exhibit 1



CALIFORNIA
ASSOCIATION
OF REALTORS®

**SELLER'S ADVISORY**
(C.A.R. Form SA, Revised 12/15)

Property Address: _155 Metate Place, Palm Desert,  92260_ _____ ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **Statutory Duties:** (For one-to-four Residential Units):
      (1) You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
      (2) Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      (3) If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
      (4) If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that you have no disclosure duty "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

3. **CONTRACT TERMS AND LEGAL REQUIREMENTS:**
   A. **Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

© 1991-2015, California Association of REALTORS®, Inc.
SA REVISED 12/15 (PAGE 1 OF 2)

Seller's Initials ( _____ ) ( _____ )

**SELLER'S ADVISORY (SA PAGE 1 OF 2)**

Brian Thompson, Broker 23792 Rockfield Blvd Ste 101 Lake Forest, CA 92630                                    Phone: (949)981-9120          Fax:                    Hiles-Metate
Brian Thompson                    Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

# Exhibit 1

Property Address: *155 Metate Place, Palm Desert, 92260*                   Date: *01/23/2018*

   **B. Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

   **C. Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

   **D. Government Required Repairs, Replacements and Alterations:** Under State law, Property owners with limited exceptions, are required to: (1) Install operable smoke alarms and brace water heaters and provide a Buyer with a statement of compliance. Existing operable smoke alarms, that met compliance standards when installed, do no have to be removed even if not up to current legal requirements. Smoke alarms that are added or that replace older versions must comply with current law; and (2) install carbon monoxide detection devices. Some city and county governments may impose additional requirements, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine which requirements apply to your Property, the extent to which your Property complies with such requirements, and the costs, if any, of compliance.

   **E. EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

   **F. Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

**4. MARKETING CONSIDERATIONS:**

   **A. Pre-Sale Inspections and Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems, making cosmetic improvements, and staging. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional inspections prior to sale. Pre-sale inspections may include a general property inspection; an inspection for wood destroying pest and organisms (Structural Pest Control Report) and an inspection of the septic or well systems, if any, among others. By doing this, you then have an opportunity to make repairs before your Property is sold, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a Structural Pest Control Report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

   **B. Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

   **C. Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

   **D. Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

**5. OTHER ITEMS:** _____

_____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller _____ Date _1/29/18_

Print Name *Lynda Bui, Ch 7 Trustee*

Seller _____ Date _____

Print Name _____

Real Estate Broker *GlassRatner Brokerage Services, Inc.*           CalBRELic.#: *01980431*

By _____    *Steven Speier* CalBRE Lic.# *01094163*    Date _1-29-18_

By _____    CalBRE Lic.# _____    Date _____

Address *19800 MacArthur Blvd STE 820*    City *Irvine*    State *CA*    Zip *92612*

Telephone *(949)510-4018*    Fax _____    E-mail *sspeier@glassratner.com*

© 1991-2015, California Association of REALTORS®, Inc. Copyright claimed in Form SA, exclusive of language required by California Civil Code §1710.2. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____



**SA REVISED 12/15 (PAGE 2 OF 2)**

**SELLER'S ADVISORY (SA PAGE 2 OF 2)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    IIiles-Metate

# Exhibit 1

## ADDENDUM TO LISTING AGREEMENT

Lynda T. Bui, Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of *In re Russel Dennis Hiles, III* *("Debtor")*, currently pending in the United States Bankruptcy Court for the Central District of California, Riverside Division Case No. **6:16-bk-16877-WJ**, agrees to grant **GlassRatner Brokerage Services, Inc.** ("Broker") the exclusive rights to negotiate a sale of real property of the Estate located at **155 Metate Place, Palm Desert, CA 92260** ("Property"), upon the terms and conditions of the **Residential Listing Agreement (Exclusive Authorization and Right to Sell ("Listing Agreement")** entered into with respect to the Property concurrently herewith, as amended by the following terms and conditions of this Addendum:

1.    Addendum.    This Addendum amends the Listing Agreement. Notwithstanding any contrary terms and conditions in the Listing Agreement, this Addendum shall apply.   Broker agrees that any previous Listing Agreements or agreements with regard to the Property are null and void.

