Leonard M. Shulman - Bar No. 126349
Rika M. Kido - Bar No. 273780
**SHULMAN HODGES & BASTIAN LLP**
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone:     (949) 340-3400
Facsimile:      (949) 340-3000
Email: LShulman@shbllp.com
        RKido@shbllp.com

Attorneys for Lynda T. Bui,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No.  6:16-bk-16877-WJ |
| **RUSSEL DENNIS HILES, III,** | Chapter 7 |
| Debtor. | **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER:** |

**(1) APPROVING THE SALE OF REAL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS PURSUANT TO BANKRUPTCY CODE §§ 363(b)(1) and (f), SUBJECT TO OVERBIDS, COMBINED WITH NOTICE OF BIDDING PROCEDURES AND REQUEST FOR APPROVAL OF THE BIDDING PROCEDURES UTILIZED;**

**(2) APPROVING SALE OF PERSONAL PROPERTY FREE AND CLEAR OF LIENS PURSUANT TO BANKRUPTCY CODE §§ 363(b)(1) and (f);**

**(3) APPROVING PAYMENT OF REAL ESTATE COMMISSION AND OTHER COSTS; AND**

**(4) GRANTING RELATED RELIEF;**

**MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF LYNDA T. BUI IN SUPPORT THEREOF**

**[Real Property commonly known at 66876 Gist Road, Bend, Oregon 97703]**

**Hearing Date:**
Date:   October 23, 2018
Time:   1:00 p.m.
Place:  Courtroom 304
        United States Bankruptcy Court
        3420 Twelfth Street
        Riverside, CA 92501

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

1

Sale Motion TC Hiles Ranch Property

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................................4

II.     RELEVANT FACTS ...........................................................................................5

    A.      The Bankruptcy Case ................................................................................5

    B.      The Bend Property and Personal Property ...............................................5

    C.      Broker Employment, Marketing Efforts and Sale of the Bend Property ..................6

    D.      Treatment of Liens and Encumbrances Through the Sale .........................7

    E.      Approval of the Bidding Procedures. ........................................................9

    F.      Costs of Sale ...........................................................................................11

    G.      Tax Consequences ..................................................................................12

III.    ARGUMENT .....................................................................................................12

    A.      There is a Good Business Reason for the Sale and the Sale is in the Best
        Interest of the Estate. ...............................................................................12

    B.      The Proposed Sale Should be Allowed Free and Clear of Liens. ...........13

        1.      Section 363(f)(3) – Price Greater than Value..............................14

        2.      Section 363(f)(4) – Bona Fide Dispute. ......................................14

    C.      Request for Payment of Real Estate Commission to Broker and Other Costs.........15

    D.      The Court Has the Authority to Approve the Bidding Procedures ..........15

    E.      The Court Has the Authority to Waive the Fourteen-Day Stay of Sale. .................16

IV.     CONCLUSION ..................................................................................................16

DECLARATION OF LYNDA T. BUI ..............................................................................18

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

# TABLE OF AUTHORITIES

**Page**

## CASES

*In re Atwood*,
    124 B.R. 402 (Bankr. S.D. Ga. 1991) ................................................................... 14

*In re Lionel Corp.*,
    722 F.2d 1063, 1069 (2d Cir. 1983) .................................................................. 12

*In re Milford Group, Inc.*,
    150 B.R. 904 (Bankr. M.D. Pa. 1992) ............................................................... 14

*In re Wilde Horse Enterprises, Inc.*,
    136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ....................................................... 12

## STATUTES

11 U.S.C. §  363(b) ........................................................................................................ 12

11 U.S.C. § 105(a) ......................................................................................................... 15

11 U.S.C. § 328 .............................................................................................................. 15

11 U.S.C. § 328(a) ......................................................................................................... 15

11 U.S.C. § 363(b)(1) .................................................................................................... 15

11 U.S.C. § 363(f) .................................................................................................... 13, 14

11 U.S.C. § 363(f)(3) ..................................................................................................... 14

11 U.S.C. § 363(f)(4) ..................................................................................................... 14

11 U.S.C. § 704 .............................................................................................................. 12

11 U.S.C. § 704(a) ......................................................................................................... 12

## RULES

Local Bankruptcy Rule 6004-1(c)(2)(C) ....................................................................... 12

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

3

**TO THE HONORABLE WAYNE E. JOHNSON, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER PARTIES-IN-INTEREST:**

Lynda T. Bui, solely in her capacity as the Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of Russel Dennis Hiles, III ("Debtor"), brings this Motion for Order: (1) Approving the Sale of Real Property of the Estate Free and Clear of Certain Liens Pursuant to Bankruptcy Code §§ 363(b)(1) and (f), Subject to Overbids, Combined With Notice of Bidding Procedures and Request for Approval of the Bidding Procedures Utilized; (2) Approving Sale of Personal Property Free and Clear of All Liens, Claims and Encumbrances Pursuant to 11 U.S.C. § 363(f); (3) Approving Payment of Real Estate Commission and Other Costs; and (3) Granting Related Relief ("Sale Motion"), and respectfully represents as follows:

## I.    <u>INTRODUCTION</u>

The Trustee has received an offer from Drew Hood or his assignee ("Buyer"), to purchase the real property located at 17345 Plainview Road, Bend, OR 97703, 17265 Plainview Road, Bend, OR 97703, 66876 Gist Road, Bend, OR 97703, and 66822 Gist Road, Bend OR 97703 ("Bend Property") for the price of $1,995,000.00, subject to overbids.  The Buyer has also offered to purchase the Personal Property (defined below) located at the Bend Property for $10,000.00. Through the sale, the Trustee is expected to generate net proceeds of approximately $843,900.00 from the sale of the Bend Property and an additional $10,000.00 from the sale of the Personal Property for the benefit of the Estate and its creditors.  In the event the purchase price for the Bend Property is increased by a successful overbid, the estimated net proceeds from the sale of the Bend Property will increase.  If the sale of the Bend Property and Personal Property is approved, the Estate will receive funds to provide for a distribution to unsecured creditors.  Accordingly, the Trustee believes that good cause exists to grant the Sale Motion so the Trustee does not lose this favorable business opportunity.

///

///

///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

4

## II.    **RELEVANT FACTS**

**A.    The Bankruptcy Case**

The Debtor commenced the instant bankruptcy case by filing a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code on August 1, 2016.  Pursuant to an order entered on December 21, 2017 (Docket No. 275), the case was converted to Chapter 7 and Lynda T. Bui was subsequently appointed as the Trustee for this Estate.

The deadline for filing proofs of claim in this case was April 9, 2018.  The Court's claims register indicates there have been thirty claims filed totaling $22,779,381.46, consisting $3,956,552.40 in secured claims, $4,210,470.09, in priority unsecured claims, $325.00 in administrative claims, and $14,612,033.97 in general unsecured claims.

**B.    The Bend Property and Personal Property**

On his Schedule A/B, the Debtor lists an ownership interest in the Bend Property[1], which is legally described on page 4 of the Preliminary Title Report dated September 13, 2018 ("Title Report"), a copy of which is attached as **Exhibit "1"** to the Declaration of Lynda T. Bui ("Bui Declaration").   The Debtor listed the value of the Bend Property at $12,000,000.00.   On his Schedule C, the Debtor did not claim an exemption in the Bend Property.

On his Schedule D, the Debtor listed the following liens against the Bend Property: (1) a mortgage with Bank of America N.A. ("BofA") in the amount of $783,134.00 ("BofA Lien"); and (2) lien in favor of the Deschutes County Treasurer and Tax Collector in the amount of $5,000.00 (related to real property taxes).  Pursuant to a recent Payoff Statement, the Trustee is advised that the amount due to BofA through October 9, 2018 is $980,826.87.  Attached as **Exhibit "2"** to the Bui Declaration is a true and correct copy of the BofA Payoff Statement good through October 9, 2018.

///

///

---

[1] The Debtor lists his ownership of a 40 acre ranch located at 66876 Gist Road, Bend, Oregon 97703.  Pursuant to title records, the Bend Property is comprised of three parcels: (1) Parcel 1 located at 17345 Plainview Road, Bend, OR 97703; (2) Parcel 2 located at 17265 Plainview Road, Bend, OR 97703; (3) Parcel 3 located at 66822 Gist Road, Bend OR 97703 and 66876 Gist Road, Bend, OR 97703.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

5

1   On his Schedule A/B, the Debtor lists personal property located at the Bend Property as "furniture, antiques, paintings and collectibles" ("Personal Property"). The Debtor listed the value of the Personal Property at $550,000.00. On his Schedule C, the Debtor did not claim an exemption in the Personal Property.

The Trustee is informed and believes that the Debtor significantly over-stated the value of the Personal Property. The Trustee is informed by a local auctioneer that the Personal Property, after a piecemeal auction sale, has a total estimated liquidation value of approximately $10,000.00 to $25,000.00. If the Trustee were to auction the Personal Property for sale, the net to the Estate would be less after deducting the auctioneer's commission (25% to 50% to compensate the auctioneer for advertising and labor costs to set up and conduct the auction).

**C.    Broker Employment, Marketing Efforts and Sale of the Bend Property**

On January 23, 2018 the Trustee filed an application (Docket No. 292) to employ Strategic Realty, LLC as her real estate broker ("Broker") to assist in marketing the Bend Property for sale, which was approved by Court order entered on February 20, 2018 (Docket No. 310).

The Estate does not have the funds to obtain a formal written appraisal for the estimated value of the Bend Property. The Broker is experienced in the sale of real property as well as property valuations and is familiar with valuing real property in today's economic environment. After conducting an on-site inspection, the Broker informed the Trustee that the Bend Property may be worth approximately $2,995,000.00 and that the Broker recommended listing the Property for sale at $2,995,000.00.

Through her Broker, the Trustee has marketed the Bend Property for over seven (7) months. The Trustee received only two offers for the Bend Property. The first potential buyer offered less than the current Buyer (defined below). The offer from the Buyer that is the subject of this Sale Motion is the best and highest offer received for the Bend Property. The Buyer's offer is the result of negotiations between the Trustee and the Buyer for the highest and best offer.

///

///

///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

6

The Buyer has offered to purchase the Bend Property for $1,995,000.00.  The purchase price includes a deposit of $25,000.00.  The Buyer has also offered to purchase all personal property located at the Bend Property for $10,000.00.  Attached as **Exhibit "3"** to the Bui Declaration is a true and correct copy of the Residential Real Estate Sale Agreement and related addendum (collectively the "Agreement").  Given that the sale of the Bend Property is subject to overbids, it is anticipated that the Trustee will receive the best and highest value for the Bend Property and therefore the proposed sale price is fair and reasonable.

**D.    Treatment of Liens and Encumbrances Through the Sale**

The following chart sets forth the liens and encumbrances against the Bend Property as detailed in the Title Report and the proposed treatment of such liens and encumbrances through the sale:

| Creditor | Description | Estimated Amount Owing | Treatment of Lien Through the Sale |
|---|---|---|---|
| Deschutes County Treasurer and Tax Collector | Real property taxes (current and past due) | $7,834.11 | All outstanding real property taxes will be paid through escrow on the sale transaction. |
| Deschutes County Treasurer and Tax Collector | Exclusive farm use property tax liability | $34,315.34 | All outstanding property tax liabilities will be paid through escrow on the sale transaction. |
| Deschutes County Treasurer and Tax Collector | Exclusive farm use property tax liability | $11,643.43 | All outstanding property tax liabilities will be paid through escrow on the sale transaction. |
| Sun Mountain Water Systems | Regulations, including levies, liens, assessments, water and easements | $643.00 | This lien will be paid through escrow on the sale transaction. Thus, this lien will be released, discharged and terminated at the close of escrow and the Property will be sold free and clear of this lien and the lien will **not** attach to the sale proceeds. |
| Bank of America | Deed of Trust recorded against the Bend Property on September 23, 2008 in the amount of $862,500.00, Recording No. 2008-38837 | $980,826.87 (good through 10/9/18) | This lien will be paid through escrow on the sale transaction. Thus, this lien will be released, discharged and terminated at the close of escrow and the Property will |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

7

| Creditor | Description | Estimated Amount Owing | Treatment of Lien Through the Sale |
|---|---|---|---|
| | | | be sold free and clear of this lien and the lien will **not** attach to the sale proceeds. |
| Farmers Insurance Exchange, an inter-insurance exchange ("Farmers") | Pending court action, *Farmers Insurance Exchange, et. al. v. Hiles*, in Deschutes Circuit Court, Case No. 16CV20120 ("Farmers Action"). | Unknown | A Notice of Pendency of Action was not filed regarding the Farmers Action. However, since the Bend Property is identified in the complaint filed in the Farmers Action, it was picked up by title as is common in Oregon.<br><br>The Trustee, through her counsel, has communicated with Farmers' counsel and Farmers has agreed to dismiss the Farmers Action. Before the Farmers Action may be dismissed, Farmers will request relief from stay from the Court to dismiss the Farmers Action.<br><br>This "lien" is subject to a bona fide dispute. The complaint commencing the Farmers Action was recorded within 90 days prior to the Petition Date and so the Trustee asserts the "lien" created by the filing of the Farmers Action is a preferential transfer that the Trustee may avoid and recover pursuant to 11 U.S.C. §§ 547 and 550.<br><br>As it is subject to a bona fide dispute, in the event the Farmers Action has not been dismissed prior to the close of escrow on the Bend Property, pursuant to Bankruptcy Code §§ 363(b) (1) and (f)(4), the Trustee seeks to sell the Property free and clear of this "lien" with such disputed lien to attach to the proceeds of the sale in the same validity and priority as prior to the sale |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

| Creditor | Description | Estimated Amount Owing | Treatment of Lien Through the Sale |
|---|---|---|---|
| | | | pending agreement with the lienholder or further Court order. |

All costs of sale, including escrow fees and real estate commissions will be paid at closing.

**E.      Approval of the Bidding Procedures.**

The Trustee has determined that it would benefit the Estate to permit all interested parties to receive information and bid for the Bend Property instead of selling the Bend Property to the Buyer on an exclusive basis.  Accordingly, in order to obtain the highest and best offer for the benefit of the creditors of this Estate, the Trustee is utilizing and also seeks Court approval of the following bidding procedures ("Bidding Procedures"):

1.      Potential overbidder(s) must bid an initial amount of at least $10,000.00 over the Purchase Price for the Bend Property and $2,000.00 for the Personal Property for a total of $2,017,000.00.  Initial bid amount for just the Bend Property shall be $2,005,000.00.  The Personal Property is not available for overbidders who do not also bid on the Bend Property. Minimum bid increments, with or without the Personal Property, thereafter shall be $5,000.00. The Trustee shall have sole discretion in determining which overbid is the best for the Estate and will seek approval from the Court of the same.

2.      Overbids must be in writing and be received by the Trustee and the Trustee's counsel, Shulman Hodges & Bastian LLP to the attention of Rika M. Kido or before **5:00 p.m. (California time) on October 16, 2018 (seven days prior to the hearing on this Sale Motion).**

3.      Overbids must be accompanied by certified funds in an amount equal to three percent (3%) of the overbid purchase price.

4.      The overbidder must also provide evidence of having sufficient specifically committed funds to complete the transaction, or a lending commitment for the bid amount and such other documentation relevant to the bidder's ability to qualify as the purchaser of the Bend Property and ability to close the sale and immediately and unconditionally pay the winning bid purchase price at closing.

5.      The overbidder must seek to acquire the Bend Property on terms and conditions not less favorable to the Estate than the terms and conditions to which the Buyer has agreed to purchase the Bend Property as set forth in the Agreement attached as **Exhibit "3"** to the Bui Declaration including no contingencies and closing on the sale in the same time parameters as the Buyer.

6.      All competing bids must acknowledge that the Property is being sold on an "AS IS" basis without warranties of any kind, expressed or implied, being given by the Trustee, concerning the condition of the Bend Property or the quality of the title thereto, or any other matters relating to the Bend Property.  The competing bid buyer must represent and warrant that

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

9

he/she is purchasing the Bend Property as a result of their own investigations and are not buying the Bend Property pursuant to any representation made by any broker, agent, accountant, attorney or employee acting at the direction, or on the behalf of the Trustee. The competing bidder must acknowledge that he/she has inspected the Bend Property, and upon closing of Escrow governed by the Agreement, the competing buyer forever waives, for himself/herself, his/her heirs, successors and assigns, all claims against the Debtor, his agents, the Debtor's Estate, Lynda T. Bui as Trustee and individually, and her attorneys, agents and employees, arising or which might otherwise arise in the future concerning the Property.

7.    If overbids are received, the final bidding round shall be held at the hearing on the Sale Motion (**October 23, 2018 at 1:00 p.m., California Time, at the U.S. Bankruptcy Court, Courtroom 301, 3420 Twelfth Street, Riverside, California 92501**), or if rescheduled, upon telephonic notice to the Buyer and the parties having submitted overbids in order to allow all potential bidders the opportunity to overbid and purchase the Bend Property. At the final bidding round, the Trustee or her counsel will, in the exercise of their business judgment and subject to Court approval, accept the bidder who has made the highest and best offer to purchase the Bend Property, consistent with the Bidding Procedures ("Successful Bidder").

8.    At the hearing on the Sale Motion, the Trustee will seek entry of an order, inter alia, authorizing and approving the sale of the Bend Property to the Successful Bidder. The hearing on the Sale Motion may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the hearing on the Sale Motion.

9.    In the event the Successful Bidder fails to close on the sale of the Bend Property within the time parameters approved by the Court, the Trustee shall retain the Successful Bidder's Deposit and will be released from his obligation to sell the Bend Property to the Successful Bidder and the Trustee may then sell the Property to the first back-up bidder approved by the Court at the hearing on the Sale Motion ("First Back-Up Bidder").

10.    In the event First Back-Up Bidder fails to close on the sale of the Bend Property within the time parameters approved by the Court, the Trustee shall retain the First Back-Up Bidder's Deposit and will be released from her obligation to sell the Bend Property to the First Back-Up Bidder and the Trustee may then sell the Bend Property to the second back-up bidder approved by the Court at the hearing on the Sale Motion ("Second Back-Up Bidder").