2.    No Liability.   The Trustee is listing the Property for sale with the Broker in her capacity as the Chapter 7 Trustee of the Estate, and not in her personal capacity, and no liability or obligations shall accrue to her personally as a result of such listing. There shall be no claim by Broker for damages of any kind against the Trustee or against the law firm of which she is associated, Shulman Hodges & Bastian LLP. Any claim for damages by Broker as it relates to the listing or sale of the Property shall only be against the Estate.

3.    Trustee's Right to Sell.   The Trustee is to provide a list of any potential buyers that the Broker will not receive a commission for within five (5) days of signing this Addendum.  The list must include full contact information for potential Buyers as well as any related agent/broker.  Once the exemption list is received by Broker, Broker will have 24 hours to review the list and cancel with listing agreement in its entirety without fault.  In the event an exempt Buyer is the stalking horse bidder and Broker procures an over bidder, Broker will be entitled to a full commission regardless of who is the final approved purchaser.  In the event the Broker procures an offer by a qualified buyer, that the Trustee accepts and an exempt buyer attends the sale hearing as a qualified over bidder the Broker will have earned a full commission regardless of who is the final approved purchaser.

4.    Termination.   The Trustee may terminate the Listing Agreement at her option and upon written notice to the Broker at any time, and no liability or obligations shall accrue to the Estate or to the Trustee, either personally or in her capacity as Trustee, as a result of any such termination.

5.    Abandonment.   The Trustee reserves the right, in her sole discretion, to determine not to sell the Property and to abandon the Property by serving a notice of her intention to abandon the Property upon the Debtor, all creditors of the Estate, the United States Trustee, and all parties in interest.   In the event of any such

5401-000\1161205.1
Listing Addendum re 1555 Metate Place, Palm Desert, CA 92260

# Exhibit 1

abandonment, the Listing Agreement and this Addendum shall terminate and no liability or obligations shall accrue to the Estate or to the Trustee, either personally or in her capacity as Trustee, as a result of any such abandonment and termination.

6.    Conditions of Sale.  The Broker agrees and understands that any sale of the Property shall be subject to the following terms and conditions:

a.    The Trustee is selling the Property in her capacity as the Chapter 7 Trustee of the Debtor's Estate, and not in her personal capacity, and no liability or obligations shall accrue to her personally as a result of any sale.

b.    If for any reason, or no reason whatsoever, the Trustee is unable to deliver possession or title to the Property to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

c.    The Trustee is selling the Property in an "AS IS" condition or basis by quitclaim deed without any representations or warranties whatsoever, including without limitation representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding the subdividability of the Property.

d.    The sale of the Property is subject to Bankruptcy Court approval after notice to the Debtor, all creditors of the Estate, the United States Trustee, and other parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules.

e.    The purchaser shall, at the purchaser's sole expense, acquire any and all insurance policies that the purchaser desires to cover the Property.  The Trustee does not agree to acquire or transfer any insurance policies to the purchaser.

f.    The purchaser is to arrange for all financing of the acquisition of the Property before the close of escrow.

g.    The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if any, as may be required by state or local law. The Trustee is not required to deliver to the purchaser a written

5401-000\1161205.1
Listing Addendum re 1555 Metate Place, Palm Desert, CA 92260

# Exhibit 1

statement of compliance with any applicable state and local law.

h.    The purchaser shall, at purchaser's sole expense, obtain and all pest control inspection repairs that purchaser deems appropriate.

i.    If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense.

j.    Any sale is subject to the following conditions being satisfied before the close of escrow:

    (1)    the Trustee must prevail with respect to any objections to the proposed sale; and

    (2)    the Trustee reserves the right to reject any and all offers which in her judgment are insufficient.

k.    The Property is being sold subject to:

    (1)    All general and special taxes that are presently due, or may become due, regarding the Property, other than property taxes, which shall be prorated as of the close of escrow;

    (2)    The lien of supplemental taxes, if any, assessed pursuant to the provisions of applicable statutes of the State of Oregon; and

    (3)    Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property.  Title, however, is to be transferred free of secured claims of record.