The Bidding Procedures will be provided to all creditors and any potential bidders or parties who have shown an interest in the Bend Property. In addition, the Court's mandatory form Notice of Sale of Estate Property will be filed with the Court so that notice of the sale of the Property may be posted on the Court's website under the link "Current Notices of Sales," thereby giving notice to any potential interested parties.

Based on the foregoing, the Trustee believes that under the circumstances of this case, the Property will have been appropriately marketed for bidding.

///

///

///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

**F.**     **Costs of Sale**

Under the listing agreement for the Bend Property, the Broker is entitled to a commission on the sale in an amount not to exceed five percent (5%) of the purchase price.  The Trustee seeks authorization to pay a real estate broker commission in the amount of $99,750.00[2] to be split as follows:

| | |
|---|---|
| Trustee (carve-out for the Estate) | 1% (or $19,950.00) |
| Trustee's Broker, Strategic Realty, LLC | 2% (or $39,900.00) |
| Selling Broker, Keller Williams Central Oregon | 2% (or $39,900.00) |
| Total | 5% (or $99,750.00) |

The Trustee also seeks approval to use proceeds from the sale of the Bend Property to reimburse her Broker in an amount not to exceed $2,000.00 for the expenses the Broker incurred and will incur for maintenance and repair of the Bend Property.  This amount includes estimated final bills for utilities that are to be paid by the Broker through closing and the cost of re-keying the Bend Property.  Attached as **Exhibit "4"** to the Bui Declaration is a true and correct copy of the invoice and expense receipts that have already been paid by the Broker in the total amount of $1,203.45.

The Trustee also seeks approval to use proceeds from the sale of the Bend Property to pay the Estate's liability insurance premiums totaling approximately $14,049.10 through October 31, 2018 for the Bend Property.  Attached as **Exhibit "5"** to the Bui Declaration is a true and correct copy of the September 27, 2018 invoice from Trustee Insurance Agency.

Escrow fees shall be split between Buyer and the Estate in the manner customary in the County where the Bend Property is located (Deschutes County, Oregon).

---

[2]  The total amount of real estate broker's commission will increase if the purchase price for the Bend Property is increased by a successful overbid; but in no event will exceed five percent (5%) of the purchase price.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

1    In summary, the costs of the sale are estimated to be $139,650.00 (estimated at 6%,

2  including the real estate commission[3]), plus $2,000.00 for the Broker's costs and the Estate's

3  insurance premiums of $14,872.38, for a total amount of approximately $152,958.75.

4  **G.    Tax Consequences**

5    The Trustee has communicated with her accountant and believes there will be no tax

6  liability from the sale.  The estimated tax basis for the Bend Property far exceeds the sale price:

7  $1,350,000.00 for vacant land and an estimated $10,000,000.00 for improvements made by the

8  Debtor.[4]

9  ### III.    ARGUMENT[5]

10  **A.    There is a Good Business Reason for the Sale and the Sale is in the Best Interest of**

11  **the Estate.**

12    The duties of a trustee in a Chapter 7 filing are enumerated in 11 U.S.C. § 704, which

13  provides in relevant part as follows:

14    (a) The trustee shall—

15    (1) collect and reduce to money the property of the estate for which
16    such trustee serves, and close such estate as expeditiously as is
      compatible with the best interests of parties in interest;

17    (2) be accountable for all property received;

18  11 U.S.C. § 704(a).  Further, the Trustee, after notice and hearing, may sell property of the estate.

19  11 U.S.C. § 363(b).  Courts ordinarily will approve a proposed sale if there is a good business

20  reason for the sale and the sale is in the bests interests of the estate.  *In re Wilde Horse*

21  *Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re Lionel Corp.*, 722 F.2d 1063,

22  1069 (2d Cir. 1983).  In this case, the sale is anticipated to net the Estate approximately

---

23  [3] As provided above and in the Agreement, the Broker and buyer's broker have agreed to each receive two percent
24  (2%) of the commission such that the Estate will receive a carve-out of $19,950.00. Other costs of sale, including
    escrow costs, are estimated at one percent (1%) or $19,995.00, but such costs are anticipated to be significantly less,
25  providing additional funds for the benefit of unsecured creditors.

26  [4] Real property records indicate there were two Warranty Deeds conveying the Bend Property to the Debtor, with the
    actual consideration of one in the amount of $1,150,000.00 and the other listing actual consideration of $200,000.00.
    The Debtor testified at his Section 341(a) meeting of creditors that he spent in approximately $10,000,000.00
27  constructing the 10,000 square foot residence.

28  [5] Although Local Bankruptcy Rule 6004-1(c)(2)(C) does not require that a memorandum of points and authorities be
    filed in support of the Motion, the Trustee is nevertheless submitting one.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

12

$843,900.00 for the Bend Property, plus $10,000.00 for the Personal Property, calculated as follows (amounts are estimated):

| | |
|---|---|
| Sale Price (or an amount as increased by overbid) | $1,995,000.00 |
| *Less* costs of sale, including real estate commission (estimated at 6%) | ($119,700.00) |
| *Less* real property taxes (estimated) | ($7,834.11) |
| *Less* exclusive farm use property tax liability (estimated) | ($45,958.77) |
| *Less* Sun Mountain Water Systems lien | ($643.00) |
| *Less* payoff to the first trust deed holder, Bank of America N.A. (estimated) | ($980,826.87) |
| *Less* reimbursements of costs to the Trustee's Broker (estimated) | ($2,000.00) |
| *Less* payment of liability insurance premiums | ($14,049.10) |
| *Plus* carve-out to Estate from broker commission | $19,950.00 |
| **Estimated net sale proceeds from the Bend Property** | **$843,938.20** |
| **Estimated net sale proceeds from the Personal Property** | **$10,000.00** |

The Trustee believes that, from the net sale proceeds, she will be able to make a meaningful distribution to unsecured creditors in this case.

**B.    The Proposed Sale Should be Allowed Free and Clear of Liens.**

Bankruptcy Code Section 363(f) allows a trustee to sell property of the bankruptcy estate "free and clear of any interest in such property of an entity," if any one of the following five conditions is met:

> (1)    applicable non-bankruptcy law permits a sale of such property free and clear of such interest;

> (2)    such entity consents;

> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

> (4)    such interest is in bona fide dispute; or

> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

11 U.S.C. § 363(f).

///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

13

1    Section 363(f) is written in the disjunctive and thus only one of the enumerated conditions

2  needs to be satisfied for Court approval to be appropriate.  The Trustee is not aware of any liens

3  and encumbrances impacting the Personal Property.  Out of an abundance of caution, the Trustee

4  seeks to the sell the Personal Property free and clear of any and all liens and encumbrances, with

5  all such liens and encumbrances not satisfied through the sale to attach to the proceeds of the sale

6  with the same priority, validity, force and effect as they existed with respect to the Personal

7  Property before the closing of the sale pending further Court order or agreement with the parties.

8  Accordingly, the Trustee seeks to sell the Personal Property under Section 363(f) of the

9  Bankruptcy Code

10    For the Bend Property, the Trustee proposes to sell the Bend Property under Sections

11  363(f)(3) and 363(f)(4) of the Bankruptcy Code as provided below.

12    **1.    <u>Section 363(f)(3) – Price Greater than Value.</u>**

13    The sale of the Bend Property is proper pursuant to Section 363(f)(3).  The sale price is for

14  a sum that is greater than the aggregate value of the non-disputed liens listed in the Title Report.

15    **2.    <u>Section 363(f)(4) – Bona Fide Dispute.</u>**

16    A bona fide dispute has been defined by *In re Atwood*, 124 B.R. 402 (Bankr. S.D. Ga.

17  1991) as a "genuine issue of material fact that bears upon the debtor's liability, or meritorious

18  contention as to the application of law to undisputed facts." *Id.* at 407.  In *In re Milford Group,*

19  *Inc.,* 150 B.R. 904 (Bankr. M.D. Pa. 1992), the court stated it need not resolve a bona fide dispute,

20  but must determine whether the issues presented are genuine as to the existence of a bona fide

21  dispute.  In doing so, the court in *Milford* found that the debtor had met its burden to establish

22  cause for the court to allow for the sale of the Bend Property, free and clear of liens.

23    Here, the Title Report includes the Farmers Action as a "lien" because the complaint

24  referenced the Bend Property.  The complaint in the Farmers Action was filed within 90 days prior

25  to the Petition Date and so the Trustee asserts the "lien" created by the Farmers Action is a

26  preferential transfer that the Trustee may avoid and recover pursuant to 11 U.S.C. §§ 547 and 550.

27  While the Trustee expects that the Farmers Action will be dismissed prior to closing on the sale of

28  the Bend Property, out of an abundance of caution, as it is subject to a bona fide dispute pursuant

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

1    to Bankruptcy Code §§ 363(b) (1) and (f)(4), the Trustee seeks to sell the Bend Property free and

2    clear of this "lien" with such disputed lien to attach to the proceeds of the sale in the same validity

3    and priority as prior to the sale pending agreement with the lienholder or further Court order.

4    Thus, approval for the sale free and clear of the lien as a disputed lien pursuant to Bankruptcy

5    Code § 363(f)(4) is appropriate.

6    **C.    Request for Payment of Real Estate Commission to Broker and Other Costs.**

7          Section 328 of the Bankruptcy Code allows employment of a professional person under

8    Section 327 "on any reasonable terms and conditions of employment, including on a retainer, on

9    an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. §

10   328(a).  Through this Sale Motion, the Trustee seeks authorization to pay a real estate broker

11   commission not exceed a total of five percent (5%) of the final purchase price to be split as

12   follows:  1% for the Estate, 2% for the Trustee's Broker (Strategic Realty, LLC) and 2% for the

13   Selling Broker (Keller Williams Central Oregon).

14         In addition, the Trustee seeks approval to use proceeds from the sale to reimburse the

15   Broker an amount not to exceed $2,000.00 for the expenses he incurred and will incur for the

16   maintenance and repair of the Bend Property.  This amount includes estimated final bills for

17   utilities that are to be paid by the Broker through closing of the sale and the cost to have the Bend

18   Property re-keyed. (*See* Bui Declaration, Ex. 4)

19         The Trustee also seeks approval to use proceeds from the sale of the Bend Property to pay

20   the Estate's liability insurance premiums totaling approximately $14,049.10 through October 31,

21   2018 for the Bend Property. (*See* Bui Declaration, Ex. 5)

22   **D.    The Court Has the Authority to Approve the Bidding Procedures**

23         Implementing the Bidding Procedures is an action outside of the ordinary course of the

24   business.  Section 363(b)(1) of the Bankruptcy Code provides that a trustee "after notice and

25   hearing, may use, sell or lease, other than in the ordinary course of business, property of the

26   estate." 11 U.S.C. § 363(b)(1).  Furthermore, under Bankruptcy Code Section 105(a), "[t]he court

27   may issue any order, process, or judgment that is necessary or appropriate to carry out the

28   provisions of this title." 11 U.S.C. § 105(a).  Thus, pursuant to Sections 363(b)(1) and 105(a) of

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

15

1   the Bankruptcy Code, this Court may approve the Bidding Procedures, which will assist the

2   Trustee to obtain the best possible price on the best possible terms for the Bend Property.

3   **E.      The Court Has the Authority to Waive the Fourteen-Day Stay of Sale.**

4          Federal Rule of Bankruptcy Procedure 6004(h) provides that "[a]n order authorizing the

5   use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days

6   after entry of the order, unless the Court orders otherwise." Fed. Rule Bankr. P. 6004(h).

7          The Trustee desires to close the sale of the Bend Property as soon as practicable after entry

8   of an order approving the sale.  Accordingly, the Trustee requests that the Court, in the discretion

9   provided it under Federal Rule of Bankruptcy Procedure 6004(h), waive the fourteen (14) day stay

10  requirement.

11                          **IV.      CONCLUSION**

12         Based on the reasons set forth above, the Trustee respectfully request submits that good

13  cause exists for granting the Sale Motion and requests that the Court enter an order as follows:

14         1.      Approving the Bidding Procedures set forth above for the sale of the Bend

15  Property.

16         2.      Authorizing the Trustee to sell the Bend Property on an as-is, where-is basis,

17  without any warranties or representations, to the Buyer (or Successful Bidder) pursuant to the

18  terms and conditions as set forth in the Agreement attached as **Exhibit "3"** to the Bui Declaration.

19         3.      Authorizing the Trustee to sell the Personal Property to the Buyer or to Successful

20  Bidder.

21         4.      Authorizing the sale of the Bend Property and the Personal Property free and clear

22  of liens, with liens not satisfied through the sale to attach to the sale proceeds in the same validity

23  and priority as prior to the closing of the sale.

24         5.      Authorizing the Trustee to pay from the proceeds of the sale of the Bend Property

25  all ordinary and customary costs of sale, including escrow fees.

26         6.      Authorizing the Trustee to sign any and all documents convenient and necessary in

27  pursuit of the sale as set forth above, including but not limited to any and all conveyances

28  contemplated by the Agreement attached as **Exhibit "3"** to the Bui Declaration.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

16

7.    Approving the payment of the real estate commission in the total amount not to exceed five percent (5%) of the purchase price.

8.    Authorizing the Trustee to pay liens, costs of sale and other expenses directly from the sale proceeds at the close of escrow including: (i)  all real estate taxes owed to the Deschutes County Treasurer and Tax Collector, (ii) exclusive farm use tax liabilities owed to the Deschutes County Treasurer and Tax Collector, (iii) all amounts owed to Sun Mountain Water Systems; (iv) all amounts owed to BofA, (v) real estate commission not to exceed 5%, and (vi) escrow fees which shall be split between Buyer and Estate in the manner customary in the County where the Property is located (Deschutes County, Oregon).

9.    Authorizing the Trustee to use the proceeds from the sale of the Bend Property to (i) reimburse the Broker's costs related to the Bend Property in the amount not to exceed $2,000.00, and (ii) pay the Estate's liability insurance premium in the amount of $14,049.10.

10.    Determining that the Buyer is in good faith pursuant to Bankruptcy Code Section 363(m).

11.    Waiving the fourteen day stay of the order approving the sale of the Oregon Ranch under Federal Rules of Bankruptcy Procedure 6004(h).

12.    For such other and further relief as the Court deems just and proper under the circumstances of this case.

Respectfully submitted,

Dated:  October 2, 2018    **SHULMAN HODGES & BASTIAN LLP**

/s/ Rika M. Kido

Leonard M. Shulman
Rika M. Kido
Attorneys for Lynda T. Bui, Chapter 7 Trustee
for the bankruptcy estate of Russel Dennis Hiles, III

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

17

## DECLARATION OF LYNDA T. BUI

I, Lynda T. Bui, declare and state as follows:

1.     I am the duly appointed, qualified and acting Chapter 7 trustee for the bankruptcy estate of Russel Dennis Hiles, III, Case No. 6:16-bk-16877-WJ ("Debtor"). I have personal knowledge of the facts set forth herein, and if called and sworn as a witness, I could and would competently testify thereto, except where matters are stated on information and belief, in which case I am informed and believe that the facts so stated are true and correct.

2.     I am familiar with the Debtor's bankruptcy case and make this Declaration in support of my Motion for Order: (1) Approving the Sale of Real Property of the Estate Free and Clear of Certain Liens Pursuant to Bankruptcy Code §§ 363(b)(1) and (f), Subject to Overbids, Combined With Notice of Bidding Procedures and Request for Approval of the Bidding Procedures Utilized; (2) Approving Sale of Personal Property Free and Clear of All Liens, Claims and Encumbrances Pursuant to 11 U.S.C. § 363(f); (3) Approving Payment of Real Estate Commission and Other Costs; and (3) Granting Related Relief ("Sale Motion"). All capitalized terms not otherwise defined herein shall have the meaning set forth in the Sale Motion.

3.     I have read and I am aware of the contents of the Sale Motion and the accompanying Memorandum of Points and Authorities. The facts stated in the Sale Motion and the Memorandum of Points and Authorities are true to the best of my knowledge.

4.     The deadline for filing proofs of claim in this case was April 9, 2018. The Court's claims register indicates there have been thirty claims filed totaling $22,779,381.46, consisting $3,956,552.40 in secured claims, $4,210,470.09, in priority unsecured claims, $325.00 in administrative claims, and $14,612,033.97 in general unsecured claims.

5.     Attached hereto as **Exhibit "1"** is true and copy of the Preliminary Title Report dated September 13, 2018 ("Title Report").

6.     Pursuant to a recent Payoff Statement, I am advised that the amount due to BofA through October 9, 2018 is $980,826.87. Attached hereto as **Exhibit "2"** is a true and correct copy of the BofA Payoff Statement good through October 9, 2018.

///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

7.      I am informed and believe that the Debtor significantly over-stated the value of the Personal Property.  I am informed by a local auctioneer that the Personal Property, after a piecemeal auction sale, has a total estimated liquidation value of approximately $10,000.00 to $25,000.00.  If I were to auction the Personal Property for sale, the net to the Estate would be less after deducting the auctioneer's commission (25% to 50% to compensate the auctioneer for advertising and labor costs to set up and conduct the auction).

8.      The Estate does not have the funds to obtain a formal written appraisal for the estimated value of the Bend Property.  The Broker is experienced in the sale of real property as well as property valuations and is familiar with valuing real property in today's economic environment.  After conducting an on-site inspection, the Broker informed me that the Bend Property may be worth approximately $2,995,000.00 and that the Broker recommended listing the Property for sale at $2,995,000.00.

9.      Through my Broker, I have marketed the Bend Property for over seven (7) months.  I have received only two offers for the Bend Property.  The first potential buyer offered less than the current Buyer (defined below).  The offer from the Buyer that is the subject of this Sale Motion is the best and highest offer received for the Bend Property.  The Buyer's offer is the result of negotiations between the Buyer and I for the highest and best offer.