7.    <u>Payment of Commission</u>.  The commissions to be paid to the Broker shall only be paid from the proceeds of the sale of the Property.  If a sale is not consummated for any or no reason whatsoever, the Broker shall not be entitled to commissions.  The parties acknowledge that the Listing Agreement, this Addendum and any agreement relating to the Property is not binding (including the entering into of a purchase agreement) until Bankruptcy Court approval.  The parties acknowledge that the Bankruptcy Court may after approval of this agreement later reduce commissions agreed to.  In addition, the commissions are subject to the approval of the secured creditor(s) if the sale of the Property is a short sale.  A commission is not earned until Bankruptcy Court approval of a purchase agreement is obtained and escrow is closed.

---

3

# Exhibit 1

8.   <u>Entire Agreement</u>. This Addendum and the Listing Agreement, to the extent that such Listing Agreement is not contrary to the terms and conditions herein, constitute the entire contract between the parties.  All prior agreements between the parties are incorporated into this contract.  Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.  The parties further intend that this agreement constitutes the complete, final and exclusive statement of its terms and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this agreement.

9.   <u>Bankruptcy Court Jurisdiction</u>. The Bankruptcy Court shall have exclusive jurisdiction to resolve any and all disputes relating to this Addendum and the Listing Agreement.

Dated: 1/29/18

LYNDA T. BUI
Chapter 7 Trustee

GLASSRATNER BROKERAGE
SERVICES, INC.

Dated:   1-29-2018

STEVEN SPEIER

\* \* \* \*

4

# Exhibit 1

# Exhibit 2
# Resume

*Steven Speier has served as a Bankruptcy Trustee, Judicial Receiver and Referee, Assignee, Chief Restructuring Officer, Provisional Director, Real Estate Manager and Broker in hundreds of Federal and State Court bankruptcy and litigation cases. He served as the Chapter 11 and/or Liquidating Trustee on nineteen of the SunCal land developments secured by loans of approximately $2.0 billion from various Lehman Bros. entities. His strengths are his restructuring and communication skills. Steve has over thirty years of experience in business serving as a Chief Executive Officer and/or Director of numerous companies. His background encompasses diverse experience in several industries including real estate, public accounting, banking and technology. Steve has been appointed as a Trustee, Assignee, Receiver and/or Referee in hundreds of operating cases including office buildings, retail centers, condominium and apartment complexes, hotels/motels, industrial parks, land developments, residential properties, golf courses and resorts, parking lots, manufacturing, distribution, technology, payroll and finish carpentry companies, operating partnerships, franchises, restaurants, payroll and technology companies. In addition, he has served in the past as the General Partner or on the Board of Directors of companies controlling and managing numerous limited partnerships consisting of approximately 15,000 investors.*

## EXPERIENCE

Mr. Speier began his business career in 1973 with a national public accounting firm in Grand Rapids, Michigan. Shortly after receiving his designation as a Certified Public Accountant in 1975, he joined the banking industry. During his banking career, Mr. Speier specialized in all aspects of real estate. While managing a real estate loan portfolio of approximately $1.5 billion spread throughout the United States, he was responsible for generating and administering new loans annually in excess of $800 million. Upon completion of his banking career, Mr. Speier joined a national real estate investment company where he served as President for seven years until he joined the panel of Chapter 7 bankruptcy trustees in the Central District of California. Subsequently, he served as a partner of a major regional Southern California accounting firm for eleven years specializing in real estate and bankruptcy. He currently is affiliated with GlassRatner Brokerage Services, Inc., a subsidiary of the national restructuring and advisory firm of GlasssRatner. He manages his Trustee and Receivership practices together with his real estate fund management and brokerage practices.