10.      Through my Broker I received an offer from the Buyer, Drew Hood, who has offered to purchase the Bend Property for $1,995,000.00, subject to overbids.  The purchase price includes a deposit of $25,000.00.  The Buyer has also offered to purchase the Personal Property for $10,000.00.  Attached hereto as **Exhibit "3"** is a true and correct copy of the Residential Real Estate Sale Agreement and related addendum (collectively the "Agreement").

11.      In the Sale Motion, I seek approval to use proceeds from the sale of the Bend Property to reimburse her Broker in an amount not to exceed $2,000.00 for the expenses the Broker incurred and will incur for maintenance and repair of the Bend Property.  This amount includes estimated final bills for utilities that are to be paid by the Broker through closing and the cost of re-keying the Bend Property.  Attached hereto **Exhibit "4"** are true and correct copies of

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

19

1    the invoice and expense receipts that have already been paid by the Broker in the total amount of

2    $1,203.45.

3    12.    In the Sale Motion, I also seek approval to use proceeds from the sale of the Bend

4    Property to pay the Estate's liability insurance premiums totaling approximately $14,049.10

5    through October 31, 2018 for the Bend Property. Attached hereto as **Exhibit "5** is a true and

6    correct copy of the September 27, 2018 invoice from Trustee Insurance Agency.

7    13.    I have communicated with my accountant and believes there will be no tax liability

8    from the sale. The estimated tax basis for the Bend Property far exceeds the sale price:

9    $1,350,000.00 for vacant land and an estimated $10,000,000.00 for improvements made by the

10   Debtor.[6]

11   14.    Through the sale, I expect to net the Estate approximately $843,900.00 for the

12   Bend Property, plus $10,000.00 for the Personal Property, for a total of $853,900.00, which will

13   benefit the Estate by providing funds for a distribution to holders of unsecured claims.

14   15.    For the reasons set forth in the Sale Motion and this Declaration, I believe that

15   good cause exists to grant the Sale Motion and respectfully request that the Court grant the Sale

16   Motion so that I do not lose this favorable business opportunity to provide a significant benefit to

17   the Estate.

18   I declare under penalty of perjury pursuant to the laws of the United States of America that

19   the foregoing is true and correct.

20   EXECUTED on October 2, 2018, at Irvine, California.

21

22

23   Lynda T. Bui

24

25

26

27   [6] Real property records indicate there were two Warranty Deeds conveying the Bend Property to the Debtor, with the
actual consideration of one in the amount of $1,150,000.00 and the other listing actual consideration of $200,000.00.

28   The Debtor testified at his Section 341(a) meeting of creditors that he spent in approximately $10,000,000.00
constructing the 10,000 square foot residence.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-000\1265036.1

# Exhibit 1

# Title Report



## PRELIMINARY REPORT

In response to the application for a policy of title insurance referenced herein Western Title & Escrow Company hereby reports that it is prepared to issue, or cause to be issued, as of the specified date, a policy or policies of title insurance describing the land and the estate or interest hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.

The printed Exceptions and Exclusions from the coverage of said policy or policies are set forth in Exhibit One. The policy to be issued may contain an arbitration clause.  When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.  Copies of the policy forms should be read.  They are available from the office which issued this report.

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby.

The policy(s) of title insurance to be issued hereunder will be policy(s) of Fidelity National Title Insurance Company, a/an Florida corporation.

**Please read the exceptions shown or referred to herein and the Exceptions and Exclusions set forth in Exhibit One of this report carefully.  The Exceptions and Exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.**

This preliminary report is for the exclusive use of the parties to the contemplated transaction, and the Company does not have any liability to any third parties nor any liability until the full premium is paid and a policy is issued. Until all necessary documents are placed of record, the Company reserves the right to amend or supplement this preliminary report.

*Countersigned*

_____

EXHIBIT 1



## Western Title & Escrow

360 SW Bond Street, Suite 100, Bend, OR 97702
(541)389-5751  FAX (541)330-1242

## PRELIMINARY REPORT

| | |
|---|---|
| **ESCROW OFFICER:**  Christina A. Moore | **ORDER NO.:** WT0161795 |
| christina.moore@westerntitle.com | **Revision** 2 (Update 12 and 13, |
| 541-330-1214 | delete 17 and 21) |

**TITLE OFFICER:**    Dave I. Hemmerling
Email:  titleofficersupport@westerntitle.com

**TO:**  Western Title & Escrow Company
360 SW Bond Street, Suite 100
Bend, OR 97702

**ESCROW LICENSE NO.:** 870700109
**OWNER/SELLER:**  Lynda T. Bui
**BUYER/BORROWER:** Drew Hood
**PROPERTY ADDRESS:**  66876 Gist Road (Parcel 3), Bend, OR 97703
17265 Plainview Road (Parcel 2), Bend, OR 97703
17345 Plainview Road (Parcel 1), Bend, OR 97703
66822 Gist Road (Parcel 3), Bend, OR 97703

**EFFECTIVE DATE:  September 13, 2018, 05:00 PM**

1. THE POLICY AND ENDORSEMENTS TO BE ISSUED AND THE RELATED CHARGES ARE:

| | **AMOUNT** | **PREMIUM** |
|---|---|---|
| ALTA Owner's Policy 2006 | $  1,995,000.00 | $  3,593.00 |
| **Owner's Standard** | | |
| ALTA Loan Policy 2006 | $  1,200,000.00 | $  820.00 |
| **Extended Lender's** | | |
| **Proposed Insured:  Blue Ridge Bank and Trust Co.** | | |
| OTIRO 209.10-06 - Restrictions, Encroachments, Minerals - Current Violations (ALTA 9.10-06) | | $  100.00 |
| OTIRO 222-06 - Location (ALTA 22-06) | | $  0.00 |
| OTIRO 208.1-06 - Environmental Protection Lien (ALTA 8.1-06) | | $  0.00 |
| Government Lien Search | | $  100.00 |

2. THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

Fee Simple

3. TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

Russel D. Hiles

4. THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE CITY OF BEND, COUNTY OF DESCHUTES, STATE OF OREGON, AND IS DESCRIBED AS FOLLOWS:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

EXHIBIT 1

Order No.:  WT0161795
Revision 2 (Update 12 and 13, delete 17 and 21)

# PRELIMINARY REPORT
(continued)

EXHIBIT 1

Order No.:  WT0161795
Revision 2 (Update 12 and 13, delete 17 and 21)

# EXHIBIT "A"
Legal Description

Parcel 1:

A Parcel of land situated in the Southwest Quarter (SW1/4) of Section 31, Township 15 South, Range 11, East of the Willamette Meridian, Deschutes County, Oregon, described as follows:

That portion of the Southeast Quarter of the Southwest Quarter (SE1/4 SW1/4) of said Section 31, lying South of Plainview Road and lying West of Sisemore Road and lying North of that certain parcel of land described in Volume 132, Page 421, of Deed Records.

Parcel 2:

Parcel 2 of Partition Plat No. 2000-55, Plat filed October 13, 2000 in the office of the County Clerk for Deschutes County, Oregon.

Parcel 3:

Parcel 1 of Partition Plat 2000-55, Plat filed October 13, 2000 in the office of the County Clerk for Deschutes County, Oregon.

EXHIBIT 1

Order No.: WT0161795
Revision 2 (Update 12 and 13, delete 17 and 21)

**AS OF THE DATE OF THIS REPORT, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN THE POLICY FORM WOULD BE AS FOLLOWS:**

### GENERAL EXCEPTIONS:

1.    Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.    Any facts, rights, interests or claims, which are not shown by the Public Records but which could be ascertained by an inspection of the Land or by making inquiry of persons in possession thereof.

3.    Easements, or claims of easement, which are not shown by the Public Records; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.

4.    Any encroachment (of existing improvements located on the Land onto adjoining land or of existing improvements located on adjoining land onto the subject Land), encumbrance, violation, variation or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the subject Land.

5.    Any lien or right to a lien for services, labor, material, equipment rental or workers compensation heretofore or hereafter furnished, imposed by law and not shown by the Public Records.

### SPECIFIC ITEMS AND EXCEPTIONS:

6.    Property taxes in an undetermined amount, which are a lien but not yet payable, including any assessments collected with taxes to be levied for the fiscal year 2018-2019.

7.    Unpaid Property Taxes are as follows:

Fiscal Year:        2015-2016
Amount:             $27.15, plus interest, if any

Fiscal Year:        2016-2017
Amount:             $28.96, plus interest, if any

Fiscal Year:        2017-2018
Amount:             $29.39, plus interest, if any
Levy Code:          6012
Account No.:        169610
Map No.:            1511310000099
(Parcel 1)

EXHIBIT 1

Order No.: WT0161795
Revision 2 (Update 12 and 13, delete 17 and 21)

Unpaid Property Taxes are as follows:

| | |
|---|---|
| Fiscal Year: | 2014-2015 |
| Original Amount: | $1,813.18, plus interest, if any |
| Balance Due: | $16.12 |

| | |
|---|---|
| Fiscal Year: | 2015-2016 |
| Amount: | $1,934.79, plus interest, if any |

| | |
|---|---|
| Fiscal Year: | 2016-2017 |
| Amount: | $2,064.77, plus interest, if any |

| | |
|---|---|
| Fiscal Year: | 2017-2018 |
| Amount: | $2,098.32, plus interest, if any |
| Levy Code: | 6012 |
| Account No.: | 201617 |
| Map No.: | 1511310002201 |
| (Parcel 2) | |

Prior to close of escrow, please contact the Tax Collector's Office to confirm all amounts owing, including current fiscal year taxes, supplemental taxes, escaped assessments and any delinquencies.

8.    Note: Property taxes for the fiscal year shown below are paid in full.

| | |
|---|---|
| Fiscal Year: | 2017-2018 |
| Amount: | $18,554.87 |
| Levy Code: | 6012 |
| Account No.: | 130924 |
| Map No.: | 1511310002200 |
| (Parcel 3) | |

Note: Property taxes for the fiscal year shown below are paid in full.

| | |
|---|---|
| Fiscal Year: | 2017-2018 |
| Amount: | $1,966.76 |
| Levy Code: | 6012 |
| Account No.: | 130923 |
| Map No.: | 1513310002300 |
| (Parcel 3) | |

9.    As disclosed by the assessment and tax roll, the premises herein were once specially assessed for farmland, forestland or other special assessment status and later disqualified.  Per ORS 308A.700 to 308A.733, additional taxes were imposed and remain as potential additional tax liability for the property. A check with the Assessor's office will be necessary to determine the effect and continuation of the additional tax liability.

Potential Additional Tax Liability Amount:  $34,315.34
(Parcel 3)

Printed:  09.18.18 @ 04:58 PM
OR-FT-FFND-02785.470073-SPS-1-18-WT0161795

EXHIBIT 1

Order No.: WT0161795
Revision 2 (Update 12 and 13, delete 17 and 21)

10.   As disclosed by the assessment and tax roll, the premises herein were once specially assessed for farmland, forestland or other special assessment status and later disqualified.  Per ORS 308A.700 to 308A.733, additional taxes were imposed and remain as potential additional tax liability for the property. A check with the Assessor's office will be necessary to determine the effect and continuation of the additional tax liability.

Additional Tax Liability Amount:  $11,643.43
(Parcel 3)

11.   Regulations, including levies, liens, assessments, water and easements of the Sun Mountain Water Systems, Inc.

12.   Rights of the public to any portion of the Land lying within the area commonly known as streets or highways.
(Affects Parcel I)

13.   The existence of roads, railroads, irrigation ditches and canals, telephone, telegraph and power transmission facilities.
(Affects Parcel I)

14.   A 30' easement along the existing water lines for utility and maintenance purposes, as disclosed in Quitclaim Deed

Recording Date:    August 10, 1983
Recording No.:     22-926
(Affects Parcel 1)

15.   An easement which grants "Sun Mountain Water System, Inc.", the right to ingress and egress over and across said parcel(s) of land for the purpose of maintenance and upkeep of the existing "Sun Mountain Water System, Inc.," water storage and distribution system, as disclosed in Warranty Deed

Recording Date:    November 21, 1988
Recording No.:     174-1456

16.   Subject to the rights of those who benefit by existing "Three Creeks Water Rights" for ingress and egress over and across said parcel of land(s) for the purpose of maintenance and upkeep of the reservoir and ditch system, as disclosed in Warranty Deed

Recording Date:    November 21, 1988
Recording No.:     174-1456

17.   [Intentionally Deleted]

18.   Terms, provisions and conditions, including, but not limited to, maintenance provisions, and a covenant to share the costs of maintenance, contained in Utilities Easement

Recording Date:    August 15, 2002
Recording No.:     2002-44355
(Parcel 3)

EXHIBIT 1

Order No.: WT0161795
Revision 2 (Update 12 and 13, delete 17 and 21)

19.    A deed of trust to secure an indebtedness in the amount shown below,

    Amount:              $862,500.00
    Dated:               September 17, 2008
    Trustor/Grantor:     Russel D. Hiles
    Trustee:             First American Title Insurance Company
    Beneficiary:         Bank of America, NA
    Loan No.:            6499152996
    Recording Date:      September 23, 2008
    Recording No.:       2008-38837
    (Affects Parcel 3)

20.    Farm and Forest Management Easement-Replacement Dwellilng

    Recording Date:      September 30, 2010
    Recording No.:       2010-38663
    (Affects Parcel 3)

21.    [Intentionally Deleted]

22.    A pending court action:

    Plaintiff:           Farmers Insurance Exchange, an inter-insurance exchange
    Defendant:           Russel D. Hiles
    County:              Deschutes
    Court:               Circuit
    Case No.:            16CV20120
    Dated Filed:         June 24, 2016
    Nature of Action:    Fraudulent Transfer, Provisional Process

23.    Any matters arising out of or by virtue of that certain bankruptcy case:

    Name of Debtor:          Russel Dennis Hiles, III
    Date of Filing:          August 1, 2016
    U. S. District Court:    Central
    State:                   California
    Case No.:                6:16-bk-16877-WJ
    Chapter:                 7
    Attorney:                Robert P. Goe & Charity J. Miller, Goe & Forsythe LLP
    Attorney's Address:      18101 Von Karman, Ste 1200, Irvine, CA 92612
    Attorney's Phone No:     949-798-2460
    Name of Trustee:         Lynda T. Bui

**ADDITIONAL REQUIREMENTS/NOTES:**

A.    Notice: Please be aware that due to the conflict between federal and state laws concerning the
      cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any
      transaction involving Land that is associated with these activities.

B.    In addition to the standard policy exceptions, the exceptions enumerated above shall appear on the final
      2006 ALTA Policy unless removed prior to issuance.

EXHIBIT 1

Order No.: WT0161795
Revision 2 (Update 12 and 13, delete 17 and 21)

C.  Note: There are no matters against the party(ies) shown below which would appear as exceptions to coverage in a title insurance product:

Parties:  Drew Hood

D.  Note:  There are NO conveyances affecting said Land recorded within 24 months of the date of this report.

E.  If requested to issue an extended coverage ALTA loan policy, the following matters must be addressed:

a)  The rights of tenants holding under unrecorded leases or tenancies
b)  Matters disclosed by a statement as to parties in possession and as to any construction, alterations or
    repairs to the Land within the last 75 days.  The Company must be notified in the event that any funds are to be used for construction, alterations or repairs.
c)  Any facts which would be disclosed by an accurate survey of the Land

F.  THE FOLLOWING NOTICE IS REQUIRED BY STATE LAW: YOU WILL BE REVIEWING, APPROVING AND SIGNING IMPORTANT DOCUMENTS AT CLOSING. LEGAL CONSEQUENCES FOLLOW FROM THE SELECTION AND USE OF THESE DOCUMENTS. YOU MAY CONSULT AN ATTORNEY ABOUT THESE DOCUMENTS. YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE QUESTIONS OR CONCERNS ABOUT THE TRANSACTION OR ABOUT THE DOCUMENTS. IF YOU WISH TO REVIEW TRANSACTION DOCUMENTS THAT YOU HAVE NOT SEEN, PLEASE CONTACT THE ESCROW AGENT.

G.  Note:  No utility search has been made or will be made for water, sewer or storm drainage charges unless the City/Service District claims them as liens (i.e. foreclosable) and reflects them on its lien docket as of the date of closing. Buyers should check with the appropriate city bureau or water service district and obtain a billing cutoff. Such charges must be adjusted outside of escrow.

H.  Note:  This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances or acreage shown thereon.

I.  Note: Recording charge per document for:
    **Deschutes County** - $93.00 for the first page, $5.00 for each additional page

    E-recording fee is an additional $5.00 per document

    **Send Recording Packages to:**
    Western Title & Escrow Company
    Attention: Recording
    360 SW Bond, Suite 100
    Bend, OR 97702
    Email: desrecording@westerntitle.com

EXHIBIT 1

## EXHIBIT ONE

### 2006 AMERICAN LAND TITLE ASSOCIATION LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning) restricting, regulating, prohibiting or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions or location of any improvement erected on the land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed or agreed to by the Insured Claimant;
   (b) not known to the Company, not recorded in the Public Records at Date of Policy, but known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with the applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in the Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage.

### SCHEDULE B - GENERAL EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Facts, rights, interests or claims which are not shown by the Public Records but which could be ascertained by an inspection of the Land or by making inquiry of persons in possession thereof.
3. Easements, or claims of easement, not shown by the Public Records; reservations or exceptions in patents or in Acts authorizing the issuance thereof, water rights, claims or title to water.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
5. Any lien for services, labor or material heretofore or hereafter furnished, or for contributions due to the State of Oregon for unemployment compensation or worker's compensation, imposed by law and not shown by the Public Records.

### 2006 AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning) restricting, regulating, prohibiting or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions or location of any improvement erected on the land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed or agreed to by the Insured Claimant;

(b) not known to the Company, not recorded in the Public Records at Date of Policy, but known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in the Covered Risk 9 of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage.

### SCHEDULE B - GENERAL EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Facts, rights, interests or claims which are not shown by the Public Records but which could be ascertained by an inspection of the Land or by making inquiry of persons in possession thereof.
3. Easements, or claims of easement, not shown by the Public Records; reservations or exceptions in patents or in Acts authorizing the issuance thereof, water rights, claims or title to water.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
5. Any lien for services, labor or material heretofore or hereafter furnished, or for contributions due to the State of Oregon for unemployment compensation or worker's compensation, imposed by law and not shown by the Public Records.

**WIRE SAFE**™ | Inquire before you wire!

# WIRE FRAUD ALERT

This Notice is not intended to provide legal or professional advice.
If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the number of relevant parties to the transaction as soon as an escrow account is opened.** DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

|  |  |
|---|---|
| ***Federal Bureau of Investigation:*** | ***Internet Crime Complain Center:*** |
| *http://www.fbi.gov* | *http://www.ic3.gov* |

WT0161795-CAM - WIRE0016 (DSI Rev. 12/07/17)

*TM and © Fidelity National Financial, Inc. and/or an affiliate.  All rights reserved*

EXHIBIT 1

### FIDELITY NATIONAL FINANCIAL
### PRIVACY NOTICE
### Revised May 1, 2018

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF", "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

#### Types of Information Collected
We may collect two types of information from you:  Personal Information and Browsing Information.

Personal Information.  FNF may collect the following categories of Personal Information:
*   contact information (e.g., name, address, phone number, email address);
*   demographic information (e.g., date of birth, gender, marital status);
*   identity information (e.g. Social Security Number, driver's license, passport, or other government ID number);
*   financial account information (e.g. loan or bank account information); and
*   other personal information necessary to provide products or services to you.

Browsing Information.  FNF may automatically collect the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or mobile device:
*   Internet Protocol (IP) address and operating system;
*   browser version, language, and type;
*   domain name system requests; and
*   browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

#### How Personal Information is Collected
We may collect Personal Information about you from:
*   information we receive from you on applications or other forms;
*   information about your transactions with FNF, our affiliates, or others; and
*   information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

#### How Browsing Information is Collected
If you visit or use an FNF Website, Browsing Information may be collected during your visit.  Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above.  We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites.  Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

#### Other Online Specifics
Cookies.  When you visit an FNF Website, a "cookie" may be sent to your computer.  A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience.  For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences.  You can choose whether or not to accept cookies by changing your Internet browser settings.  Be aware that doing so may impair or limit some functionality of the FNF Website.

Web Beacons.  We use web beacons to determine when and how many times a page has been viewed.  This information is used to improve our websites.

Do Not Track.  Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

Links to Other Sites.  FNF Websites may contain links to other websites.  FNF is not responsible for the privacy practices or the content of any of those other websites.  We advise you to read the privacy policy of every website you visit.

EXHIBIT 1

## Use of Personal Information
FNF uses Personal Information for three main purposes:
- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you about our, our affiliates', and third parties' products and services, jointly or independently.

## When Information Is Disclosed
We may make disclosures of your Personal Information and Browsing Information in the following circumstances:
- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;
- to nonaffiliated third party service providers with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure.  We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors.  By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings.

Please see **"Choices With Your Information"** to learn the disclosures you can restrict.

## Security of Your Information
We maintain physical, electronic, and procedural safeguards to guard your Personal Information.  We limit access to nonpublic personal information about you to employees who need to know that information to do their job. When we provide Personal Information to others as discussed in this Privacy Notice, we expect that they process such information in compliance with our Privacy Notice and in compliance with applicable privacy laws.

## Choices With Your Information
If you do not want FNF to share your information with our affiliates to directly market to you, you may send an "opt out" request by email, phone, or physical mail as directed at the end of this Privacy Notice.  We do not share your Personal Information with nonaffiliates for their use to direct market to you.

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you.  If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents:  We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law.

For Nevada Residents:  You may be placed on our internal Do Not Call List by calling (888) 934-3354 or by contacting us via the information set forth at the end of this Privacy Notice.  Nevada law requires that we also provide you with the following contact information:  Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number:  (702) 486-3132; email: BCPINFO@ag.state.nv.us.

For Oregon Residents:  We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

EXHIBIT 1

For Vermont Residents:  We will not disclose information about you creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

## Information From Children

The FNF Websites are meant for adults and are not intended or designed to attract persons under the age of eighteen (18).  We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

## International Users

FNF's headquarters is located within the United States.  If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence for any of the purposes described in this Privacy Notice.  By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

## FNF Website Services for Mortgage Loans

Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites").  The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice.  The sections of this Privacy Notice titled When Information is Disclosed, Choices with Your Information, and Accessing and Correcting Information do not apply to the Service Websites.  The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information.  FNF does not share Personal Information collected through the Service Websites, except (1) as required or authorized by contract with the mortgage loan servicer or lender, or (2) as required by law or in the good-faith belief that such disclosure is necessary to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

## Your Consent To This Privacy Notice; Notice Changes

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice.  We may change this Privacy Notice at any time.  The revised Privacy Notice, showing the new revision date, will be posted on the FNF Website.  Each time you provide information to us following any amendment of this Privacy Notice, your provision of information to us will signify your assent to and acceptance of the terms of the revised Privacy Notice for all previously collected information and information collected from you in the future.  We may use comments, information or feedback that you submit to us in any manner that we may choose without notice or compensation to you.

## Accessing and Correcting Information; Contact Us

If you have questions, would like to access or correct your Personal Information, or want to opt-out of information sharing for affiliate marketing, send your requests via email to privacy@fnf.com, by phone to (888) 934-3354, or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue,
Jacksonville, Florida 32204
Attn:  Chief Privacy Officer

EXHIBIT 1

# Exhibit 2

# Bank of America Payoff

C3 3547 S310L1 21279 01/12/2018

**Bank of America**



Home Loans

*Payoff Department*
*Tampa Mail Services*
*PO Box 31785*
*Tampa, FL 33631-3785*

TONIA WOOTEN
3750 UNIVERSITY AVE, STE 670
RIVERSIDE, CA 92501

# PAYOFF STATEMENT

**Good Through Date and/or**
**Proposed Closing Date**
**October 9, 2018**

Statement Date
September 25, 2018

**Bank of America, N.A.**
**Loan No.:**          317-9

**Name & Property Address:**
Russel D Hiles
66876 & 66822 Gist Rd
Bend, OR 97701

Faxed to: 1-949-340-3000

## This loan is in Bankruptcy.

(CONV-JUMBO)

| PAYOFF CALCULATION | |
|---|---|
| Principal Balance as of 03/01/2016 | $783,134.56 |
| Interest from 03/01/2016 to 10/09/2018 | 150,469.20 |
| County Recording Fee* | 93.00 |
| Uncollected Late Charges | 893.55 |
| Other Amounts Due(2) | 750.00 |
| Escrow Balance Due | 45,486.56 |
| **Total Amount Required to Release Lien** (As of October 9, 2018) | **$980,826.87** |

(2) Other Amounts Due details can be found in the "Other Amounts Due" table below.

*For California properties this includes the Building Homes and Jobs Act fee of $75.

> *Amended Payoff Statements are sent automatically if the total amount due increases before OCTOBER 9, 2018.*

To provide you with the convenience of an extended 'Statement Void After' date, the Total Amount Due may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to the 'Statement Void After' date, but which are not yet due as of the date this Payoff Statement is issued. You will receive a refund if you pay the Total Amount Due and those anticipated fees, expenses, or payments have not been incurred.

| INTEREST CALCULATIONS |
|---|

For all full month payment periods, interest is calculated on a monthly basis. Accordingly, interest for all full months, including February, is calculated as 30/360 of annual interest, irrespective of the actual number of days in the month. For partial months, interest is calculated daily on the basis of a 365 day year.

Adjustable rate mortgage loans may have more than one interest rate in effect during the period in which this payoff statement applies. Amended payoff statements are sent automatically if the total amount due increases before October 9, 2018.

| Daily Interest(1) | From | To | Interest Rate |
|---|---|---|---|
| 158.2360 | 10/01/2018 | 10/09/2018 | 7.3750 |

(1)Daily Interest = Principal Balance x Interest Rate ÷ 365

**EXHIBIT 2**

# Exhibit 3

# Purchase Agreement

OREF
Oregon Real Estate Forms, LLC

Sale Agreement #  07072018NJ

## CONTINGENT RIGHT TO PURCHASE

1   Buyer(s) **Drew Hood and/or assigns**
2   Seller(s) **Lynda T. Bui, trustee**
3   Property Address **66876 Gist Rd., Bend, OR  97703**                                      ("Seller's Property")

4   **1.    The Contingency**
5   This transaction is contingent upon the sale <u>and</u> closing of Buyer's real property ("the Contingency") located at:
6   **64155 Hunnell Rd., Bend OR 97703**                                        ("Buyer's Property").

7   **2.    Status of Listing of Buyer's Property**. Select one:
8       ☐ Buyer's Property is currently listed for sale with a licensed real estate agent where said Property is located;
9       ☒ Buyer's Property will be listed for sale with a licensed real estate agent where said Property is located, within  **7**  business days (three
10      [3] if not filled in) after Seller has signed and accepted the Sale Agreement.
11  Buyer agrees to keep Buyer's Property continuously listed until the transaction is closed, or terminated, whichever first occurs, and Buyer will
12  promptly provide Seller, upon request, with reasonable written evidence thereof. Unless the parties otherwise agree in writing, Buyer's failure to
13  comply with any of the above representations shall result in the automatic termination of the transaction, and Buyer's earnest money deposit shall
14  thereupon be promptly refunded, and Seller may thereupon commence marketing the Property for sale through the applicable MLS.

15  **3.    Acknowledgement of Related Forms and Additional Terms.** OREF-083A ("Notice to Seller") and OREF-083B ("Notice to Buyer") contain
16  certain additional terms under which this transaction will continue. Those new terms are set forth in "Alternative One" and "Alternative Two" in
17  both Notices. By their signatures below, Buyer and Seller acknowledge that they have reviewed and understand them. If not fully understood,
18  the parties should first obtain clarification through their respective Agents.

19  **4.    No Buyer Waiver of Contingency**. Except as provided in both Notices, or as otherwise agreed in writing by the parties, the Contingency may
20  <u>not</u> be waived by Buyer.

21  **5.    Bumpable Status**. Prior to Buyer's delivery of the Notice to Seller on or before the Contingency Deadline, as defined at Section 6, below, or
22  Seller's delivery of the Notice to Buyer pursuant to Section 6, below, Seller's Property may remain on the market in a "Bumpable", or
23  "active/contingent" status, or words to that effect, on the applicable multiple listing service.

24  **6.    Buyer Delivery of Notice to Seller by Contingency Deadline**.
25  Unless Seller has received another offer to purchase Seller's Property **that is** acceptable to Seller, as described at Section 7 below, Buyer shall
26  deliver the Notice to Seller on or before **5:00 p.m. on  see additional** _____,  _____ ("Contingency Deadline"), stating whether or not Buyer
27  has an accepted written offer on Buyer's Property, in which case Seller's Property shall thereafter show as "Pending" (or words to that effect) on
28  the applicable multiple listing service. However, Buyer's failure to timely deliver said Notice on or before the Contingency Deadline shall result
29  in the automatic termination of this transaction, and Buyer's earnest money deposit shall thereupon be promptly refunded.

30  **7.    Seller Receives Another Written Offer Acceptable To Seller**.
31  If, prior to the Contingency Deadline <u>and</u> Buyer's delivery of the Notice to Seller, Seller receives another written offer to purchase Seller's Property
32  acceptable to Seller, Seller shall promptly deliver the Notice to Buyer. Upon delivery of said Notice, Buyer shall have until 5:00 p.m.  _____ calendar
33  days (one [1] if not filled in) ("Buyer's Response Deadline") within which to sign and return said Notice to Buyer notifying Seller of Buyer's selection
34  of Alternative One, Alternative Two, or Termination. If Buyer timely responds to Seller's Notice to Buyer on or before Buyer's Response Deadline,
35  this transaction shall remain in full force and effect, and Seller's Property shall thereafter show as "Pending" (or words to that effect) on the
36  applicable multiple listing service. Buyer's selection of Termination on the Notice to Buyer, or Buyer's failure to timely deliver Notice to Buyer on
37  or before Buyer's Response Deadline, shall result in the automatic termination of this transaction, and Buyer's earnest money deposit shall
38  thereupon be promptly refunded.

Buyer Initials _____ / _____ Date **8/6/2018 1:12:09 PM PDT**        Seller Initials _____ / _____ Date **8/2/2018 | 17:21**

This form has been licensed for use solely by Josh Hansen pursuant to a Forms License Agreement with Oregon Real Estate Forms, LLC.
LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE
Copyright Oregon Real Estate Forms, LLC 2018        www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC

**OREF 083**
Page 1 of 2

Strategic Realty LLC, 141 NW Greenwood Ave., Ste. 100 Bend OR 97702                    Phone: 541-678-0756          Fax: 888-993-2345          66876 Gist Rd.
Josh Hansen                        Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

EXHIBIT 3



Sale Agreement #  07072018NJ

39  8.  **Contingencies and Other Timelines.**

40  The timelines set forth in the Financing section of the Sale Agreement shall continue unchanged. Except as otherwise provided herein, the agreed-
41  upon timelines for contingencies (e.g., review of documents of record, professional inspection, lead-based paint, etc.) and other non-contingent
42  timelines, except Closing (e.g. time to deposit earnest money, or to transfer funds, etc.) in the Sale Agreement shall **(select one)**:

43  [X]  Continue unchanged;

44  [ ]  Commence on the next business day following the date Buyer delivers to Seller the Notice to Seller, by the Contingency Deadline. (Note,
45  this Section 4 shall <u>not</u> apply if Seller has received another offer, and has complied with Section 3, above.)

46  9.  **Timeline for Closing.** Closing of this transaction shall be **(Select one):**

47  [X] As provided in the Sale Agreement;

48  [ ] _____ calendar days after the date Buyer delivers to Seller;

49  [ ] Other (insert date): _____.

50  10.  **Delivery of Notices.** Time is of the essence in the delivery of all written notices required or permitted herein. Buyer, Seller, and their respective
51  Agents, shall exercise their best efforts to use the most prompt and reliable means for timely delivery of all such notices.

52  11.  **Good Faith Cooperation with Escrow.** Buyer and Seller agree to cooperate in good faith by promptly signing all documents reasonably
53  requested by Escrow, including those for the refund of Buyer's earnest money deposit when authorized by the above provisions, or the Sale
54  Agreement and related Addenda.

55  12.  **Additional Provisions. The Contingency Deadline as referenced on line 26 of this addendum will be 30 days after mutual acceptance.**
56  **This contingency shall automatically be deemed satisfied at the end of the Contingency Deadline at which time buyer will proceed to**
57  **closing without this contingency, provided buyer has not terminated the agreement according to the terms of the sale agreement prior to**
58  **the end of the Contingency Deadline referenced above.**

59  _____

60  _____

61  _____

62  _____

63  Buyer Signature  *Andrew Hood*                          Date  8/6/2018 1:12:09 PM PDT _____ ___ a.m. ___ p.m. ←
        Drew Hood and/or assigns

64  Buyer Signature _____        Date _____, _____ ___ a.m. ___ p.m. ←

65  Seller Signature _____       Date 8/2/2018 | 17:21 PDT ___ a.m. ___ p.m. ←
        Lynda T. Bui, trustee

66  Seller Signature _____       Date _____, _____ ___ a.m. ___ p.m. ←

67  Buyer's Agent **Nic Jones**                             Seller's Agent **Josh Hansen**

68  Buyer's Agent's Firm **Keller Williams Central Oregon**   Seller's Agent's Firm **Strategic Realty, LLC**

This form has been licensed for use solely by Josh Hansen pursuant to a Forms License Agreement with Oregon Real Estate Forms, LLC.

LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE
Copyright Oregon Real Estate Forms, LLC  2018         www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC

OREF 083
Page 2 of 2

EXHIBIT 3

**OREF**
Oregon Real Estate Forms, LLC

Sale Agreement # 07072018NJ

## FINAL AGENCY ACKNOWLEDGMENT

1 Both Buyer and Seller acknowledge having received the Oregon Real Estate Agency Disclosure Pamphlet, and hereby acknowledge and consent
2 to the following agency relationships in this transaction:
3 _____ **Nic Jones** _____ (Name of Buyer's Agent(s)*), Oregon Lic. # **201210062**
4 of _____ **Keller Williams Central Oregon** _____ (Name of Real Estate Firm(s)*)
5 Buyer's Agent's Office Address _____, Company Lic. # **201214610**
6 Phone _____ Fax _____ E-mail **njranches@gmail.com**
7 is/are the agent of (check one): [X] Buyer exclusively ("Buyer Agency"). [ ] Both Buyer and Seller ("Disclosed Limited Agency").
8 _____ **Josh Hansen** _____ (Name of Seller's Agent(s)*), Oregon Lic. # **200012039**
9 of _____ **Strategic Realty** _____ (Name of Real Estate Firm(s)*)
10 Seller's Agent's Office Address _____, Company Lic. # **200806087**
11 Phone _____ Fax _____ E-mail **josh@movetobend.com**
12 is/are the agent of (check one): [X] Seller exclusively ("Seller Agency"). [ ] Both Buyer and Seller ("Disclosed Limited Agency").
13 *If Buyer's and/or Seller's Agents and/or Firms are co-selling or co-listing in this transaction, all Agents and Firm names should be
14 disclosed above. For instructions on how to look up license numbers: https://orea.elicense.irondata.com/Lookup/LicenseLookup.aspx
15 If both parties are each represented by one or more Agents in the same Real Estate Firm, and Agents are supervised by the same principal broker in
16 that Real Estate Firm, Buyer and Seller acknowledge that said principal broker shall become the disclosed limited agent for both Buyer and Seller as
17 more fully explained in the Disclosed Limited Agency Agreements that have been reviewed and signed by Buyer, Seller and Agent(s).
18 Buyer shall sign this acknowledgment at the time of signing this Agreement before submission to Seller. Seller shall sign this acknowledgment at the
19 time this Agreement is first submitted to Seller, even if this Agreement will be rejected or a counter offer will be made. Seller's signature to this Final
20 Agency Acknowledgment shall not constitute acceptance of this Agreement or any terms therein.

7/28/2018 11:04:04 AM

21 Buyer _____ Print **Drew Hood and/or assigns** Date _____ ←
22 Buyer _____ Print _____ Date _____ ←
23 Seller _____ Print **Lynda T. Bui, Trustee** Date _____ ←
24 Seller _____ Print _____ Date _____ ←

## RESIDENTIAL REAL ESTATE SALE AGREEMENT

25 **THIS AGREEMENT IS INTENDED TO BE A LEGAL AND BINDING CONTRACT. IF IT IS NOT UNDERSTOOD, SEEK COMPETENT LEGAL**
26 **ADVICE BEFORE SIGNING. FOR AN EXPLANATION OF THE PRINTED TERMS AND PROVISIONS IN THIS FORM REGARDING TIMING,**
27 **NOTICE, BINDING EFFECT, ETC., SELLER AND BUYER ARE ENCOURAGED TO CLOSELY REVIEW SECTION 31 (DEFINITIONS AND**
28 **INSTRUCTIONS SECTION).**

29 **1. PRICE/PROPERTY DESCRIPTION:** Buyer **Drew Hood and/or assigns** _____
30 _____
31 offers to purchase from Seller **Lynda T. Bui, Trustee** _____
32 _____
33 the following described real property (hereinafter "the Property") situated in the State of Oregon, County of **Deschutes** _____
34 and commonly known or identified as (insert street address, city, zip code, tax identification number, lot/block description, etc.)
35 **66876 Gist Rd., Bend, OR 97703** _____
36 _____
37 (Buyer and Seller agree that if it is not provided herein, a complete legal description as provided by the title insurance company in accordance with
38 Section 9, shall, where necessary, be used for purposes of legal identification and conveyance of title.)
39 for the Purchase Price (in U.S. currency) of ............................................................. A $ _____ **1,995,000.00**
40 on the following terms: Earnest money ............................................................. B $ _____ **25,000.00**
41 on _____, as additional earnest money, the sum of ............... C $ _____
42 at or before Closing, the balance of down payment ............................................. D $ _____
43 at Closing and upon delivery of [X] **DEED** [ ] **CONTRACT** the balance of the Purchase Price.................... E $ _____ **1,970,000.00**
44 shall be paid as agreed in Financing Section of the Agreement.

(Lines B, C, D and E should equal Line A)

Buyer Initials _____ Date **7/28/2018 11:04:04 AM PDT**     Seller Initials _____ Date **8/2/2018 | 17:21**

**This form has been licensed for use solely by Nicolaus Jones pursuant to a Forms License Agreement with Oregon Real Estate Forms, LLC.**
LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE
Copyright Oregon Real Estate Forms, LLC 2018     www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC     **OREF 001**
RESIDENTIAL REAL ESTATE SALE AGREEMENT - Page 1 of 11

EXHIBIT 3



Sale Agreement # 07072018NJ

45 **2. FIXTURES/CONTROLS/KEYS:** All fixtures and essential related equipment (e.g. remote controls , and all keys related to Property including
46 mailbox, outbuilding(s), etc.) are to be left upon the Property. Fixtures shall include but not be limited to: built-in appliances; attached floor coverings;
47 drapery rods and curtain rods; window and door screens; storm doors and windows; system fixtures (irrigation, plumbing, ventilating, cooling and
48 heating); water heaters; attached electric light and bathroom fixtures; light bulbs; fluorescent lamps; window blinds; awnings; fences; all planted
49 shrubs, plants and trees; EXCEPT: _____
50 _____

51 **3. PERSONAL PROPERTY:** Only the following personal property, in **"AS-IS"** condition and at no stated value is included:
52 _____
53 _____
54 _____

55 ## FINANCING

56 **4. BALANCE OF PURCHASE PRICE.** *(Select A or B)*

57 A. ☒ **This is an all cash transaction.** Buyer to provide verification ("Verification") of readily available funds as follows *(select only one)*:
58 ☐ Buyer has attached a copy of the Verification with the submission of this Agreement to Seller. ☐ Buyer will provide Seller with the Verification
59 within _____ business days (five [5] if not filled in) after this Agreement has been signed and accepted; or ☒ Other *(Describe)*: **Buyer will be**
60 **using all proceeds from the sale of their home to purchase this property.**
61 Seller may notify Buyer, in writing, of Seller's unconditional disapproval of the Verification within _____ business days (two [2] if not filled in)
62 ("Disapproval Period") following its receipt by Seller, however, such disapproval must be objectively reasonable. Upon such disapproval, all earnest
63 money deposits shall be promptly refunded to Buyer and this transaction shall be terminated. **If Seller fails to provide Buyer with written**
64 **unconditional disapproval of the Verification by 5:00 p.m. of the last day of the Disapproval Period, Seller shall be deemed to have**
65 **approved the Verification. If Buyer fails to submit a Verification within a time frame selected above, unless the parties agree otherwise in**
66 **writing, all earnest money deposits shall be promptly refunded and this transaction shall be terminated.**

67 B. ☐ Balance of Purchase Price to be financed through one of the following Loan Programs *(Select only one)*:
68 ☐ Conventional; ☐ FHA; ☐ Federal VA (Seller ☐ Shall ☐ Shall not agree to pay Buyer's non-allowable VA fees);
69 ☐ Other *(Describe)*: _____ **Buyer agrees to**
70 **seek financing through a lending institution or mortgage broker (hereinafter collectively referred to as "Lender") participating in the Loan**
71 **Program selected above.**

72 C. **Pre-Approval Letter.** ☐ Buyer has attached a copy of a Pre-Approval Letter from Buyer's Lender; ☐ Buyer does not have a Pre-Approval Letter
73 at the time of making this offer; ☐ Buyer agrees to secure a Pre-Approval Letter and provide a copy to Seller as follows: _____
74 _____

75 **5.1 FINANCING CONTINGENCIES.** If Buyer is financing any portion of the Purchase Price, this transaction is subject to the following financing
76 contingencies: (1) Buyer and the Property to qualify for the loan from Lender; (2) Lender's appraisal shall not be less than the Purchase Price; and,
77 (3) Other *(Describe)*: _____
78 _____
79 Except as otherwise provided herein, all Financing Contingencies are solely for Buyer's benefit and may be waived by Buyer in writing at any time.

80 **5.2 FAILURE OF FINANCING CONTINGENCIES.** If Buyer receives actual notification from Lender that any Financing Contingencies identified
81 above have failed or otherwise cannot occur, Buyer shall promptly notify Seller, and the parties shall have _____ business days (two [2] if not filled
82 in) following the date of Buyer's notification to Seller to either (a) Terminate this transaction by signing a OREF 057 Termination Agreement
83 and/or such other similar form as may be provided by Escrow; or (b) Reach a written mutual agreement upon such price and terms that will permit
84 this transaction to continue. Neither Seller nor Buyer are required under the preceding provision (b) to reach such agreement. If (a) or (b) fail to
85 occur within the time period identified in this Section 5.2, this transaction shall be automatically terminated and all earnest money shall be promptly
86 refunded to Buyer. Buyer understands that upon termination of this transaction, Seller shall have the right to immediately place the Property back
87 on the market for sale upon any price and terms as Seller determines, in Seller's sole discretion.

88 **5.3 BUYER REPRESENTATION REGARDING FINANCING:** Buyer makes the following representations to Seller: (1) Buyer's completed loan
89 application, as hereinafter defined, shall be submitted to the Lender that provided the Pre-Approval Letter, a copy of which has been delivered to
90 Seller, or will be, pursuant to Section 4C, above.

91 (2) Buyer shall submit to Buyer's Lender a completed loan application for purchase of the Property not later than _____ business days (three [3] if not
92 filled in) following the date Buyer and Seller have signed and accepted this Agreement. A "completed loan application" shall include the following

| Buyer Initials _Ed Hood_ Date _7/28/2018 11:04:04 AM PDT_ | Seller Initials _AB_ Date _8/2/2018 | 17:21_ |

**This form has been licensed for use solely by Nicolaus Jones pursuant to a Forms License Agreement with Oregon Real Estate Forms, LLC.**
**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE**

Copyright Oregon Real Estate Forms, LLC 2018    www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC    **OREF 001**
RESIDENTIAL REAL ESTATE SALE AGREEMENT - Page 2 of 11

Hood- Gist
EXHIBIT 3



93  information: (i) Buyer's name(s); (ii) Buyer's income(s); (iii) Buyer's social security number(s); (iv) the Property address; (v) an estimate of the
94  value of the Property; and (vi) the loan amount sought.

95  (3) Buyer agrees that if Buyer intends to proceed with the loan transaction, Buyer will so notify Lender within ____ business days (three [3] if not filled in -
96  but not to exceed ten [10]) in such form as required by said Lender, following Buyer's receipt of Lender's Loan Estimate. Upon request, Buyer shall
97  promptly notify Seller of the date of Buyer's signed notice of intent to proceed with the loan.

98  (4) Buyer will thereafter complete all paperwork requested by the Lender in a timely manner, and exercise best efforts (including payment of all
99  application, appraisal and processing fees, where applicable) to obtain the loan.

100  (5) Buyer understands and agrees that Buyer may not replace the Lender or Loan Program already selected, without Seller's written consent, which
101  may be withheld in Seller's sole discretion.

102  (6) Following submission of the loan application, Buyer agrees to keep Seller promptly informed of all material non-confidential developments
103  regarding Buyer's financing and the time of Closing.

104  (7) Buyer shall make a good faith effort to secure the ordering of the Lender's appraisal no later than expiration of the Inspection Period at Section
105  10 of this Agreement, (or Section 1 of the **OREF 058 Professional Inspection Addendum** if used).

106  (8) Buyer currently has liquid and available funds for the earnest money deposit and down payment sufficient to Close the transaction described
107  herein and is not relying upon any contingent source of funds (e.g., from loans, gifts, sale or closing of other property, 401K disbursements, etc.),
108  except as follows *(describe)*: _____
109  _____
110  _____

111  (9) Buyer authorizes Buyer's Lender to provide non-confidential information to Buyer's and Seller's Agents regarding Buyer's loan application
112  status.

113  **6.1 INSURANCE:** Buyer is encouraged to promptly verify the availability and cost of property/casualty/fire insurance that will be secured for the
114  Property. Additionally, lenders may require proof of property/casualty/fire insurance as a condition of the loan.

115  **6.2 FLOOD INSURANCE; ELEVATION CERTIFICATE:** If the Property is located in a designated flood zone, flood insurance may be required as a
116  condition of a new loan. Buyer is encouraged to promptly verify the need, availability, and cost of flood insurance, if applicable. An Elevation
117  Certificate ("EC") is the document used by the federal National Flood Insurance Program ("NFIP") to determine the difference in elevation between
118  a home or building, and the base flood elevation ("BFE"), which is a computed elevation to which floodwater is anticipated to rise during certain
119  floods. The amount of the flood insurance premium for a particular property is based upon the EC. Not all properties in flood zones require an EC,
120  depending upon when they were constructed. ECs must be prepared and certified by a land surveyor, engineer, or architect who is authorized by
121  the local jurisdiction to certify elevation information. The costs and fees for an EC may range from a few hundred dollars to over a thousand. **If the
122  Property requires an EC, it will need to be obtained prior to receiving a flood insurance quote. Additionally, lenders may require an EC as
123  a condition of loan approval. For more information, go to the following link: http://www.fema.gov/base-flood-elevation**

124  **7. SELLER-CARRIED FINANCING (E.G., LAND SALE CONTRACT/TRUST DEED/MORTGAGE/OPTION AGREEMENTS, RENT-TO-OWN,
125  ETC.):** Notice to Buyer and Seller: If this transaction involves a land sale contract, trust deed, mortgage, option, or lease-to-own agreement
126  (hereinafter a "Seller Carried Transaction"), Oregon law requires that, unless exempted, individuals offering or negotiating the terms must hold a
127  mortgage loan originator ("MLO") license. Your real estate agent is not qualified to provide these services or to advise you in this regard. Legal
128  advice is strongly recommended. Oregon law exempts the following individuals from the MLO licensing law: (a) Those who offer or negotiate terms
129  of a residential mortgage loan with or on behalf of their spouse, child, sibling, parent, grandparent, grandchild or a relative in a similar relationship
130  created by law, marriage or adoption; (b) Those who sell their primary residence they currently or previously lived in; and (c) Individuals who set up
131  to three (3) non-primary residences during any 12-month period. (Note: One may not hold more than eight residential mortgage loans at one time.) If
132  this is a Seller-Carried Transaction, and one or more of the preceding exemptions apply, Buyer and Seller agree as follows (select only one):

133  ☐ (a) Secure separate legal counsel to negotiate and draft the necessary documents; or

134  ☐ (b) Employ an MLO; or

135  ☐ (c) Use the **OREF 033 Seller-Carried Transaction Addendum** and related forms.

136  Seller and Buyer agree that regardless of whether (a), (b), or (c) is selected, they will reach a signed written agreement upon the terms and
137  conditions of such financing (e.g. down payment, interest rate, amortization, term, payment dates, late fees, balloon dates, etc.) within ____ business
138  days (ten [10] if not filled in) commencing on the next business day following the date they have signed and accepted this Sale Agreement
139  ("Negotiation of Terms Period"). Upon failure of Buyer and Seller to reach agreement by 5:00 p.m. on the last day of the Negotiation of Terms
140  Period, or such other times as may be agreed upon in writing, all earnest money deposits shall be refunded to Buyer and this transaction shall be

Buyer Initials _____ Date 7/28/2018 11:04:04 AM PDT      Seller Initials _____ Date 8/2/2018 | 17:21

**This form has been licensed for use solely by Nicolaus Jones pursuant to a Forms License Agreement with Oregon Real Estate Forms, LLC.**
**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE**
Copyright Oregon Real Estate Forms, LLC 2018      www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC      **OREF 001**
RESIDENTIAL REAL ESTATE SALE AGREEMENT - Page 3 of 11

EXHIBIT 3

141 automatically terminated. *Caveat: Buyer's and Seller's Agents are not authorized to render advice on these matters. Buyer and Seller are advised to*
142 *secure competent legal advice while engaged in a Seller-Carried Transaction.*

143 **8. ADDITIONAL FINANCING PROVISIONS (e.g. Closing Costs):**
144 _____
145 _____

146 **CONTINGENCIES**
147

148 **9. TITLE INSURANCE:** When this Agreement is signed and accepted by Buyer and Seller, Seller will, at Seller's sole expense, promptly order from
149 the title insurance company selected at Section 22 below, a preliminary title report and copies of all documents of record ("the Report and
150 Documents of Record") for the Property, and furnish them to Buyer at Buyer's contact location as defined at Section 31(3) below. Unless otherwise
151 provided herein, this transaction is subject to Buyer's review and approval of the Report and Documents of Record **(If, upon receipt, the Report and**
152 **Documents of Record are not fully understood, Buyer should immediately contact the title insurance company for further information or seek**
153 **competent legal advice). The Buyer's and Seller's Agents are not qualified to advise on specific legal or title issues.)** Upon receipt of the Report
154 and Documents of Record Buyer shall have _____ business days (five [5] if not filled in) within which to notify Seller, in writing, of any matters
155 disclosed in the Report and Documents of Record which is/are unacceptable ("the Objections"). Buyer's failure to timely object in writing, shall
156 constitute acceptance of the Report and/or Documents of Record. However, Buyer's failure to timely object shall not relieve Seller of the duty to
157 convey marketable title to the Property pursuant to Section 28, below. If, within _____ business days (five [5] if not filled in) following Seller's
158 receipt of the Objections, Seller fails to remove or correct the matters identified therein, or fails to give written assurances reasonably satisfactory to
159 Buyer, that they will be removed or corrected prior to Closing, all earnest money shall be promptly refunded to Buyer, and this transaction shall be
160 terminated. This contingency is solely for Buyer's benefit and may be waived by Buyer in writing. Within thirty (30) days after Closing, the title
161 insurance company shall furnish to Buyer, an owner's standard form policy of title insurance insuring marketable title in the Property to Buyer in the
162 amount of the Purchase Price, free and clear of the Objections, if any, and all other title exceptions agreed to be removed as part of this transaction.
163 *(Note: This Section 9 provides that Seller will pay for Buyer's standard owner's policy of title insurance. In some areas of the country,*
164 *such a payment might be regarded as a "seller concession." Under the TILA/RESPA Integrated Disclosure Rules ["the Rules"], there are*
165 *limitations, regulations and disclosure requirements on "seller concessions", <u>unless</u> the product or service paid for by the Seller was one*
166 *<u>customarily</u> paid by sellers in residential sales transactions. In Oregon, sellers customarily and routinely pay for their buyer's standard*
167 *owner's policy of title insurance. Accordingly, unless the terms of this Section 9 are modified in writing by Buyer and Seller, the parties*
168 *acknowledge, agree and so instruct Escrow, that in this transaction, Seller's payment of Buyer's standard owner's policy of title insurance*
169 *is <u>not</u> a "seller concession" under the Rules or any other federal law.)*

170 **10. INSPECTIONS/ENVIRONMENTAL HEALTH CONDITIONS:** The following list identifies some, but not all, environmental conditions that may be
171 found in and around all real property that may affect health: Asbestos, carbon monoxide, electric and magnetic fields, formaldehyde, lead and other
172 contaminants in drinking water and well water, lead based paint, mold and mildew, radon, and leaking underground storage tanks. If Buyer has any
173 concerns about these conditions or others, Buyer is encouraged to secure the services of a licensed professional inspector, consultant, or health
174 expert, for information and guidance. Neither the Buyer's nor Seller's Agents are experts in environmental health hazards or conditions. Buyer
175 understands that it is advisable to have a complete inspection of the Property by qualified licensed professional(s) relating to such matters as
176 structural condition, soil condition/compaction/stability, environmental issues, survey, zoning, operating systems, and suitability for Buyer's intended
177 purpose. Neither Buyer's nor Seller's Agent are qualified to conduct such inspections and shall not be responsible to do so. For further details,
178 Buyer is encouraged to review the Buyer Advisory at http://www.oregonrealtors.org/resources/membership-resources/buyer-seller-advisories
179 and the Oregon Public Health Division at http://public.health.oregon.gov/Pages/Home.aspx.

180 *Check only one box below:*

181 **[X] LICENSED PROFESSIONAL INSPECTIONS:** At Buyer's expense, Buyer may have the Property and all elements and systems thereof
182 inspected by one or more licensed professionals of Buyer's choice. Provided, however, Buyer must specifically identify in this Agreement any
183 desired invasive inspections that may include testing or removal of any portion of the Property including, for example, radon and mold. Buyer
184 understands that Buyer is responsible for the restoration of the Property following any inspection(s)/test(s) performed by Buyer or on Buyer's
185 behalf. Buyer shall have __20__ business days (ten [10] if not filled in), after the date Buyer and Seller have signed and accepted this Agreement
186 (hereinafter "the Inspection Period"), in which to complete all inspections **and** negotiations with Seller regarding any matters disclosed in any
187 inspection report. Buyer shall **not** provide all or any portion of the inspection reports to Seller unless requested by Seller. However, at any time during this
188 transaction, or promptly following termination, upon request by Seller, Buyer shall promptly provide a copy of such reports or portions of reports, as
189 requested. During the Inspection Period, Seller shall not be required to modify any terms of this Agreement already reached with Buyer. Unless a
190 written agreement has already been reached with Seller regarding Buyer's requested repairs, at any time during the Inspection Period, Buyer may
191 notify Seller, in writing, of Buyer's unconditional disapproval of the Property based on any inspection report(s), in which case, all earnest money
192 deposits shall be promptly refunded, and this transaction shall be terminated. **If Buyer fails to provide Seller with written unconditional**
193 **disapproval of any inspection report(s) by 5:00 P.M. of the final day of the Inspection Period, Buyer shall be deemed to have accepted**

Buyer Initials _Ef Hood_ Date _7/28/2018 11:04:04 AM PDT_     Seller Initials _AB_ Date_8/2/2018 | 17:21_

**This form has been licensed for use solely by Nicolaus Jones pursuant to a Forms License Agreement with Oregon Real Estate Forms, LLC.**
**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE**
Copyright Oregon Real Estate Forms, LLC 2018     www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC     **OREF 001**
RESIDENTIAL REAL ESTATE SALE AGREEMENT - Page 4 of 11

Hood- Gist

**EXHIBIT 3**

Sale Agreement # 07072018NJ

194 the condition of the Property. Note that if, prior to expiration of the Inspection Period, written agreement is reached with Seller regarding
195 Buyer's requested repairs, the Inspection Period shall automatically terminate, unless the parties agree otherwise in writing.
196 Identify Invasive Inspections: _____.

197 ☐ ALTERNATIVE INSPECTION PROCEDURES: OREF 058 PROFESSIONAL INSPECTION ADDENDUM
198 ☐ OTHER INSPECTION ADDENDUM _____
199 ☐ BUYER'S WAIVER OF INSPECTION CONTINGENCY: Buyer represents to Seller and all Agents and Firms that Buyer is fully satisfied with the
200 condition of the Property and all elements and systems thereof and **knowingly and voluntarily** elects to waive the right to have any inspections
201 performed as a contingency to the Closing of the transaction. Buyer's election to waive the right of inspection is solely Buyer's decision and at
202 Buyer's own risk.

203 **11. LEAD-BASED PAINT CONTINGENCY PERIOD:** If the Property was constructed before 1978, on or promptly after the date the parties have signed
204 and accepted this Agreement, Seller shall deliver to Buyer OREF 021, the Lead-Based Paint Disclosure Addendum ("the Disclosure Addendum"),
205 together with the EPA Pamphlet entitled "Protect Your Family From Lead in Your Home" (the "Date of Delivery"). Unless waived by Buyer in writing in the
206 Disclosure Addendum, Buyer shall have _____ calendar days (ten [10] or other mutually agreed upon period) commencing on the day following the
207 Date of Delivery, within which to conduct a lead-based paint assessment or inspection (the "LBP Contingency Period"). If lead-based paint and/or lead-
208 based paint hazards are identified in the Property by a certified inspector at any time before expiration of the LBP Contingency Period, Buyer may
209 unconditionally cancel this transaction by written notice to Seller ("Notice of Cancellation"). In such case, Buyer shall deliver a copy of any written reports
210 or evaluations (collectively "Reports") to Seller, *together with* the Notice of Cancellation, and thereafter receive a prompt refund of all earnest money
211 deposits. **Buyer understands that the failure to deliver the Notice of Cancellation to Seller *together with* the Reports, on or before Midnight of**
212 **the last day of the LBP Contingency Period shall constitute acceptance of the condition of the Property as it relates to the presence of lead-**
213 **based paint and/or lead-based paint hazards, and the LBP Contingency Period shall automatically expire.**

214 ☐ OREF 021 Lead-Based Paint Disclosure Addendum is attached to this Agreement.

215 **12.1 PRIVATE WELL:** Does the Property include a well that supplies or is intended to supply domestic water for household use? ☒ Yes ☐ No
216 If the property contains a private well, the **OREF 82 Private Well Addendum** will be attached to this Sale Agreement.

217 **12.2 SEPTIC/ONSITE SEWAGE SYSTEM:** Does the Property include a septic onsite sewage system? ☒ Yes ☐ No If the Property contains a
218 septic/onsite sewage system, the **OREF 081 Septic/Onsite Sewage System Addendum** will be attached to this Sale Agreement.

219 **13. PROPERTY DISCLOSURE LAW:** Buyer and Seller acknowledge that unless this transaction is otherwise exempted, Oregon law provides that
220 Buyer has a right to revoke Buyer's offer by giving Seller written notice thereof (a) within five (5) business days after Seller's delivery of Seller's
221 Property Disclosure Statement ("the Statement"), or (b) at any time before Closing (as defined in the Oregon Administrative Rules) if Buyer does
222 not receive the Statement from Seller before Closing. Buyer may waive the right of revocation only in writing. Seller authorizes Seller's Agent's Firm
223 to receive Buyer's notice of revocation, if any, on Seller's behalf.

224 ### SELLER REPRESENTATIONS

225 **14. SELLER REPRESENTATIONS:** Subject to other written disclosures made by Seller as a part of this transaction, Seller makes the
226 following representations to Buyer:

227 **(1)** The primary dwelling is connected to *(check all that apply):* ☐ a public sewer system; ☒ an on-site sewage system; ☐ a public
228 water system; ☒ a private well; ☐ other (e.g., surface springs, cistern, etc.).

229 **(2)** At the earlier of possession or Closing Date, the dwelling will have one or more operating smoke alarms, smoke detectors and carbon
230 monoxide detectors as required by law (See http://www.oregon.gov/OSP/SFM/).

231 **(3)** Seller has no knowledge of any hazardous substances in or about the Property other than substances (if any) contained in appliances
232 and equipment. Buyer acknowledges that asbestos commonly exists in insulation, ceilings, floor coverings and other areas in
233 residential housing and may exist in the Property.

234 **(4)** Seller knows of no material defects in or about the Property.

235 **(5)** All electrical wiring, heating, cooling, plumbing and irrigation equipment and systems and the balance of the Property, including the
236 yard, will be in substantially their present condition at the time Buyer is entitled to possession.

237 **(6)** Seller has no notice of any liens or assessments to be levied against the Property.

238 **(7)** Seller has no notice from any governmental agency of any violation of law relating to the Property.

239 **(8)** Seller is not a "foreign person" under the Foreign Investment in Real Property Tax Act ("FIRPTA") as defined in this Agreement.

240 **(9)** Seller knows of no material discrepancies between visible lines of possession and use (such as existing fences, hedges, landscaping,
241 structures, driveways, and other such improvements) currently existing on the Property and the legal description of the Property.

242 **(10)** Seller will keep the Property fully insured through Closing.

243 **(11)** Seller agrees to promptly notify Buyer if, prior to Closing, Seller receives actual notice of any event or condition that could result in
244 making any previously disclosed material information relating to the Property substantially misleading or incorrect.

245 These representations are made to the best of Seller's knowledge. Seller may make no investigations. Exceptions to items (1)
246 through (11) are: _____ (For more exceptions see Addendum _____).

Buyer Initials _____ Date 7/28/2018 11:04:04 AM PDT      Seller Initials _____ Date 8/2/2018 | 17:21

This form has been licensed for use solely by Nicolaus Jones pursuant to a Forms License Agreement with Oregon Real Estate Forms, LLC.
LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE
Copyright Oregon Real Estate Forms, LLC 2018      www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC      OREF 001
RESIDENTIAL REAL ESTATE SALE AGREEMENT - Page 5 of 11

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

EXHIBIT 3



Sale Agreement # **07072018NJ**

247  Buyer acknowledges that the above representations are not warranties regarding the condition of the Property and are not a substitute
248  for, nor in lieu of, Buyer's own responsibility to conduct a thorough and complete independent investigation, including the use of
249  professionals, where appropriate, regarding all material matters bearing on the condition of the Property, its value and its suitability for
250  Buyer's intended use. Neither Buyer's nor Seller's Agents shall be responsible for conducting any inspection or investigation of any
251  aspects of the Property.

252  **15.1 SELLER ADVISORY: OREGON STATE TAX WITHHOLDING OBLIGATIONS:** Subject to certain exceptions, Escrow is required to withhold a portion
253  of Seller's proceeds if Seller is a non-resident individual or corporation as defined under Oregon law.  Buyer and Seller agree to cooperate with Escrow by
254  executing and delivering any instrument, affidavit or statement as requested, and to perform any acts reasonable or necessary to carry out the provisions of
255  Oregon law.

256  **15.2 SELLER/BUYER ADVISORY: FIRPTA TAX WITHHOLDING REQUIREMENT.** Seller and Buyer are advised that upon Closing, a Federal law, known
257  as the Foreign Investment in Real Property Tax Act ("FIRPTA"), requires buyers to withhold a portion of a seller's proceeds if the real property is located within
258  the United States and the seller is a "foreign person" who does not qualify for an exemption ("Withholding Requirement"). A "foreign person" includes a non-
259  resident alien individual, foreign corporation, foreign partnership, foreign trust or a foreign estate. Generally, the following rules apply under FIRPTA:

260  (a) There is no Withholding Requirement, even if the seller is a "foreign person", if: (i) The purchase price of the property is not more than $300,000; and (ii) The
261  property will be occupied as a residence by a buyer who is an individual (or a member of his/her family) (iii) for at least 50% of the number of days (excluding
262  days the property is vacant) it is used by such person during each of the first two 12-month periods following the date of closing;

263  (b) The Withholding Requirement will be ten percent (10%) of the purchase price when the seller is a "foreign person" and the purchase price is over
264  $300,000, but less than $1,000,000, and (a)(ii) and (iii) above apply; and

265  (c) The Withholding Requirement will be a fifteen percent (15%) of the purchase price when the seller is a "foreign person" and the purchase price is over
266  $1,000,000, or the purchase price is $1,000,000 or less and Seller does not qualify for any of the exemptions in (a) or (b) above.

267  If FIRPTA applies (i.e. Seller *is* a foreign person), even if there is an exemption, Seller and Buyer must complete and sign the OREF 093 FIRPTA
268  Addendum. If FIRPTA does *not* apply (i.e. seller *is not* a foreign person), then Seller shall, upon Buyer's request, complete, sign, and deliver to
269  Buyer a FIRPTA Certification of Non Foreign Status ("the Certificate") prior to Closing. If Seller fails or refuses to complete, sign, or deliver the
270  Certificate to Buyer prior to Closing, Seller understands and agrees that the Withholding Requirement shall apply to this transaction. *Seller's and*
271  *Buyer's Agents are not experts in FIRPTA and will not act as a transferor or transferee agent for purposes of the Withholding Requirement. If*
272  *FIRPTA may apply in this transaction, Seller and Buyer should promptly consult their own experts familiar with the law and regulations. For*
273  *further information, Seller and Buyer should go to: https://www.irs.gov/individuals/international-taxpayers/firpta-withholding*

274  **16. "AS-IS":** Except for Seller's express written agreements and written representations contained herein, and Seller's Property
275  **Disclosure, if any, Buyer is purchasing the Property "AS-IS," in its present condition and with all defects apparent or not apparent. This**
276  **provision shall not be construed to limit Buyer's right to implied new home warranties, if any, that may otherwise exist under Oregon**
277  **law.**

278
**MISCELLANEOUS ITEMS**

279  **17. TOWNHOME/PLANNED COMMUNITY/HOMEOWNER'S ASSOCIATION:** Is the property a townhome, in a planned community, or have a
280  Homeowner's Association?  ☐ Yes  ☒ No  ☐ Unknown

281  If yes, OREF 024 Townhome/Planned Community/Homeowner's Association Addendum will be attached to this Sale Agreement.

282  **18. ALARM SYSTEM:** ☐ NONE  ☒ OWNED  ☐ LEASED  ☐ UNKNOWN. If leased, Buyer ☐ will  ☒ will not assume the lease at Closing.

283  **19. WOODSTOVE/WOOD BURNING FIREPLACE INSERT:** Does the Property contain a woodstove or wood burning fireplace insert?
284  ☒ Yes  ☐ No

285  If yes, is the woodstove/wood burning fireplace insert certified?  ☒ Yes  ☐ No  ☐ Unknown. If "No" or "Unknown," Seller to provide Buyer with
286  **OREF 046 Woodstove/Wood Burning Fireplace Insert Addendum.**

287  **20. HOME WARRANTIES:** Home warranty plans may be available to help cover homeowner costs to repair/replace certain home systems and
288  appliances. (See specific plan for details.) Will a plan be purchased for Buyer as a part of this transaction? ☐ Yes  ☒ No
289  If yes, identify plan and cost: _____  $_____  To be paid at Closing by: ☐ Buyer  ☐ Seller

Buyer Initials _~~Hood~~_ Date _7/28/2018 11:04:04 AM PDT_   Seller Initials _AJB_ Date _8/2/2018 | 17:2_

**This form has been licensed for use solely by Nicolaus Jones pursuant to a Forms License Agreement with Oregon Real Estate Forms, LLC.**
**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE**
Copyright Oregon Real Estate Forms, LLC 2018      www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC                        **OREF 001**
RESIDENTIAL REAL ESTATE SALE AGREEMENT - Page 6 of 11

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com      Hood- Gist

EXHIBIT 3



Sale Agreement # **07072018NJ**

| 290 | **21. ADDITIONAL PROVISIONS:** _____ |
|---|---|
| 291 | _____ |
| 292 | _____ |
| 293 | For additional provisions, see Addendum _____**A**_____. |

| 294 | **CLOSING/ESCROW** |

295 **22. ESCROW:** This transaction shall be Closed at **Amerititle** ("Escrow"), a neutral escrow
296 company licensed and located in the State of Oregon. Costs of Escrow shall be shared equally between Buyer and Seller, unless otherwise specifically
297 prohibited by the U.S. Department of Veterans Affairs (Federal VA). Unless otherwise provided herein, the parties agree as follows: Seller authorizes
298 Seller's Agent's Firm to order a preliminary title report and owner's title policy at Seller's expense and further authorizes Escrow to pay out of the
299 cash proceeds of sale the expense of furnishing such policy, Seller's recording fees, Seller's Closing costs and any liens and encumbrances on the
300 Property payable by Seller on or before Closing. Buyer shall deposit with Escrow sufficient funds necessary to pay Buyer's recording fees, Buyer's
301 Closing costs, and lender's fees, if any. Real estate fees, commissions or other compensation for professional real estate services provided by
302 Buyer's or Seller's Agent's Firms shall be paid at Closing in accordance with the listing agreement, buyer service agreement or other written
303 agreement for compensation.

304 **23. PRORATIONS:** Prorates for rents, current year's taxes, interest on assumed obligations, and other prepaid expenses attributable to the
305 Property shall be as of: *(check one)* [X] the Closing Date; [ ] date Buyer is entitled to possession.

306 **24. EARNEST MONEY DEPOSIT(S) AND BUYER INSTRUCTIONS:** When this Sale Agreement is signed and accepted by Buyer and Seller, the
307 following instructions shall immediately apply to the handling of Buyer's earnest money deposit in the sum of $ **25,000.00** ('the Deposit') .

308 **24.1** The Deposit shall be payable by electronic funds transfer or check drawn on collected funds, <u>and</u> deposited within ____**5**____ (three [3] if not
309 filled in) business days (the "Deposit Deadline") as follows *(check all that apply)*:
310    [X] Directly with Escrow;
311    [ ] Directly into Buyer's Agent's Firm's client trust account and remain there until disbursement at Closing; and/or
312    [ ] Directly into Buyer's Agent's Firm's client trust account and thereafter deposit with Escrow/Title Company prior to Closing;
313    [ ] As follows: _____

314 Caution: The Deposit, payable by whatever method selected by Buyer above, shall be placed with Escrow or Buyer's Agent's Firm's Client Trust account no
315 later than 5:00 pm on the last day of the Deposit Deadline. The failure to do so may result in a breach of the Sale Agreement under **EARNEST MONEY**
316 **PAYMENT/REFUND** section, below.

317 **24.2** If an additional Deposit ("Additional Deposit") is to be paid, it shall be handled in accordance with the above-selected instructions, or (Describe):
318 _____

319 **24.3** *Once the Deposit, and Additional Deposit, if any, is/are placed with Escrow, Seller's and Buyer's Agents and Firms shall have no*
320 *further responsibility to Buyer or Seller regarding said funds.*

321 **25. EARNEST MONEY DEPOSIT INSTRUCTIONS TO ESCROW:** Escrow is hereby instructed by Buyer and Seller as follows: (1) Upon your receipt of a
322 copy of this Agreement marked "rejected" by Seller or upon Listing Firm's written advice that the offer is "rejected" by Seller, you are to refund all earnest
323 money to Buyer; (2) Upon your receipt of a copy of this Agreement signed by Buyer and Seller set up an escrow account and proceed with Closing in
324 accordance with the terms of this Agreement. If you determine that the transaction cannot be Closed for any reason (whether or not there is then a dispute
325 between Buyer and Seller), subject only to Section 40 below, you are to hold all earnest money deposits until you receive written instructions from Buyer and
326 Seller, or a final ruling from a court or arbitrator, as to disposition of such deposits.

327 **26.1 EARNEST MONEY REFUND TO BUYER:** If (1) Seller does not approve this Agreement; or (2) Seller signs and accepts this Agreement but
328 fails to furnish marketable title; or (3) Seller fails to complete this transaction in accordance with the material terms of this Agreement; or (4) any
329 condition which Buyer has made an express contingency in this Agreement (and has not been otherwise waived) fails through no fault of Buyer, then
330 all earnest money deposits shall be promptly refunded to Buyer. However, acceptance by Buyer of the refund shall not constitute a waiver of other
331 legal remedies available to Buyer.

332 **26.2 EARNEST MONEY PAYMENT TO SELLER:** If Seller signs and accepts this Agreement and title is marketable; and (1) Buyer has materially
333 misrepresented Buyer's financial status; or (2) Buyer's bank does not pay, when presented, any check given as earnest money or fails to timely make an
334 electronic funds transfer for Buyer's earnest money; or (3) Buyer fails to complete this transaction in accordance with the material terms of this
335 Agreement, then all earnest money paid or agreed to be paid shall be paid to Seller as liquidated damages. The parties expressly agree that Seller's
336 economic and non-economic damages arising from Buyer's failure to close this transaction in accordance with the terms of this Agreement would be
337 difficult or impossible to ascertain with any certainty, and that said earnest money deposit(s) identified herein shall represent a binding liquidated sum, and that

Buyer Initials _____ Date _____ 7/28/2018  11:04:04 AM PDT      Seller Initials _____ Date 8/2/2018 | 17:21

**This form has been licensed for use solely by Nicolaus Jones pursuant to a Forms License Agreement with Oregon Real Estate Forms, LLC.**
LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE
Copyright Oregon Real Estate Forms, LLC **2018**    www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC      **OREF 001**
RESIDENTIAL REAL ESTATE SALE AGREEMENT - Page 7 of 11

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

EXHIBIT 3



Sale Agreement # 07072018NJ

338 it is a fair, reasonable and appropriate pre-estimate of Seller's damages, and is not a penalty. **It is the intention of the parties that Seller's sole**
339 **remedy against Buyer for Buyer's failure to close this transaction in accordance with the material terms of this Agreement shall be limited**
340 **to the amount of earnest money paid or agreed to be paid herein. Seller's right to recover from Buyer any unpaid earnest money agreed to**
341 **be paid herein shall be in accordance with the provisions of the Dispute Resolution Sections below.**

342 **27.1 CLOSING:** Closing shall occur on a date mutually agreed upon between Buyer and Seller, but in no event later than ___**10/12/2018**___ ("the Closing
343 Deadline"). The terms "Closed", "Closing" or "Closing Date" shall mean when the deed or contract is recorded and funds are available to Seller. Buyer and
344 Seller acknowledge that for Closing to occur by the Closing Deadline, it may be necessary to execute documents and deposit funds in Escrow prior to that
345 date. _Caveat: Section 7 requires three (3) days prior to the Closing Deadline if Escrow is to prepare a note and a deed of trust or mortgage._

346 **27.2 THE CLOSING DISCLOSURE:** Pursuant to the federal TILA-RESPA Integrated Disclosure Rules ("TRID"), Buyer and Seller will each receive a
347 federally-required document called a "Closing Disclosure", which, among other things, summarizes each party's closing costs. TRID requires that the
348 Closing Disclosure must be received by a residential loan borrower at least three (3) business days prior to "consummation" of the transaction, which in
349 most cases in Oregon will be the date on which Buyer signs the loan documents. Under certain circumstances, a change to the Closing Disclosure late in
350 the transaction could result in a delay in Closing to comply with the three business day rule. _**Such a delay beyond the Closing Deadline could result in**_
351 _**termination of the transaction unless Seller and Buyer mutually agree to extend it.**_

352 **27.3 NOTICE REGARDING TITLE INSURANCE COSTS:** The manner in which TRID requires title insurance costs to be disclosed differs from the actual
353 costs that may be charged to the parties under Oregon law. In such instances, at Closing, Escrow may issue a separate statement showing the actual costs
354 for an owner's policy of title insurance and, where applicable, the lender's policy of title insurance. _**Seller and Buyer are encouraged to discuss this with**_
355 _**Escrow prior to Closing.**_

356 **28. DEED:** Seller shall convey marketable title to the Property by statutory warranty deed (or good and sufficient personal representative's or
357 trustee's or similar legal fiduciary's deed, where applicable) free and clear of all liens of record, _except_ property taxes that are a lien but not yet
358 payable, zoning ordinances, building and use restrictions, reservations in federal patents, easements of record that affect the Property, covenants,
359 conditions and restrictions of record, and those matters accepted by Buyer pursuant to Section 9. If Buyer's title will be held in the name of more
360 than one person, see Section 39 regarding forms of co-ownership.

361 **29. POSSESSION:** Seller shall remove all personal property (including trash and debris) that is not a part of this transaction, and deliver
362 possession of the Property to Buyer (select one):
363     (1) [X] by 5:00 p.m. on Closing;
364     (2) [ ] by _____ [ ] a.m. [ ] p.m. _____ days after Closing;
365     (3) [ ] by _____ [ ] a.m. [ ] p.m. on the _____ day of _____, _____.
366 If a tenant(s) is currently in possession of the Property (check one): [ ] Buyer will accept tenant(s) at closing; [X] Seller shall have full responsibility
367 for removal of tenant(s) prior to closing.

368 **30. SELLER POSSESSION BEFORE/AFTER CLOSING:** In the event that Buyer and Seller agree that Seller will deliver possession before or after
369 Closing, OREF 053 (**Agreement to Occupy Before Closing**) or OREF 054 (**Agreement to Occupy After Closing**) will be attached to this Sale
370 Agreement.

371 **DEFINITIONS/INSTRUCTIONS**

372 **31. DEFINITIONS/INSTRUCTIONS:** (1) All references in this Sale Agreement to "Agent" and "Firm" shall refer to Buyer's and Seller's real estate
373 agents licensed in the State of Oregon and the respective real estate companies with which they are affiliated.
374 (2) Time is of the essence of this Agreement.
375 (3) Except as provided in Section 9, above, all written notices or documents, required or permitted under this Agreement to be delivered to Buyer or
376 Seller may be delivered to their respective Agent with the same effect as if delivered to that Buyer or Seller. Upon opening of this transaction with the
377 title company identified at Section 22, above, Buyer, Seller, and their respective Agents, where applicable, shall provide Escrow with their preferred
378 means of notification (e.g. email or text address, facsimile number, or mailing or personal delivery address, or other), which shall serve as the
379 primary location for receipt of all notices or documents (hereinafter, "Contact Location")
380 (4) Agent(s) and Firm(s) identified in the Final Agency Acknowledgement Section above are not parties to this Agreement.
381 (5) A "business day" shall mean Monday through Friday, except recognized state and federal holidays.
382 (6) Unless Seller and Buyer expressly provide otherwise, the phrase "signed and accepted" in the printed text of this Sale Agreement, or any
383 addendum or counteroffer, however designated (collectively, "the Agreement" or "the Sale Agreement"), shall mean the date and time that either
384 the Seller and/or Buyer has/have: (a) Signed their acceptance of the Agreement received from the other party, or their Agents, _and_ (b) Transmitted it
385 to the sending party, or their Agent, either by manual delivery ("Manual Delivery"), or by facsimile or electronic mail/text (collectively, "Electronic

Buyer Initials _____ Date _7/28/2018 11:04:04 AM PDT_          Seller Initials _____ Date 8/2/2018 | 17:21

**This form has been licensed for use solely by Nicolaus Jones pursuant to a Forms License Agreement with Oregon Real Estate Forms, LLC.**
LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE
Copyright Oregon Real Estate Forms, LLC **2018**     www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC                    **OREF 001**
RESIDENTIAL REAL ESTATE SALE AGREEMENT - Page 8 of 11

EXHIBIT 3



386 Transmission"). When the Agreement is "signed and accepted" as defined herein, the Agreement becomes legally binding on Buyer and Seller, and
387 neither has the ability to withdraw their offer or counteroffer, as the case may be.

388 (7) The sending of a signed acceptance of the Agreement via Electronic Transmission from one party, or their Agent, to the other party, or their
389 Agent, shall have the same effect as Manual Delivery of the signed original. If the parties intend to use any other method for transmitting a signed
390 offer or acceptance of the Agreement (such as regular mail, certified mail, or overnight delivery), they should so specify at Section 21 (Additional
391 Provisions) of this Sale Agreement.

392 (8) Time calculated in days after the date Buyer and Seller have signed and accepted this Agreement shall start on the first full business day after
393 the date they have signed and accepted it.

394 (9) This Agreement is binding upon the heirs, personal representatives, successors and assigns of Buyer and Seller. However, Buyer's rights under
395 this Agreement or in the Property are not assignable without prior written consent of Seller.

396 (10) This Agreement may be signed in multiple legible counterparts with the same legal effect as if all parties signed the same document.

397 (11) Excepting only the Lead-Based Paint Contingency Period identified in Section 11, unless a different time is specified in the Agreement, all
398 deadlines for performance, however designated, that are measured in business or calendar days, shall terminate as of 5:00 p.m. on the last day of
399 that deadline, however designated.

400 **32. UTILITIES:** Seller shall pay all utility bills accrued to date Buyer is entitled to possession. **Buyer shall pay Seller for heating fuel/propane on**
401 **premises, at Seller's supplier's rate on the possession date.** Payment shall be handled between Buyer and Seller outside of Escrow. Seller
402 shall not terminate or disconnect electric, gas, heating fuel/propane, or water utilities prior to Closing unless parties agreed otherwise in writing.

403 **33. APPROVED USES:** THE PROPERTY DESCRIBED IN THIS INSTRUMENT MAY NOT BE WITHIN A FIRE PROTECTION DISTRICT PROTECTING
404 STRUCTURES. THE PROPERTY IS SUBJECT TO LAND USE LAWS AND REGULATIONS THAT, IN FARM OR FOREST ZONES, MAY NOT
405 AUTHORIZE CONSTRUCTION OR SITING OF A RESIDENCE AND THAT LIMIT LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS
406 DEFINED IN ORS 30.930, IN ALL ZONES. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE
407 SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11,
408 CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8,
409 OREGON LAWS 2010. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD
410 CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A
411 LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR
412 PARCEL, TO VERIFY THE EXISTENCE OF FIRE PROTECTION FOR STRUCTURES AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING
413 PROPERTY OWNERS, IF ANY, UNDER ORS 195.300,195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS
414 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

415 **34. IRC 1031 EXCHANGE:** In the event Buyer or Seller elects to complete an IRC 1031 exchange in this transaction, the other party agrees to
416 cooperate with them and the accommodator, if any, in a manner necessary to complete the exchange, so long as it will not delay the Close of
417 escrow or cause additional expense or liability to the cooperating party. Unless otherwise provided herein, this provision shall not become a
418 contingency to the Closing of this transaction.

419 **35.1 LEVY OF ADDITIONAL PROPERTY TAXES:** The Property: (check one) ☒ is ☐ is not specially assessed for property taxes (e.g., farm,
420 forest or other) in a way that may result in levy of additional taxes in the future. If it is specially assessed, Seller represents that the Property is
421 current as to income or other conditions required to preserve its deferred tax status. If, as a result of Buyer's actions or the Closing of this
422 transaction, the Property either is disqualified from special use assessment or loses its deferred property tax status, unless otherwise specifically
423 provided in this Agreement, Buyer shall be responsible for and shall pay when due, any deferred and/or additional taxes and interest that may be
424 levied against the Property and shall hold Seller completely harmless therefrom. However, if as a result of Seller's actions prior to Closing, the
425 Property either is disqualified from its entitlement to special use assessment or loses its deferred property tax status, Buyer may, at Buyer's sole
426 option, promptly terminate this transaction and receive a refund of all deposits paid by Buyer in anticipation of Closing; or Close this transaction and
427 hold Seller responsible to pay into Escrow all deferred and/or additional taxes and interest that may be levied or recaptured against the Property
428 and hold Buyer completely harmless therefrom. The preceding shall not be construed to limit Buyer's or Seller's available remedies or damages
429 arising from a breach of this Section 35.1.

430 **35.2 HISTORIC PROPERTY DESIGNATION:** If the Property is or may be subject to a Historic Property local ordinance or is subject to or may
431 qualify for the Historic Property Special Property Tax Assessment under ORS 358.475 to 358.565, Seller shall provide **OREF 045 Historic**
432 **Property Addendum.**

## DISPUTE RESOLUTION

433 **36. FILING OF CLAIMS:** All claims, controversies and disputes between Seller, Buyer, Agents, and/or Firms, relating to the enforcement or
434 interpretation of this Sale Agreement (including those for rescission), as well as those relating to the validity or scope of the Sale Agreement, and all

Buyer Initials _[signed]_ Date 7/28/2018 11:04:04 AM PDT    Seller Initials _[signed]_ Date 8/2/2018 | 17:21

**This form has been licensed for use solely by Nicolaus Jones pursuant to a Forms License Agreement with Oregon Real Estate Forms, LLC.**
LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE
Copyright Oregon Real Estate Forms, LLC **2018**    www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC    **OREF 001**
RESIDENTIAL REAL ESTATE SALE AGREEMENT - Page 9 of 11

EXHIBIT 3



Sale Agreement # 07072018NJ

435 matters concerning the jurisdiction of the arbitrator(s) and/or Arbitration Service of Portland, to hear and decide questions of arbitrability (hereinafter
436 collectively referred to as "Claims"), shall be exclusively resolved in accordance with the procedures set forth herein, which shall survive Closing or
437 earlier termination of this transaction. All Claims shall be governed exclusively by Oregon law, and venue shall be placed in the county where the
438 real property is situated. Filing a Claim for arbitration shall be treated the same as filing in court for purposes of meeting any applicable statutes of
439 limitation or statute of ultimate repose, and for purposes of filing a *lis pendens*. BY CONSENTING TO THE PROVISIONS HEREIN, BUYER AND SELLER
440 ACKNOWLEDGE THAT THEY ARE GIVING UP THE CONSTITUTIONAL RIGHT TO HAVE CLAIMS TRIED BY A JUDGE OR JURY IN STATE OR FEDERAL COURT,
441 INCLUDING ALL ISSUES RELATING TO THE ARBITRABILITY OF SAID CLAIMS.

442 **37. EXCLUSIONS:** The following shall not constitute Claims: (1) Any proceeding to enforce or interpret a mortgage, trust deed, land sale contract or
443 recorded construction lien; (2) A forcible entry and detainer action (eviction); (3) If the matter is exclusively between REALTORS® and is otherwise
444 required to be resolved under the Professional Standards Ethics and Arbitration provisions of the National Association of REALTORS®; (4) If the
445 matter relates to a commission or fee with an Agent or Firm, and the written listing, service or fee agreement with Buyer or Seller contains a
446 mandatory mediation and/or arbitration provision; and (5) Filing in court for the issuance of provisional process described under the Oregon Rules of
447 Civil Procedure, provided, however, such filing shall not constitute a waiver of the right or duty to utilize the dispute resolution procedures described
448 herein for the adjudication of any Claims.

449 **38.1. SMALL CLAIMS BETWEEN BUYER AND SELLER:** All Claims between Buyer and Seller that are within the jurisdiction of the Small Claims
450 Court of the county in which the property is located, shall be brought and decided there, in lieu of mediation, arbitration or litigation in any other
451 forum. Notwithstanding ORS 46.455(3), neither Buyer nor Seller shall have a right to request a jury trial and so remove the matter from the Small
452 Claims Department of the Circuit Court. A judgment in Small Claims Court is final and binding and there is no right of appeal.

453 **38.2. MEDIATION AND ARBITRATION BETWEEN BUYER AND SELLER:** If Buyer's and/or Seller's Agent is a member of the National
454 Association of REALTORS®, all Claims shall be submitted to mediation in accordance with the procedures of the Home Seller/Home Buyer Dispute
455 Resolution System of the National Association of REALTORS® ("the System"). If an Agent is not a member of the National Association of
456 REALTORS®, or the System is not available through the Agent's Realtor® organization, then all Claims shall be submitted to mediation through
457 the program administered by Arbitration Service of Portland ("ASP"). All Claims that have not been resolved by mediation as described herein shall
458 be submitted to final and binding arbitration in accordance with the then-existing rules of ASP. The prevailing party in any arbitration between Buyer and
459 Seller shall be entitled to recovery of all reasonable attorney fees, filing fees, costs, disbursements, and mediator and arbitrator fees. Provided,
460 however, a prevailing party shall not be entitled to any award of attorney fees unless it is first established to the satisfaction of the arbitrator(s) (or
461 judge, if applicable) that the prevailing party offered or agreed in writing to participate in mediation prior to, or promptly upon, the filing for
462 arbitration.

463 **38.3 MEDIATION AND ARBITRATION INVOLVING AGENTS/FIRMS:** All Claims that include Agents or their Firms shall be resolved in accordance
464 with the mediation and arbitration process described in Section 38.2 above, and if applicable, the prevailing party shall be entitled to an award of
465 attorney fees, filing fees, cost, disbursements, and mediator and arbitrator fees, as provided therein.

466 ## SIGNATURE INSTRUCTIONS

467 **39. OFFER TO PURCHASE:** Buyer offers to purchase the Property upon the terms and conditions set forth in this Agreement. Buyer
468 **acknowledges receipt of a completely filled in copy of this Agreement which Buyer has fully read and understands. Buyer acknowledges**
469 **that Buyer has not relied upon any oral or written statements made by Seller or any Agents that are not expressly contained in this**
470 **Agreement. Neither Seller nor any Agent(s) warrant the square footage of any structure or the size of any land being purchased. If square**
471 **footage or land size is a material consideration, all structures and land should be measured by Buyer prior to signing or should be made**
472 **an express contingency in this Agreement.**

473 Deed or contract shall be prepared in the name of **to be determined in escrow.**

474 **Co-Ownership Note:** Buyer should secure advice from an expert or attorney regarding different forms of co-ownership and rights of survivorship.
475 Agents are not qualified to provide advice on these issues. Once the form of co-ownership is determined, Buyer should promptly notify Escrow.

476 This offer shall automatically expire on *(insert date)* **August 01** , 2018 at **5** ☐ a.m. ☒ p.m., (the "Offer Deadline"), if not
477 accepted by that time. Buyer may withdraw this offer before the Offer Deadline any time prior to Seller's transmission of signed acceptance. This
478 offer may be accepted by Seller only in writing.

479 Buyer ___Drew Hood and/or assigns___ Date 7/28/2018 11:04:04 AM PDT ___ a.m. ___ p.m. ←

480 Buyer _____ Date _____, _____ ___ a.m. ___ p.m. ←

481 Address _____ Zip _____

482 Phone Home _____ Work _____ E-mail drewhood75@hotmail.com Fax _____

Buyer Initials ___ Date 7/28/2018 11:04:04 AM PDT | Seller Initials ___ Date 8/2/2018 | 17:21

This form has been licensed for use solely by Nicolaus Jones pursuant to a Forms License Agreement with Oregon Real Estate Forms, LLC.
LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE
Copyright Oregon Real Estate Forms, LLC **2018**   www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC   **OREF 001**
RESIDENTIAL REAL ESTATE SALE AGREEMENT - Page 10 of 11

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com



**EXHIBIT 3**



Sale Agreement # **07072018NJ**

483   This offer was delivered/transmitted to Seller for signature on the _____ day of _____, _____, at _____ a.m. _____ p.m.

484   By _____ (Agent(s) presenting offer).

485   **40. AGREEMENT TO SELL / ACKNOWLEDGEMENTS / DISPOSITION OF EARNEST MONEY:** Seller <u>accepts</u> Buyer's offer. Seller
486   acknowledges receipt of a completely filled-in copy of this Agreement, which Seller has fully read and understands. Seller acknowledges
487   that Seller has not relied upon any oral or written statements of Buyer or of any Agent(s) that are not expressly contained in this
488   Agreement. Seller instructs that all earnest money distributable to Seller pursuant to Section 25 shall be disbursed as follows after
489   deduction of any title insurance and Escrow cancellation charges: (*check one*) ☐ First to Seller's Agent's Firm to the extent of the agreed
490   commission just as if the transaction had been Closed, with residue to Seller, or ☐ _____.

491   Seller _____  Date _____, _____ ___ a.m. ___ p.m. ←
        Lynda T. Bui, Trustee

492   Seller _____  Date _____, _____ ___ a.m. ___ p.m. ←

493   Address _____  Zip _____

494   Phone Home _____ Work _____ E-mail _____  Fax _____

495   **Note: If delivery/transmission occurs after the Offer Deadline identified at Offer to Purchase Section, above, it will not become
496   binding upon Seller and Buyer unless the parties agree to extend said Deadline by an Addendum, Counteroffer, or other writing,
497   jointly signed by the parties. The parties' failure to do so shall be treated as a rejection under Seller's Rejection Section, below,
498   and this transaction shall be automatically terminated.**

499   **41. SELLER'S REJECTION/COUNTER OFFER (select only one):** ☒ Seller does not accept the above offer, but makes the attached counter
500   offer.
501   ☐ Seller rejects Buyer's offer.

502   Seller _____  Date 8/2/2018 | 17:21 PDT _____ ___ a.m. ___ p.m. ←
        Lynda T. Bui, Trustee

503   Seller _____  Date _____, _____ ___ a.m. ___ p.m. ←

504   Address _____  Zip _____

505   Phone Home _____ Work _____ E-mail _____  Fax _____

506   <u>**NO CHANGES OR ALTERATIONS ARE PERMITTED TO ANY PORTION OF THE PRE-PRINTED FORMAT OR TEXT OF THIS FORM. ANY**</u>
507   <u>**SUCH PROPOSED CHANGES OR ALTERATIONS SHOULD BE MADE ON A SEPARATE DOCUMENT. CHANGES BY BUYER'S OR**</u>
508   <u>**SELLER'S AGENT TO THE TERMS OR PROVISIONS ABOVE BUYER'S SIGNATURE SHOULD ALSO BE ON A SEPARATE DOCUMENT.**</u>

Buyer Initials _____ Date 7/28/2018 11:04:04 AM PDT      Seller Initials _____ Date 8/2/2018 | 17:2

**This form has been licensed for use solely by Nicolaus Jones pursuant to a Forms License Agreement with Oregon Real Estate Forms, LLC.**

LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE
Copyright Oregon Real Estate Forms, LLC **2018**    www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC        **OREF 001**
RESIDENTIAL REAL ESTATE SALE AGREEMENT - Page 11 of 11

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     Hood- Gist

**EXHIBIT 3**

EQUAL HOUSING
OPPORTUNITY

**OREF**
Oregon Real Estate Forms, LLC

| | |
|---|---|
| Sale Agreement # | 07072018NJ |
| Addendum # | A |

# ADDENDUM TO REAL ESTATE SALE AGREEMENT

1   This is an Addendum to:   [X] Real Estate Sale Agreement   [ ] Seller's Counter Offer   [ ] Buyer's Counter Offer

2   Buyer: Drew Hood and/or assigns

3   Seller: Lynda T. Bui, Trustee

4   The real property described as: 66876 Gist Rd., Bend, OR 97703

5   SELLER AND BUYER HEREBY AGREE THE FOLLOWING SHALL BE A PART OF THE REAL ESTATE SALE AGREEMENT REFERENCED ABOVE.

6   --This Sale is contingent upon the successful closing of escrow of the Buyers home located at 64155 Hunnell Rd. Bend, OR 97703. The

7   Buyer shall have 60 calendar days to remove this contingency.

8

9   -This offer is contingent upon completion of a due diligence/feasibility study satisfactory to Buyer. Said study shall be completed within

10   30 calendar days from mutual acceptance of this offer and any subsequent counter offers. Seller shall cooperate in said study by

11   providing access and providing documents pertaining to subject property. Approval/disapproval of subject study shall be at Buyer's sole

12   discretion. Upon Buyer's written notice to Seller or Seller's agent of the Buyer's disapproval of study results, this agreement shall

13   become null and void and any deposited earnest money shall be promptly returned to Buyer. Close of escrow shall occur on or before 10

14   calendar days after the closing of their home on Hunnell Road.

15

16   -All items in the home and garages shall be included in the sale. A detailed list of items shall be provided to the Seller for signature after

17   mutual acceptance.

18

19   -Seller agrees to allow buyer to assign this contract, provided that at the time of assignment the Assignee provides proof of funds and the

20   ability to close by the scheduled closing date.

21

22

23

24

25

26

27

28

29   Buyer Signature _[signed] Drew Hood and/or assigns_   Date 7/28/2018 11:04:04 AM PDT ___ a.m. ___ p.m. ←

30   Buyer Signature _____   Date _____ , _____ ___ a.m. ___ p.m. ←

31   Seller Signature _[signed] Lynda T. Bui, Trustee_   Date 8/2/2018 | 17:21 PDT ___ a.m. ___ p.m. ←

32   Seller Signature _____   Date _____ , _____ ___ a.m. ___ p.m. ←

33   Buyer's Agent Nic Jones        Seller's Agent Josh Hansen

This form has been licensed for use solely by Nicolaus Jones pursuant to a Forms License Agreement with Oregon Real Estate Forms, LLC.

LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE
Copyright Oregon Real Estate Forms, LLC 2018    www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC

OREF 002

EXHIBIT 3

DocuSign Envelope ID: ...-...A8

**OREF**
Oregon Real Estate Forms, LLC

Sale Agreement # 07072018NJ

## SELLER'S COUNTER OFFER No. 1

1  This is a counter offer to  [X] Sale Agreement or  [ ] Buyer's Counter Offer
2  Seller: **Lynda T. Bui, trustee**
3  Buyer: **Drew Hood and/or assigns**
4  The real property described as: **66876 Gist Rd., Bend, OR  97703**

5  **AGREEMENT TO SELL:**  Seller agrees to sell the real and personal property upon the terms and conditions set forth in the Sale Agreement and
6  subsequent counter offers where applicable, **except** as modified as follows: 1. Until the end of buyer's due diligence/feasibility study, this offer
7  **is contingent upon the sale of buyer's residence at 64155 Hunnell Rd., Bend OR 97703, .  If buyer's residence has not closed prior to the**
8  **end of the 30 day contingency period, buyer agrees to proceed with the sale without the closing of buyer's residence.  2.  Buyer agrees to**
9  **provide seller with proof of funds for proceeds not coming from the sale of buyer's residence, and a loan preapproval letter**
10  **demonstrating buyer's ability to purchase the property without the proceeds from the sale of buyer's residence, within 3 business days of**
11  **mutual acceptance**
12  **3. Buyer shall have the right to buy all of the personal property on site for $10,000, payable at close of escrow. Personal property is sold**
13  **in as-is condition with no warranties expressed or implied. If buyer is elects to purchase the personal property, buyer and seller agree to**
14  **execute an addendum detailing the list of items included in the sale within 10 days of mutual acceptance.**
15  **4.  Closing to be on or before 10 days from court approval of the sale.**
16  **5.  Motion to approve the sale and notice to creditors will not be begin until removal of all contingencies.**
17  **6.  Buyer agrees to execute the Contingent Right to Purchase Addendum accompanying this counter offer.**
18  For additional provisions, see Addendum **1**

19  **All remaining terms and conditions of the Sale Agreement (and other counter offer(s), where applicable), not otherwise modified, are**
20  **approved and accepted by Seller. Time is the essence.** This Seller's Counter Offer shall automatically expire on    **August 06, 2018**    at
21  **5**    [ ] a.m. [X] p.m. ("the Counter Offer Deadline"), if not accepted within that time This Seller's Counter Offer may be accepted by Buyer only in
22  writing. However, Seller may withdraw this counter offer any time prior to Buyer's written acceptance.

23  Seller acknowledges receipt of a completely filled in copy of Buyer's Offer and Seller's Counter Offer, and all subsequent counter offers
24  where applicable, which Seller has fully read and understands. Seller acknowledges that Seller has not relied on any oral or written
25  statements of any Buyer or of any Agent(s) that are not expressly contained in the Sale Agreement as amended. Seller instructs that all
26  earnest money distributable to Seller pursuant to the Sale Agreement shall be disbursed as follows after deduction of any title insurance
27  and Escrow cancellation charges: (check one)  [ ] First to Seller's Agent's Firm, to the extent of the agreed commission just as if the
28  transaction had been consummated, with residue to Seller; or [X] **100% to seller**
29

30  Seller Signature _____[signature: Lynda T. Bui, trustee]_____   Date **8/2/2018  |  17:21 PDT** ___ a.m. ___ p.m. ←
31  Seller Signature _____   Date _____ ___ a.m. ___ p.m. ←

32  **BUYER'S RESPONSE (select only one):**
33  [ ] Buyer **accepts** Seller's Counter Offer.
34  [X] Buyer **does not accept** Seller's Counter Offer AND submits the attached Buyer's Counter Offer.
35  [ ] Buyer **rejects** Seller's Counter Offer.
36  Buyer acknowledges receipt of signed copies of the Sale Agreement and all subsequent counter offers including this Seller's Counter
37  Offer, where applicable, which Buyer has fully read and understands.
38  Buyer Signature ___[signature: Andrew Hood]___   Date **8/6/2018 1:12:09 PM PDT** _____ ___ a.m. ___ p.m. ←
        Drew Hood and/or assigns
39  Buyer Signature _____   Date _____ ___ a.m. ___ p.m. ←

40  **Note: If delivery/transmission occurs after the Counter Offer Deadline identified above, it will not become binding upon Seller and**
41  **Buyer unless the parties agree to extend said Deadline by an Addendum, Counteroffer, or other writing, jointly signed by the**
42  **parties. The parties' failure to do so shall be treated as a rejection under Buyers Response, above, and this transaction shall be**
43  **automatically terminated.**

44  Seller's Agent **Josh Hansen** _____   Buyer's Agent **Nic Jones**

This form has been licensed for use solely by Josh Hansen pursuant to a Forms License Agreement with Oregon Real Estate Forms, LLC.

LINES WITH THIS ← SYMBOL REQUIRE A SIGNATURE AND DATE
Copyright Oregon Real Estate Forms, LLC 2018        www.orefonline.com        OREF 003
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC        Page 1 of 1

Strategic Realty LLC, 141 NW Greenwood Ave., Ste. 100 Bend OR 97702    Phone: 541-678-0756    Fax: 888-993-2345    66876 Gist Rd.
Josh Hansen    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

**EXHIBIT 3**

### Addendum 1 to Seller Counter Offer #1 re Purchase and Sale of
### 66876 Gist Road, Bend, Oregon 97703 (Deschutes County)

This is a counteroffer ("Counteroffer") to the July 28, 2018, "Residential Real Estate Agreement" received from Drew Hood ("Buyer's Offer") for the purchase of real property commonly known as 66876 Gist Road, Bend, OR 97703 Deschutes County ("Property"), by Alan Reay ("Buyer"), from Lynda T. Bui, solely in her capacity as the Chapter 7 Trustee ("Seller" and, together with Buyer, the "Parties"), for the Bankruptcy Estate of *In re Russel Dennis Hiles, III* ("Debtor"), Bankruptcy Case No.: 6:16-bk-16877-WJ.

When fully-executed below, this Counteroffer will constitute conclusive evidence of the contract for the sale and purchase of the Property (the "Sale") and the Parties' agreement for the Sale, subject to approval by the Bankruptcy Court in the Debtor's Bankruptcy case and further or more complete documentation in Seller's discretion. **This Counteroffer Supersedes the Buyer's Proposal.** Seller may elect to deem this Counteroffer the definitive agreement between the Parties regarding the Sale.

1. <u>Purchase Price</u>: The purchase price for the Property shall be **$1,995,000.00**, all cash (the "Purchase Price").

2. <u>Initial Deposit</u>: Within two (2) business days following Buyer's execution of this Counteroffer, Buyer shall deliver to escrow, together with an executed copy of this Counteroffer, the sum of **$25,000.00**, to be applied toward the Purchase Price (the "Deposit"), as follows:

   > Christina Moore, Escrow Officer
   > Western Title & Escrow Company
   > 360 SW Bond Street, Suite 100
   > Bend, OR 97702
   > Telephone: : 541-330-1214; Facsimile: 541-330-1242
   > Email: christina.moore@westerntitle.com

3. <u>Without Contingencies or a Due Diligence Period</u>: Buyer acknowledges that he is familiar with the Property and that the Buyer has previously viewed the Property. Nevertheless, at Buyer's sole expense, Buyer shall have until **11:59 p.m. PDT, Saturday, September 01, 2018**, to obtain all investigations, appraisals and tests, and to complete any and all due diligence which the Buyer desires (the "Due Diligence Deadline"). By no later than the Due Diligence Deadline, Buyer may advise Seller, in writing, of his election to cancel the Sale, in which case Buyer shall receive a full refund of the Deposit (the "Notice to Cancel"). Absent Buyer's submission of a Notice to Cancel in accordance with this paragraph 3, the Sale shall be without any further contingencies or due diligence requirements of the Buyer.

–1–

EXHIBIT 3

**Without limiting the generality of the foregoing, Buyer's silence shall be deemed an acceptance and affirmative election to proceed with the Sale without any further contingencies or due diligence requirements.**

4. <u>Bankruptcy Court Approval</u>: The Sale is expressly subject to Bankruptcy Court approval in the Debtor's bankruptcy case. As soon as reasonably practical following expiration of the Due Diligence Deadline without Buyer's submission of a Notice to Cancel, the Seller will file a motion to approve the Sale with the Bankruptcy Court pursuant to section 363 of the United States Bankruptcy Code (11 U.S.C. § 363) (the "Approval Motion"). As part of such motion, the Seller will request a finding of the Buyer's "good faith" in accordance with section 363(m) of the Bankruptcy Code.

5. <u>Tender of Balance of Purchase Price/Closing</u>: The Sale shall close, with Buyer tendering the full Purchase Price, not more than fifteen (10) calendar days after the entry of an order of the Bankruptcy Court authorizing the Sale.

6. <u>Property Sold "As is" "Where is"/Disclaimer of Warranties</u>:

     a. Buyer accepts the land, buildings, improvements and all other aspects of the property in their present conditions AS IS, including latent defects, the environmental conditions present on the premises, or any other matter affecting or relating to the physical condition of the property, without any representations or warranties, expressed or implied, unless they are set forth expressly herein. The Buyer hereby expressly waives any and all claims arising out of any representations or warranties not specifically set forth herein. The Buyer has made a personal and complete inspection of said real property, and has found the same in good and satisfactory order and condition as of the date hereof, and relies solely upon such inspection by Buyer in entering into this agreement and the purchase of said property on the terms, covenants, provisions and conditions herein set forth and contained, and has neither placed any reliance on nor acted upon any representations or warranties on the part of the Seller not specifically contained herein. Buyer agrees that he has ascertained, from sources other than Seller, the applicable zoning, building, housing and other regulatory ordinances and laws and that he accepts the property with full awareness of these ordinances and laws as they may affect the present use or any intended future use of the property, and Seller has made no representations with respect thereto.

     b. Buyer acknowledges that this clause was a negotiated part of this agreement and serves as an essential component of the considera-

–2–

EXHIBIT 3