## EDUCATION

• M.B.A., Seidman Graduate School of Business, Grand Rapids, Michigan (1981)
• B.S., Northern Michigan University (1973)

## PROFESSIONAL CREDENTIALS

• Certified Public Accountant, Michigan (1975-Present:Inactive), California (1999-Present)
• Chapter 7 and 11 Bankruptcy Trustee, Central District of California (1998-Present)
• Judicial Receiver, California Superior Courts (1992-Present)
• President, California Bankruptcy Forum (2010-2011)
• Real Estate Broker, Colorado (1984-1992), California (1991-Present), Missouri (1995-2000)

# Exhibit 2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **100 Spectrum Center Drive, Suite 600, Irvine, California  92618**

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S APPLICATION FOR AN ORDER AUTHORIZING EMPLOYMENT OF GLASSRATNER BROKERAGE SERVICES, INC. AS REAL ESTATE BROKER; DECLARATION OF STEVEN SPEIER IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **February 9, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

&#x2612; Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **February 9, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Debtor**
**Russel Dennis Hiles, III, 155 Metate Place, Palm Desert, CA 92260**

&#x2610; Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:**
(state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **Not Applicable**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

&#x2610; Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| February 9, 2018 | Lorre Clapp | /s/ Lorre Clapp |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

# NEF SERVICE LIST

- Lynda T. Bui (TR) Chapter 7 Trustee  trustee.bui@shbllp.com, C115@ecfcbis.com
- Robert P Goe on behalf of Debtor Russel Dennis Hiles, III kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- Everett L Green on behalf of U.S. Trustee United States Trustee (RS) everett.l.green@usdoj.gov
- Rika M. Kido on behalf of Chapter 7 Trustee rkido@shbllp.com, avernon@shbllp.com;ecf.filings@shbllp.com
- Samuel Kornhauser on behalf of Creditor Christopher T Borgeson skornhauser@earthlink.net
- Joshua Lichtman on behalf of Creditor Farmers Insurance Exchange joshua.lichtman@nortonrosefulbright.com, Rhonda.cole@nortonrosefulbright.com
- William F McDonald, III on behalf of Creditor Bank of America, N.A. Caecf@tblaw.com, wfm@tblaw.com;snchampney@tblaw.com
- Charity J Miller on behalf of Debtor Russel Dennis Hiles, III  cmiller@goeforlaw.com, kmurphy@goeforlaw.com;goeforecf@gmail.com
- Randall P Mroczynski on behalf of Creditor Daimler Trust and Ford Motor Credit Company LLC randym@cookseylaw.com
- Ronak N Patel on behalf of Creditor Treasurer Tax Collector County of Riverside rpatel@rivco.org, mdominguez@RIVCO.org
- Steven G Polard on behalf of Interested Party Cynthia Ellen Hiles spolard@eisnerlaw.com, lewing@eisnerlaw.com
- Kelly M Raftery on behalf of Creditor Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A, its assignees and/or successors, by and through its servicing agent Carrington Mortgage Services, LLC bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com
- Jason K Schrader on behalf of U.S. Trustee United States Trustee (RS) jason.K.Schrader@usdoj.gov
- Leonard M. Shulman on behalf of Chapter 7 Trustee lshulman@shbllp.com
- United States Trustee (RS)  on behalf of United States Trustee ustpregion16.rs.ecf@usdoj.gov
- Scott S Weltman on behalf of Creditor KeyBank, N.A. colcaecf@weltman.com
- Rebecca J Winthrop on behalf of Creditor Farmers Insurance Exchange rebecca.winthrop@nortonrosefulbright.com, darla.rodrigo@nortonrosefulbright.com
- Jennifer C Wong on behalf of Creditor Bank of America, N.A. bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com
- Kristin A Zilberstein on behalf of Creditor Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A, its assignees and/or successors, by and through its servicing agent Carrington Mortgage Services, LLC ecfnotifications@ghidottilaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE