| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Lynda T Bui, Trustee<br>3550 Vine Street, Ste. 210<br>Riverside, CA 92507<br>Telephone: (949) 340-3400<br>Facsimile: (949) 340-3000<br>Email: Trustee.Bui@shbllp.com<br><br>Chapter 7 Trustee<br><br><br><br>☐ *Individual appearing without attorney*<br>☐ *Attorney for:* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

| In re:<br><br>RUSSEL DENNIS HILES, III,<br><br><br><br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 6:16-bk-16877-WJ<br><br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF MOTION FOR:**<br><br>Chapter 7 Trustee's Motion for Order: (1) Authorizing the Sale of Real Property of the Estate Free and Clear of Certain Liens Pursuant to Bankruptcy Code §§ 363(b)(1) and (f), (2) Approving Payment of Real Estate Commission and Other Costs; and (3) Granting Related Relief et al.<br><br>*(Specify name of Motion)* |
| | DATE: 12/30/2019<br>TIME: 1:00 pm<br>COURTROOM: 304<br>PLACE: United States Bankruptcy Court<br>     3420 Twelfth Street<br>     Riverside, CA 92501 |

1. TO (*specify name*):  United States Trustee, the Debtor, Creditors, Parties in Interest and their respective counsel

2. NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3. **Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4.  **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date.  If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5.  **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date:   12/09/2019

_____
Printed name of law firm


/s/ Lynda T. Bui
_____
Signature


Lynda T. Bui
_____
Printed name of attorney

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

1  Lynda T Bui, Trustee
2  3550 Vine Street, Ste. 210
   Riverside, CA 92507
   Telephone:   (949) 340-3400
3  Facsimile:    (949) 340-3000
   Email: Trustee.Bui@shulmanbastian.com
4

5  Chapter 7 Trustee

6              **UNITED STATES BANKRUPTCY COURT**

7       **CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION**

8  In re                          Case No.  6:16-bk-16877-WJ
9
   **RUSSEL DENNIS HILES, III,**     Chapter 7
10
   Debtor.                        **CHAPTER 7 TRUSTEE'S MOTION FOR
11                                 ORDER:**

12                                 **(1)  AUTHORIZING THE SHORT SALE OF
                                   REAL PROPERTY OF THE ESTATE FREE
13                                 AND CLEAR OF LIENS PURSUANT TO
                                   BANKRUPTCY CODE §§ 363(b)(1) and (f);**

14                                 **(2)  APPROVING PAYMENT OF REAL
                                   ESTATE COMMISSION AND OTHER
15                                 COSTS; AND**

16                                 **(3)  GRANTING RELATED RELIEF
                                   INCLUDING APPROVAL OF A BANKRUPTCY
17                                 CODE § 506(c) SURCHARGE**

18                                 **MEMORANDUM OF POINTS AND
                                   AUTHORITIES AND DECLARATIONS OF
19                                 LYNDA T. BUI IN SUPPORT AND PATRICK
                                   BUTLER IN SUPPORT**

20                                 **[155 Metate Place, Palm Desert, CA 92260]**

21                                 **Hearing Date:**
                                   Date:  December 30, 2019
22                                 Time:  1:00 p.m.
                                   Place: Courtroom 304
23                                         United States Bankruptcy Court
                                           3420 Twelfth Street
24                                         Riverside, CA 92501

25

26

27

28

**Lynda T. Bui,
Chapter 7 Trustee**
3550 Vine Street
Suite 210
Riverside, CA 92507

1

23064-000 Short Sale Motion (Palm Desert Property)

## TABLE OF CONTENTS

**Page**

I. BACKGROUND FACTS ....................................................................................... 5

    A. The Bankruptcy Case ............................................................................... 5

    B. The Palm Desert Property ........................................................................ 5

    A. Status of the Liens Impacting the Property .............................................. 6

        1. Real Property Taxes .................................................................... 6

        2. First Priority – Current Beneficiary of Lender Deed of Trust ............. 6

        3. Second Priority - Judgment Lien in Favor of De Castro .................. 7

        4. Third Priority – FTB Tax Lien ....................................................... 8

        5. Fourth Priority – Farmers Insurance Exchange ............................. 8

        6. Homeowners' Association Assessments Incurred After the
Petition Date ............................................................................... 8

    C. Trustee's Marketing of the Property for Sale ............................................ 9

    D. Expenses Incurred Related to Preservation the Property (Bankruptcy
Code § 506(c) Surcharge) ........................................................................ 9

    E. The Proposed Short Sale; Information in Compliance with LBR 6004-
1(c)(3) ..................................................................................................... 10

II. RELIEF REQUESTED ...................................................................................... 12

III. ARGUMENT ..................................................................................................... 13

    A. There is a Good Business Reason for the Sale and the Sale is in the
Best Interest of the Estate. ..................................................................... 13

    B. The Proposed Sale Should be Allowed Free and Clear of Liens. ............... 14

    C. Request for Payment of Real Estate Commission to the Broker
Team. .................................................................................................... 15

    D. The Costs for Preservation and Disposition of the Secured Creditor's
Collateral May Be Recovered From the Sale Proceeds. ........................... 16

    E. The Court Has the Authority to Waive the Fourteen-Day Stay of Sale. ....... 17

IV. CONCLUSION ................................................................................................. 18

DECLARATION OF LYNDA T. BUI ........................................................................ 20

DECLARATION OF PATRICK BUTLER ................................................................... 25

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

2

23064-000 Short Sale Motion (Palm Desert Property)

# TABLE OF AUTHORITIES

**Page**

## CASES

*Clear Channel Outdoor, Inc. v. Knupfer* (*In re* PW, LLC), 391 B.R. 25, 41 (9th Cir B.A.P. 2008)..............................................................................................................14, 15

*General Elec. Captial Corp v. North County Jeep & Renault*, 506 U.S. 821, 121 L.Ed. 2d 37, 113 S.Ct. 17 (1992) ..........................................................................16

*In re Aerisa, Inc.*, 2:09-bk-18456-RJH (Bankr. D. Ariz) ..................................................15

*In re Anderson*, 66 B.R. 97 (B.A.P. 9th Cir. 1986) .........................................................17

*In re Boston Generating, LLC*, 440 B.R. 302, 333 (Bankr. S.D.N.Y. 2010).....................15

*In re Cascade Hydraulics & Utility Srv., Inc.*, 815 F.2d 546 (9th Cir. 1987).....................17

*In re Delta Towers*, Ltd., 924 F.2d 74 (5th Cir. 1991) ......................................................16

*In re H.P. Tool Mfg. Corp.*, 12 B.R. 600 (Bankr. E.D. Pa. 1981) ......................................17

*In re Jolan, Inc.*, 403 B.R. 866, 869-870 (Bankr. W.D. Wash,. 2009) .............................15

*In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983) .................................................13

*In re McKeesport Steel Castings Co.*, 799F.2d 91 (3d Cir. 1986) ...................................16

*In re Palomar Truck Corp.*, 951 F.2d 229 (9th Cir. 1991).................................................16

*In re Parque Forestal, Inc.*, 949 F.2d 504 (1st Cir. 1991)................................................16

*In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) .............13

*Snohomish County v. Seattle-First Nat'l Bank (In re Glasply Marine Industries, Inc.)*, 971 F.2d 391 (9th Cir. 1992).........................................................................17

## STATUTES

11 U.S.C. §  363(b).........................................................................................................13

11 U.S.C. § 328(a)...........................................................................................................15

11 U.S.C. § 363(f)............................................................................................................14

11 U.S.C. § 363(f)(2)........................................................................................................14

11 U.S.C. § 363(m)...........................................................................................................19

11 U.S.C. § 506(c)......................................................................................................16, 17

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 210
Riverside, CA 92507

23064-000 Short Sale Motion (Palm Desert Property)

11 U.S.C. § 704 ............................................................................................... 13

11 U.S.C. § 704(a) .......................................................................................... 13

California Civil Code §2924 *et seq.* ................................................................ 15


**<u>RULES</u>**

Federal Rule of Bankruptcy Procedure 6004(h) ....................................... 17, 19

Local Bankruptcy 6004-1(c)(3) ...................................................................... 10

Local Bankruptcy Rule 6004-1(g) .................................................................. 13

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 210
Riverside, CA 92507

23064-000 Short Sale Motion (Palm Desert Property)

**TO THE HONORABLE WAYNE E. JOHNSON, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER PARTIES-IN-INTEREST:**

Lynda T. Bui, solely in her capacity as the Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of Russel Dennis Hiles, III ("Debtor"), brings this Motion for Order: (1) Authorizing the Short Sale of Real Property of the Estate Free and Clear of Certain Liens Pursuant to Bankruptcy Code §§ 363(b)(1) and (f), (2) Approving Payment of Real Estate Commission and Other Costs; and (3) Granting Related Relief Including Approval of a Bankruptcy Code § 506(c) Surcharge ("Sale Motion"), and respectfully represents as follows:

## I. BACKGROUND FACTS

### A. The Bankruptcy Case

The Debtor filed a chapter 11 bankruptcy petition on August 1, 2016 ("Petition Date"), in the United States Bankruptcy Court, Central District of California, Case No. 6:16-bk-16877-WJ.   Pursuant to order entered (docket 275) on December 21, 2017 ("Conversion Date"), the case was converted to a Chapter 7 and Lynda T. Bui was subsequently appointed as the Chapter 7 trustee for this Estate

The last day to timely file proof of claims in this case was April 9, 2018. Government claims were due by January 30, 2017.  The Court's claims register indicates there have been 30 claims filed totaling $22,779,381.46, consisting of secured claims $3,956,552.40, priority claims of $4,210,470.09, administrative claims of $325.00 and general unsecured claims of $14,612,033.97.

### B. The Palm Desert Property

Attached as **Exhibit 1** to the Declaration of Lynda T. Bui ("Bui Declaration") are true and correct copies of the Debtor's Schedules A/B, C and D.

On his Schedule A/B, the Debtor lists his ownership of the residence located at 155 Metate Place, Palm Desert, California 92260 ("Property"). The Debtor valued the Property at $2,750,000.00 and on his Schedule D, listed the following liens totaling

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 210
Riverside, CA 92507

5

23064-000 Short Sale Motion (Palm Desert Property)

1  $2,824,674.62: (1) a first priority lien in favor of Bank of America in the amount of

2  $1,395,102.00; (2) a second priority lien in favor of De Castro West et al. ("De Castro") in

3  the amount of $60,000.00; and (3) third priority lien in favor of the California Franchise

4  Tax Board ("FTB") in the amount of $1,369,572.62.

5      On his Schedule C, the Debtor claimed an exemption in the Property of

6  $175,000.00 pursuant to California Code of Civil Procedure § 704.730.  The Trustee has

7  been advised by the Debtor that he will be waiving the exemption because since the

8  Petition Date and/or after the Conversion Date, the Debtor (i) has not made any

9  payments on the secured mortgage, causing the loan default to substantially increase,

10  (ii) has not paid real property taxes on secured by the Property, causing the penalties and

11  interest on defaulted taxes to also increase, and (iii) has not paid homeowners'

12  association assessments, causing the penalties and interest on defaulted assessments to

13  also increase.

14      Attached as **Exhibit 2** to the Bui Declaration is a true and correct copy of the

15  Preliminary Title Report ("Title Report") for the Property dated as of November 18, 2019.

16  The Title Report shows that the Property was transferred to Debtor's non-filing spouse,

17  Melanie Nell Roe in May 2015, but was transferred back into the Debtor's name in July

18  2016, and currently is vested solely in the Debtor's name.  The Trustee is advised that

19  Ms. Roe has no objection to the Trustee's sale of the Property.

20  **A.**    **Status of the Liens Impacting the Property**

21      **1.    Real Property Taxes**

22      Through the proposed short sale of the Property, current pro-rata real taxes will be

23  paid.

24      **2.    First Priority – Current Beneficiary of Lender Deed of Trust**

25      The Trustee is advised that Bank of America, the scheduled beneficiary under the

26  first priority lien encumbering the Property, assigned its right to its lien to Wilmington

27  Savings Fund Society, FSB as Trustee of Stanwich Mortgage Loan Trust and the loan is

28  serviced by Carrington Mortgage Services LLC (collectively "Secured Creditor").  On

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 210
Riverside, CA 92507

6

23064-000 Short Sale Motion (Palm Desert Property)

1   August 22, 2017, the Secured Creditor filed a Motion for Relief From Stay (Real Property)

2   ("Stay Motion") seeking relief from the automatic stay to proceed with it state law

3   remedies to foreclose.  The Stay Motion indicated that in August 2017, the amount owed

4   on its lien was $1,447,030.82 and that the since the Petition Date, the Debtor had not

5   made any payments to Secured Creditor, causing the loan default to substantially

6   increase.

7       A true and correct copy of the payoff quote the Trustee received from the Secured

8   Creditor is attached to the Bui Declaration as **Exhibit 3** indicates that amount owed as of

9   December 31, 2018 was $1,527,078.67, and that additional interest after December 31,

10  2018 would accrue at $186.3321 per day. A continued hearing on the Stay Motion

11  scheduled for March 4, 2019 has been vacated because the Trustee and the Secured

12  Creditor entered into a stipulation (docket 397) for setting the terms related to terminating

13  the stay and foreclosure.  Under the stipulation, the Secured Creditor has agreed it will

14  not record a notice of default until 120 days after entry of the Court order approving the

15  stipulation, and any short sale of the Property must have approval of the Secured

16  Creditor.  The order approving this stipulation was entered on February 25, 2019 (docket

17  399).

18      **3.    Second Priority - Judgment Lien in Favor of De Castro**

19      During this case, the Trustee commenced an avoidance action[1] against De Castro

20  and obtained a judgment ("De Castro Judgment") deeming that the lien in favor of De

21  Castro was a preferential transfer under 11 U.S.C. § 547 and void and recovered for the

22  benefit of the Estate under 11 U.S.C. § 550 and preserved for the benefit of the Estate

23  under 11 U.S.C. § 551.   Attached as **Exhibit 4** to the Bui Declaration is a  true and

24  correct copy of the De Castro Judgment.

25

26

27

---

28  [1] The Avoidance Action was commenced on July 13, 2018, styled *Lynda T. Bui, Chapter 7 Trustee v. De Castro, West, Chodorow, Mendler, Glickfeld & Nass, Inc., California professional corporation*, Adversary Case No. 6:18-ap-01154-WJ.

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

7

23064-000 Short Sale Motion (Palm Desert Property)

### 4.    Third Priority – FTB Tax Lien

Claim 5 filed by the FTB on January 23, 2018 asserts a secured claim of $1,378,902.51 and a priority unsecured claim of $764.00, for a total claim of $1,379,666.51. The Trustee proposes to sell the Property free and clear of the FTB's lien under §§ 363(f)(1) and/or 363(f)(5) as in California, judicial and non-judicial foreclosures can be used to wipe out such junior liens.

### 5.    Fourth Priority – Farmers Insurance Exchange

The Title Report reflects that Farmers Insurance Exchange recorded an Abstract of Judgment on April 16, 2019, recording number 19-128518, in the amount of $5,922,655.54.  This lien is subject to a bona fide dispute.  The Abstract of Judgment was recorded after the Petition Date and was not authorized by the Court.  Based on this, the Trustee asserts the lien created by the filing the Abstract of Judgment may avoided and recovered pursuant to 11 U.S.C. §§549 and 550.  The Trustee, intends to communicate with Farmers Insurance Exchange's counsel to reach an agreement to have the Abstract of Judgment released. If no agreement can be reached, the Trustee proposes to sell the Property free and clear of this lien under §§ 363(f)(1) and/or 363(f)(5) as in California, judicial and non-judicial foreclosures can be used to wipe out such junior liens.

### 6.    Homeowners' Association Assessments Incurred After the Petition Date

The Property is subject to the Covenants, Conditions and Restrictions of the Bighorn Homeowners Association, Inc. ("HOA").  The Trustee is advised by the HOA that no quarterly HOA assessments have been paid since the Conversion Date,  and that the total post-conversion amount due the HOA as of December 30, 2019 is $30,617.47. (See **Exhibit 5** to the Bui Declaration).  This amounts includes quarterly assessments of $22,980.00, late charges of $2,298.00, interest of $3,370.05, and attorneys' fees and costs of $1,969.05.  Through the proposed short sale of the Property, defaulted and current pro-rata HOA assessments will be paid.

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

8

23064-000 Short Sale Motion (Palm Desert Property)

**C.**     <u>Trustee's Marketing of the Property for Sale</u>

Pursuant to Court order entered on March 2, 2018 (docket 316), the Trustee was authorized to employ GlassRatner Brokerage Services, Inc. ("Listing Agent") to assist the Trustee in the marketing the Property for sale.  At that time, the Property was listed for sale at $2,650,000.00. The Property has been on the market for over eighteen months and during that time, there has been some interest but only two potential buyers.  One potential buyer did not accept the Trustee's counter-offer but rather came back with a lower price and wanted certain bankruptcy terms waived, which the Trustee could not approve if the Trustee proceeded with a traditional sale.  The second potential buyer withdrew its offer due to excessive repairs the buyer required at the Property.

Based on the substantially increasing lien of the Secured Creditor and given the marketing efforts for the Property, there does not appear to be equity in the Property for the benefit of the Estate. As such, on March 6, 2019, the Trustee filed an application (docket 403) for authority to employ the Listing Agent and BK Global Real Estate Services as the Trustee's real estate broker team ("Broker Team") to assist in the marketing and negotiating of a short sale of the Estate's interest in Property. Pursuant to Court order entered on April 2, 2019 (docket 408), the Trustee was authorized to employ the Broker Team.  The Property was listed for sale at $1,975,000.00.

**D.**     <u>Expenses Incurred Related to Preservation the Property (Bankruptcy Code §</u>
       <u>506(c) Surcharge)</u>

During this case, the Trustee's Listing Agent incurred expenses of $22,919.78 to preserve, maintain and repair the Property to increase its appeal to potential buyers so that it could be marketed for sale and to avoid homeowners' association charges for violations for not maintaining landscaping or other outdoor areas, including the pool, summarized as follows:

////

////

////

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 210
Riverside, CA 92507

9

23064-000 Short Sale Motion (Palm Desert Property)

| Expense | Amount |
|---|---|
| Coachella Valley Water District | $3,300.26 |
| Southern California Edison | $11,154.52 |
| Pool Repairs | $3,280.00 |
| Miguel Gomez Gardening, Inc. | $5,185.00 |
| Total | $22,919.78 |

(See **Exhibit 6** to the Bui Declaration for copies of the expense receipts).

Through this Sale Motion, the Trustee seeks Court approval of a Bankruptcy Code § 506(c) surcharge in the amount of $22,919.78 against the Secured Creditor's lien for the costs the Listing Agent has incurred to maintain the Secured Creditor's collateral (the Property), as well as the preservation and disposition of the Property.

To the extent that the Secured Creditor does not approve all or a portion of the 506(c) surcharge in the amount of $22,919.78, the Trustee seeks approval to reimburse the Listing Agent for the expenses through contributions in amounts to be determined by the parties (i.e, carve-outs by the Estate, the Broker Team, the Buyer's broker, and/or the HOA).

**E.** **The Proposed Short Sale; Information in Compliance with LBR 6004-1(c)(3)**

Attached to the Bui Declaration as **Exhibit 7** is a true and correct copy of the offer for the Property received from Yokang Zhou and Gullermo Fernandez Castaneda (or their assignee[2]) ("Buyer"). The Buyer's offer is the result of negotiations between the Trustee and the Buyer for the highest and best offer.   The following chart provides information on the sale in compliance with Local Bankruptcy 6004-1(c)(3):

| LBR 6004-1(c)(3) Requirement | Information |
|---|---|
| *LBR 6004-1(c)(3)(A)* Date, Time, and Place of hearing on the proposed sale: | Hearing Date and Time: December 30, 2019 at 1:00 p.m. Hearing Place:        U.S. Bankruptcy Court                          Courtroom 304                          3420 Twelfth Street                          Riverside, CA 92501 |

---

[2] The Trustee has final discretion to approve or not approve the assignee.

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

23064-000 Short Sale Motion (Palm Desert Property)

| LBR 6004-1(c)(3) Requirement | Information |
| --- | --- |
| *LBR 6004-1(c)(3)(B)*<br>Name and address of the proposed buyer: | Yokang Zhou and Gullermo Fernandez Castaneda(or their assignee) whose address is 8 Serrano Way, Rancho Mirage, CA 92270. |
| *LBR 6004-1(c)(3)(C)*<br>Description of the property to be sold: | Real property located at: 155 Metate Place, Palm Desert, CA 92260 |
| *LBR 6004-1(c)(3)(D)*<br>Terms and conditions of the proposed sale, including the price and all contingencies: | Offer of $1,450,000.00. Sale is subject to approval of the Secured Creditor. Through escrow, payment of all expenses associated with the short sale will be paid. These expenses include payment of a maximum 5% real estate brokerage commission (or a maximum of $72,500.00), reimbursement to the Estate of expenses that were incurred to insure Property (approximately $2,341.18), and a fee for the Estate of between approximately $72,500.00 (depending on the amount approved by the Secured Creditor). The Trustee may elect to not sell Property if the Estate does not receive this fee. |
| *LBR 6004-1(c)(3)(E)*<br>Whether the proposed sale is free and clear of liens, claims or interests, or subject to them, and a description of all such liens, claims or interests: | Liens impacting the Property are identified in the Title Report attached as **Exhibit 2**. Under the sale,<br><br>(i) all outstanding real property taxes, if any, and current pro-rata real taxes will be paid;<br><br>(ii) the lien of the senior Secured Creditor will be paid in full on an amount as agreed to by the Senior Secured Creditor so as to satisfy the lien, and upon close of escrow, the Secured Creditor's lien will be released and all of its claims against the Property and the Estate (including any deficiency claims resulting from the Trustee's sale of the Property), will be waived;<br><br>(iii) the lien under the De Castro Judgment was recovered for the benefit of the Estate and therefore will be released;<br><br>(v) the HOA assessments will be paid in full or an amount as agreed to by the HOA;<br><br>(vi) pursuant to Bankruptcy Code §§ 363(f)(1) and 363(f)(5), the Property will be sold free and clear of any and all other junior liens, including the liens of the FTB and Farmers Insurance Exchange, and such junior liens will be released, discharged and terminated at the close of escrow to the extent they are not satisfied or released prior to closing, and the Property will be sold free and clear of the junior liens and such liens will not attach sale proceeds. |
| *LBR 6004-1(c)(3)(F)*<br>Whether the proposed sale is subject to higher and better bids: | Yes to the extent the lender requires the highest and best offer and one that is consistent with the lender's own appraisal. |

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

11

23064-000 Short Sale Motion (Palm Desert Property)

| LBR 6004-1(c)(3) Requirement | Information |
|---|---|
| LBR 6004-1(c)(3)(G)<br>Consideration to be received by the Estate, including estimated commissions, fees and other costs of sale: | The Estate is expected to receive between approximately $72,500.00 (depending on the amount approved by the Secured Creditor). The estimated costs of sale is 8% of the $145,500.00 sale price (the 8% includes broker commission), subject to approval of the Secured Creditor. Other costs will be reimbursement of amounts advanced to insure the Property (approximately $2,341.18) and reimbursement of amounts to avoid homeowners' association charges for violations for not maintaining landscaping or other outdoor areas, including the pool (total amount of $22,919.78, receipts for the amounts paid have been provided to the Trustee, see **Exhibit 6**).<br><br>Sale price and costs of sale are subject to the Secured Creditor's approval. |
| LBR 6004-1(c)(3)(H)<br>If authorization if sought to pay commission, the identity of the auctioneer, broker, or sales agent and the amount or percentage of the proposed commission to be paid: | The Broker Team's commission shall not to exceed 5% percent of the purchase price and is subject to approval of the Secured Creditor. The broker representing the Buyer is Compass. ("Selling Broker"), the commission will be split between the Broker Team and the Selling Broker as agreed to by brokers and approved by the Secured Creditor.<br><br>The Trustee also seeks approval to use proceeds of the sale to reimburse her Listing Agent an amount not to exceed $22,919.78 for expenses incurred to maintain the Property so that it could be marketed for sale and to avoid homeowners' association charges for violations for not maintaining landscaping or other outdoor areas, including the pool (see **Exhibit 6**). |
| LBR 6004-1(c)(3)(I)<br>A description of the estimated or possible tax consequences to the Estate, if known, and how any tax liability generated by the sale of the property will be paid: | The Trustee has communicated with her accountant and believes there will be no tax liability from the sale because (i) estimated tax basis for the Property exceeds the sale price, and (ii) given that the Property had been the Debtor's residence, the Estate may be entitled to capital gains exclusions, |
| LBR 6004-1(c)(3)(J)<br>Deadline to file and serve objection: | Objections, if any, must be filed and served 14 days prior to the Hearing Date (or by December 16, 2019). |

## II.    **RELIEF REQUESTED**

Through this Sale Motion, the Trustee is seeking authority sell the Property on an as-is, where-is basis, without any warranties or representations, to the Buyer approved by the Secured Creditor and on the sale terms and conditions that are approved by the Secured Creditor.

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

12

23064-000 Short Sale Motion (Palm Desert Property)

1    The Trustee believes that it is in the best interest of the Estate and its creditors to

2    short sell the Property as proposed in this Sale Motion.  The alternative is abandon the

3    Estate's interest in the Property and creditors will not receive anything from the Property

4    as the Secured Creditor has obtained relief from stay to foreclose.

5    Nothing in the Sale Motion is intended to impair any Secured Creditor's right to

6    foreclose on the Property.

7    Pursuant to Local Bankruptcy Rule 6004-1(g), once the short sale closes, the

8    Trustee will file with the Court a *Report of Sale* which details the sale terms and Buyer

9    approved by the Secured Creditor.

10    **III.    ARGUMENT[3]**

11    **A.    There is a Good Business Reason for the Sale and the Sale is in the Best**

12    **Interest of the Estate.**

13    The duties of a trustee in a Chapter 7 filing are enumerated in 11 U.S.C. § 704,

14    which provides in relevant part as follows:

15    (a) The trustee shall—

16    (1) collect and reduce to money the property of the estate for
17    which such trustee serves, and close such estate as
18    expeditiously as is compatible with the best interests of parties
     in interest;

     (2) be accountable for all property received;

19
20    11 U.S.C. § 704(a).  Further, the Trustee, after notice and hearing, may sell property of

     the estate.  11 U.S.C. § 363(b).  Courts ordinarily will approve a proposed sale if there is
21
     a good business reason for the sale and the sale is in the bests interests of the estate.  *In*
22
     *re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re Lionel*
23
     *Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983).  In this case, the sale is anticipated to net the
24
     Estate of between approximately $72,500.00 (depending on the amount approved by the
25
     Secured Creditor) that will be paid as part of the short sale.
26

27    ─────────────────────

28    [3]    Although Local Bankruptcy Rule 6004-1(c)(2)(C) does not require that a memorandum of points and
     authorities be filed in support of the Motion, the Trustee is nevertheless submitting one.

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 210
Riverside, CA 92507

13

23064-000 Short Sale Motion (Palm Desert Property)

1    The Trustee believes that, from the net sale proceeds, when added to other funds

2  in the Estate, she will be able to make a meaningful distribution to unsecured claims.

3  The Trustee believes sale is in the best interest of the Estate as it will create "equity"

4  where there was none.

5  **B.    The Proposed Sale Should be Allowed Free and Clear of Liens.**

6    Bankruptcy Code Section 363(f) allows a trustee to sell property of the bankruptcy

7  estate "free and clear of any interest in such property of an entity," if any one of the

8  following five conditions is met:

9        (1)    applicable non-bankruptcy law permits a sale of such property
      free and clear of such interest;
10

11        (2)    such entity consents;
            . . . ; or
12
          (5)    such entity could be compelled, in a legal or equitable
13      proceeding, to accept money satisfaction of such interest.

14  11 U.S.C. § 363(f).

15    Section 363(f) is written in the disjunctive and thus only one of the enumerated

16  conditions needs to be satisfied for Court approval to be appropriate.   The Secured

17  Creditor will be paid an amount as agreed to by the Secured Creditor and will consent to

18  the sale, and therefore the Trustee will have satisfied § 363(f)(2).

19    With respect to liens that are junior to the Secured Creditor, to the extent they are

20  not satisfied or released prior to closing, the Trustee proposes to sell under § 363(f)(1)

21  and/or § 363(f)(5) as in California, judicial and non-judicial foreclosures can be used to

22  wipe out such junior liens. *See* Bankruptcy Code § 363(f)(1) (stating that a trustee may

23  sell property of the estate free and clear of liens or other interest when applicable

24  nonbankruptcy law permits such a sale free and clear of liens and interests).   The BAP in

25  *Clear Chanel* stated that an example of a section 363(f)(1) sale is the Uniform

26  Commercial Code section 9-320, which permits a sale free and clear of a consensual

27  security interest if the collateral is sold in the ordinary course of business of the debtor.

28  *See Clear Channel Outdoor, Inc. v. Knupfer* (*In re* PW, LLC), 391 B.R. 25, 41 (9th Cir

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

14

23064-000 Short Sale Motion (Palm Desert Property)

B.A.P. 2008), fn. 21; California Civil Code §2924 *et seq*.  Similarly, Bankruptcy courts have expressed that the availability of foreclosure sales outside of bankruptcy represent a "legal or equitable proceeding", thus allowing a bankruptcy trustee to sell the subject property free and clear of liens under § 363(f)(5).  See e.g*., In re Jolan, Inc.*, 403 B.R. 866, 869-870 (Bankr. W.D. Wash,. 2009); *In re Boston Generating, LLC*, 440 B.R. 302, 333 (Bankr. S.D.N.Y. 2010); *In re Aerisa, Inc.*, 2:09-bk-18456-RJH (Bankr. D. Ariz).

In this case, if the Secured Creditor, foreclosed on its interest outside of bankruptcy, every junior interest in the Property, would be extinguished notwithstanding the fact that the foreclosure sale price may or may not pay such extinguished interests in full, or at all.  In such a foreclosure, liens junior to the Secured Creditor would be forced to accept the distribution allowed by the resulting foreclosure sale price, in full satisfaction of its released lien.[4]  This hypothetical foreclosure sale meets each element of section 363(f)(5) to authorize the sale of the Property free and clear of all interests, as it actively demonstrates that a junior interest "could be compelled, in a legal or equitable proceeding [i.e. the foreclosure sale], to accept money satisfaction [i.e. the distribution allowed pursuant to the foreclosure sale price]  of such  interest." 11 U.S.C. § 363(f)(5). Accordingly, the Court has the authority to approve the sale of the Property free and clear of the liens that are junior to the Secured Creditor's lien under §§ 363(f)(1) and/or 363(f)(5).

**C.    Request for Payment of Real Estate Commission to the Broker Team.**

Bankruptcy Code § 328 allows employment of a professional person under § 327 "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  The Trustee seeks authorization to pay a real estate broker commission not exceed a total of 5% of the final purchase price to be split as follows: (i) Broker Team $48,333.33, or an amount as approved by the Secured Creditor; and (ii) Selling Broker,

---

[4] In the hypothetical foreclosure setting for a money satisfaction of the Secured Creditor's interest, the holders of the Junior Liens may still have general unsecured claims against the Estate for the amounts that are not paid.

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

23064-000 Short Sale Motion (Palm Desert Property)

1  $24,166.67 or an amount as approved by the Secured Creditor, or such lesser amounts

2  as agreed to by the Broker Team and the Selling Broker.

3  **D.**    **The Costs for Preservation and Disposition of the Secured Creditor's**

4  **Collateral May Be Recovered From the Sale Proceeds.**

5  Bankruptcy Code § 506(c) provides that:

7  > [t]he trustee may recover from property securing and allowed
> secured claim the reasonable, necessary costs and expenses
> of preserving, or disposing of, such property to the extent of
8  > any benefit to the holder of such claim.

10  Pursuant to Bankruptcy Code § 506(c) the Trustee requests authorization to

11  surcharge the collateral of the Secured Creditor for costs incurred by the Listing Agent

12  ($22,919.78, see **Exhibit 6**) in the maintenance of its collateral (the Property) as well as

13  with the preservation and disposition of such collateral.

14  The Trustee believes that that the diligent efforts of the Listing Agent to preserve

15  and dispose of the Secured Creditor's collateral clearly has benefited the collateral.

16  Moreover, the Trustee believes all of the efforts of the Listing Agent were directly related

17  to the preservation and eventual disposition of the Secured Creditor's collateral.  Thus,

18  surcharging the Secured Creditor's collateral under Bankruptcy Code § 506(c) is

19  appropriate.

20  The Bankruptcy Code requires only that expenditures be "reasonable, necessary

21  costs and expenses of preserving, or disposing of such property" not that the claimant

22  have the best interests of the secured creditors in mind.  *See*, *In re Parque Forestal, Inc.*,

23  949 F.2d 504 (1st Cir. 1991); *In re McKeesport Steel Castings Co.*, 799F.2d 91 (3d Cir.

24  1986); *In re Delta Towers, Ltd.*, 924 F.2d 74 (5th Cir. 1991); *In re Palomar Truck Corp.*,

25  951 F.2d 229 (9th Cir. 1991), *cert. denied*, *General Elec. Captial Corp v. North County*

26  *Jeep & Renault*, 506 U.S. 821, 121 L.Ed. 2d 37, 113 S.Ct. 17 (1992).

27  In this Circuit, the party seeking surcharge generally must show that the incurred

28  expenses were: (1) reasonable; (2) necessary; and (3) beneficial to secured creditor.

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 210
Riverside, CA 92507

16

23064-000 Short Sale Motion (Palm Desert Property)

1    *Snohomish County v. Seattle-First Nat'l Bank (In re Glasply Marine Industries, Inc.)*, 971

2    F.2d 391 (9th Cir. 1992); *In re Cascade Hydraulics & Utility Srv., Inc.*, 815 F.2d 546 (9th

3    Cir. 1987).  In this case, the expenses incurred by the Listing Agent avoided charges by

4    the homeowners' association for violations for not maintaining landscaping or other

5    outdoor areas, including the pool.

6        In this case, the Secured Creditor would have to enforce its lien against the

7    Property and may not be able to realize the value from its collateral that the Trustee has

8    achieved with the assistance of the Listing Agent. Surcharge pursuant to § 506(c) is

9    appropriate where the preservation actions relieve a secured creditor of expenses such

10    as enforcing its rights and conducting a foreclosure sale. *See*, *In re H.P. Tool Mfg. Corp.*,

11    12 B.R. 600 (Bankr. E.D. Pa. 1981). Also, the amount of surcharge is not limited only to

12    the savings of such foreclosure costs. *See*, *In re Anderson*, 66 B.R. 97 (B.A.P. 9th Cir.

13    1986).

14        Thus, surcharging Secured Creditor's collateral under Bankruptcy Code § 506(c) is

15    appropriate.

16    **E.**    **The Court Has the Authority to Waive the Fourteen-Day Stay of Sale.**

17        Federal Rule of Bankruptcy Procedure 6004(h) provides that "[a]n order

18    authorizing the use, sale or lease of property other than cash collateral is stayed until the

19    expiration of 14 days after entry of the order, unless the Court orders otherwise." Fed.

20    Rule Bankr. P. 6004(h).

21        The Trustee needs to close the sale of the Property as soon as practicable after

22    entry of an order approving the sale because the Secured Creditor's approved short pay

23    expires December 31, 2019 and because it has relief from stay to foreclose.  Accordingly,

24    the Trustee requests that the Court, in the discretion provided it under Rule 6004(h),

25    waive the fourteen day stay requirement.

26

27

28

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 210
Riverside, CA 92507

17

23064-000 Short Sale Motion (Palm Desert Property)

## IV.  **CONCLUSION**

Based on the reasons set forth above, the Trustee respectfully request submits that good cause exists for granting the Sale Motion and requests that the Court enter an order as follows:

1. Authorizing the Trustee to short sell the Property on an as-is, where-is basis, without any warranties or representations, to a buyer approved by the Secured Creditor ("Approved Buyer"), in an amount approved by the Secured Creditor, under the terms and conditions set forth above and as approved by the Secured Creditor, including (a) authorizing the Trustee to comply with any written short sale approval letter from the Secured Creditor, (b) authorizing payment of outstanding and pro-rata current real property taxes and HOA assessments at close of escrow, (c) authorizing payment of customary and normal closing costs at close of escrow, including a real estate commission of no more than 5%, and pursuant to a Bankruptcy Code § 506(c) surcharge against the Secured Creditors' collateral, reimbursement of expenses incurred by the Listing Agent not to exceed $22,919.78, as approved by the Secured Creditor and/or parties, (d) upon close of escrow, the lien of the Secured Creditor shown on the Title Report is released or paid in an amount as agreed to by the Secured Creditor and all of its claims against the Property and the Estate with respect to the Property (including any deficiency claims resulting from the Trustee's sale of the Property), will be waived prior to closing or at the time of closing; (e) approving the lien under the De Castro Judgment to be recovered for the benefit of the Estate if there are any funds beyond Secured Creditor's approved short pay, (f) to the extent they are not satisfied or released prior to closing, approving the sale of the Property free and clear of any and all junior liens pursuant to Bankruptcy Code §§ 363(f)(1) and 363(f)(5), and (g) approve the payment to the Estate through the short sale of approximately $72,500.00.

2. Authorizing the Trustee to sign any and all documents convenient and necessary to effectuate the sale.

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

18

23064-000 Short Sale Motion (Palm Desert Property)

3.      Determining that the Buyer is in good faith pursuant to Bankruptcy Code Section 363(m).

4.      Waiving the fourteen day stay of the order approving the sale of the Property under Federal Rules of Bankruptcy Procedure 6004(h).

5.      For such other and further relief as the Court deems just and proper under the circumstances of this case.

Dated:  December 9, 2019

/s/ Lynda T. Bui

Lynda T. Bui, Chapter 7 Trustee
for the bankruptcy estate of Russel Dennis Hiles, III
Case No. 6:16-bk-16877-WJ

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 210
Riverside, CA 92507

19

23064-000 Short Sale Motion (Palm Desert Property)

# DECLARATION

1

## **DECLARATION OF LYNDA T. BUI**

2    I, Lynda T. Bui, declare and state as follows:

3    1.    I am the duly appointed, qualified and acting Chapter 7 trustee for the

4    bankruptcy estate of Russel Dennis Hiles, III, Case No. 6:16-bk-16877-WJ ("Debtor").  I

5    have personal knowledge of the facts set forth herein, and if called and sworn as a

6    witness, I could and would competently testify thereto, except where matters are stated

7    on information and belief, in which case I am informed and believe that the facts so

8    stated are true and correct.

9    2.    I am familiar with the Debtor's bankruptcy case and make this Declaration

10   in support of my "Motion for Order: (1) Authorizing the Short Sale of Real Property of the

11   Estate Free and Clear of Liens Pursuant to Bankruptcy Code §§ 363(b) and 363(f); (2)

12   Approving Payment of Real Estate Commission and Other Costs; and (3) Granting

13   Related Relief Including Approval of a Bankruptcy Code § 506(c) Surcharge" ("Sale

14   Motion").  All capitalized terms not otherwise defined herein shall have the meaning set

15   forth in the Sale Motion.

16   3.    I have read and I am aware of the contents of the Sale Motion and the

17   accompanying Memorandum of Points and Authorities.  The facts stated in the Sale

18   Motion and the Memorandum of Points and Authorities are true to the best of my

19   knowledge.

20   4.    Attached here as **Exhibit 1** are true and correct copies of the Debtor's

21   Schedules A/B, C and D.

22   5.    Attached here as **Exhibit 2** is a true and correct copy of the Title Report for

23   the Property dated as of November 18, 2019. The Title Report shows that the Property

24   was transferred to Debtor's non-filing spouse, Melanie Nell Roe in May 2015, but was

25   transferred back into the Debtor's name in July 2016, and currently is vested solely in the

26   Debtor's name.  I am advised that Ms. Roe has no objection to the Trustee's sale of the

27   Property.

28

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 210
Riverside, CA 92507

20

23064-000 Short Sale Motion (Palm Desert Property)

1    6.    On August 22, 2017, the Secured Creditor filed a Motion for Relief From

2    Stay (Real Property) ("Stay Motion") seeking relief from the automatic stay to proceed

3    with it state law remedies to foreclose.  The Stay Motion indicated that in August 2017,

4    the amount owed on its lien was $1,447,030.82 and that the since the Petition Date, the

5    Debtor had not made any payments to Secured Creditor, causing the loan default to

6    substantially increase.  Attached here as **Exhibit 3** is a payoff quote I received from the

7    Secured Creditor which indicates that the amount owed as of December 31, 2018 was

8    $1,527,078.67 and that additional interest after December 31, 2018 would accrue at

9    $186.3321 per day.  A continued hearing on the Stay Motion scheduled for March 4,

10   2019 was vacated because the Secured Creditor and I entered into a stipulation (docket

11   397) regarding terms related to terminating the stay and foreclosure. Under the

12   stipulation, the Secured Creditor has agreed it will not record a notice of default until 120

13   days after entry of the Court order approving the stipulation, and any short sale of the

14   Property must have approval of the Secured Creditor.   The order approving this

15   stipulation was entered on February 25, 2019 (docket 399).

16   7.    During this case, I commenced an avoidance action[5] against De Castro and

17   obtained the De Castro Judgment deeming that the lien in favor of De Castro was a

18   preferential transfer under 11 U.S.C. § 547 and void and recovered for the benefit of the

19   Estate under 11 U.S.C. § 550 and preserved for the benefit of the Estate under 11 U.S.C.

20   § 551.   Attached here as **Exhibit 4** is a   true and correct copy of the De Castro

21   Judgment.

22   8.    Claim 5 filed by FTB on January 23, 2018 asserts a secured claim of

23   $1,378,902.51 and a priority unsecured claim of $764.00, for a total claim of

24   $1,379,666.51. I propose to sell the Property free and clear of the FTB lien under §§

25   363(f)(1) and/or 363(f)(5) as in California, judicial and non-judicial foreclosures can be

26   used to wipe out such junior liens.

---

[5] The Avoidance Action was commenced on July 13, 2018, styled *Lynda T. Bui, Chapter 7 Trustee v. De Castro, West, Chodorow, Mendler, Glickfeld & Nass, Inc., California professional corporation*, Adversary Case No. 6:18-ap-01154-WJ.

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

21

23064-000 Short Sale Motion (Palm Desert Property)

9. The Title Report reflects that Farmers Insurance Exchange recorded an Abstract of Judgment on April 16, 2019, recording number 19-128518, in the amount of $5,922,655.54. This lien is subject to a bona fide dispute. The Abstract of Judgment was recorded after the Petition Date and was not authorized by the Court. Based on this, I assert the lien created by the filing the Abstract of Judgment may avoided and recovered pursuant to 11 U.S.C. §§549 and 550. My understanding is that Farmers Insurance Exchange has agreed and will release the Abstract of Judgment. If no agreement can be reached, I propose to sell the Property free and clear of the lien under §§ 363(f)(1) and/or 363(f)(5) as in California, judicial and non-judicial foreclosures can be used to wipe out such junior liens.

10. The Property is subject to the Covenants, Conditions and Restrictions of the HOA. Attached here as **Exhibit 5** is a true and correct copy of correspondence dated December 3, 2019 that was received from counsel for the HOA. I am advised by the HOA that no quarterly HOA assessments have been paid since the Conversion Date, and that the total post-conversion amount due the HOA as of December 30, 2019 is $30,617.47. This amounts includes quarterly assessments of $22,980.00, late charges of $2,298.00, interest of $3,370.42, and attorneys' fees and costs of $1,969.05. Through the proposed short sale of the Property, defaulted and current pro-rata HOA assessments will be paid.

11. Pursuant to Court order entered on March 2, 2018 (docket 316), I was authorized to employ my Listing Agent to assist me in marketing the Property for sale. At that time, the Property was listed for sale at $2,650,000.00. The Property has been on the market for over eighteen months and during that time, there has been some interest but only two potential buyers. One potential buyer did not accept the Trustee's counter-offer but rather came back with a lower price and wanted certain bankruptcy terms waived, which the Trustee could not approve if the Trustee proceeded with a traditional sale. The second potential buyer withdrew its offer due to excessive repairs the buyer required at the Property.

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

22

23064-000 Short Sale Motion (Palm Desert Property)

12.    Based on the substantially increasing lien of the Secured Creditor and given the marketing efforts for the Property, there does not appear to be equity in the Property for the benefit of the Estate.  As such, on March 6, 2019, I filed an application (docket 403) for authority to employ the my Broker Team to assist me in the marketing and negotiating of a short sale of the Estate's interest in Property. Pursuant to Court order entered on April 2, 2019 (docket 408), I was authorized to employ the Broker Team.  The Property was listed for sale at $1,975,000.00.  The current Buyer is the fourth buyer as previous ones either cancelled or were not approved by the Secured Creditor.

13.    During this case, my Listing Agent incurred expenses of $22,919.78 to preserve, maintain and repair the Property to increase its appeal to potential buyers so that it could be marketed for sale and to avoid homeowners' association charges for violations for not maintaining landscaping or other outdoor areas, including the pool, summarized as follows:

| Expense | Amount |
|---------|--------|
| Coachella Valley Water District | $3,300.26 |
| Southern California Edison | $11,154.52 |
| Pool Repairs | $3,280.00 |
| Miguel Gomez Gardening, Inc. | $5,185.00 |
| Total | $22,919.78 |

Attached here as **Exhibit 6**  are true and correct copies of the expense receipts received from my Listing Agent for the pool repairs and the gardening.  Summaries of the receipts for Coachella Valley Water District and Southern California Edison are also included with **Exhibit 6**.  The detailed receipts for Coachella Valley Water District and Southern California Edison exceed 100 pages and have not been included with **Exhibit 6** but will be provided on request.

14.    Through my Sale Motion, I seek Court approval of a Bankruptcy Code § 506(c) surcharge in the amount of $22,919.78 against the Secured Creditor's lien for the costs the Listing Agent has incurred to maintain the Secured Creditor's collateral (the

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

23

23064-000 Short Sale Motion (Palm Desert Property)

Property), as well as the preservation and disposition of the Property.  To the extent that the Secured Creditor does not approve the 506(c) surcharge in the amount of $22,919.78, I seek approval to reimburse the Listing Agent for the expenses through contributions in amounts to be determined or agreed to by the parties (i.e, carve-outs by the Estate, the Broker Team, the Buyer's broker, and/or the HOA), without further order of the Court.

15.    Attached here as **Exhibit 7** is a true and correct copy of the offer for the Property received from the Buyer.  The Buyer's offer is the result of negotiations between the Trustee and the Buyer for the highest and best offer.

16.    I have communicated with my accountant and believe there will be no tax liability from the sale because (i) estimated tax basis for the Property exceeds the sale price, and (ii) given that the Property had been the Debtor's residence, the Estate may be entitled to capital gains exclusions.

17.    I believe this short sale is in the best interest of the Estate as it will create "equity" where there was none.  In addition, I currently have cash on hand approximately $1,007,084.62 from other assets.  Accordingly, I expect to distribute a meaningful distribution to creditors in this case.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed on December 9, 2019, at Irvine, California.

/s/ Lynda T. Bui

Lynda T. Bui

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

24

23064-000 Short Sale Motion (Palm Desert Property)

# DECLARATION

### DECLARATION OF PATRICK BUTLER

I, Patrick Butler, declare and state as follows:

1.      The matters stated herein are true and correct and within my personal knowledge. If called as a witness, I could and would competently testify to the matters.  I am a real estate broker, duly licensed in the State of Florida and associated with BK Global Real Estate Services ("Firm"), an entity duly licensed as a real estate brokerage firm in Florida, with an office located at 1095 Broken Sound Parkway, N.W., Suite 100, Boca Raton, FL 33487; telephone 855-658-1254.

2.      I am the Firm's broker-in-charge and am authorized by the Firm to and make this declaration in support of the "Chapter 7 Trustee's Motion for Order: (1) Authorizing the Short Sale of Real Property of the Estate Free and Clear of Liens Pursuant to Bankruptcy Code §§ 363(b) and 363(f); (2) Approving Payment of Real Estate Commission and Other Costs; and (3) Granting Related Relief Including Approval of Bankruptcy Code § 506(c) Surcharge" ("Sale Motion") filed by Lynda T. Bui, the Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Russel Dennis Hiles ("Debtor").  All capitalized terms not otherwise defined herein shall have the meaning set forth in the Sale Motion.

3.      I have read the Sale Motion and am familiar with the real property located at 155 Metate Place, Palm Desert, CA 92260 ("Property").

4.      As background, I would like to explain to the Court my understanding of the basic procedures that we go through to obtain the lender's short sale approval for any real property.  As a caveat, all lenders have their own procedures in addition to the basic requirements.  With respect to the basic requirement true for all short sales, we start with obtaining the listing from the bankruptcy trustee.  After a physical inspection of the property, we take pictures and put the property on the market.  To the extent that there are any showings requested, we accommodate that as well.  We coordinate with the debtor or the occupant of the property.  When we receive any offer, we send out a request for highest and best offer along with all the bankruptcy terms before submitting

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

25

23064-000 Short Sale Motion (Palm Desert Property)

the highest and best to the bankruptcy trustee for review and execution.  Once we have an accepted offer, we present that offer with a package of all required documents (which are lender specific).   The package is often voluminous and lenders can change requirements midstream and we would need to submit completed documents on their forms.  Routinely, if there is anything missing or not properly completed, the lender will not review the file or consider the short sale.  Assuming all documents are completed and are properly submitted, the lender usually obtains an independent appraisal of the property.  Depending on the lender, at this stage, the file is assigned a negotiator.

5.      The package for a short sale for any lender always includes a proposed preliminary HUD-1 which details what funds will come in for the sale and the costs to be paid as well as the payoff to the lender and the payment to the Estate.  The HUD-1 is the basis for which every real estate sale transaction in the United States is founded on. There is not a transaction in any 50 states that is completed without a HUD-1. The buyer, seller and lender review and approve the HUD-1 before funds are dispersed through escrow in the state of California. The HUD-1 is signed by all parties in agreement to the payoff of each line item in the sale. The lienholder acknowledges that their final approval of closing a property would be the approval of said HUD-1.  If for any reason the lender does not approve a line item, it would not sign the HUD-1, and escrow could not disburse funds or close the sale.

6.      Once the package is complete, the negotiator then reviews the entire package, including the type and qualification of the proposed buyer and the proposed HUD-1 and all the itemized proposed payments.  If the negotiator does not approve a certain cost or payment, he or she will require that the items be deleted or otherwise modified.  Using the proposed HUD-1, the negotiator will cause the written short sale approval letter to be generated and sent to the bankruptcy trustee and/or the borrower(s). The short approval letter usually only provides for 30 days to close escrow.  An extension is often difficult to obtain.  In addition, not closing escrow within the 30 days can substantially delay closing because some lenders re-start the process, others require

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

26

23064-000 Short Sale Motion (Palm Desert Property)

1 new appraisals, and yet others will proceed with foreclosure.  It is not uncommon to see

2 the lender negotiate the short sale at the same time it proceeds with the foreclosure

3 process such that upon expiration of the approval, the subject property forecloses.  For

4 the above reasons and based on my years of experience, it is most beneficial to obtain

5 the Court order approving the short sale such that escrow can close shortly after the

6 lender approves the short sale.

7        I declare under penalty of perjury under the laws of the United States of America

8 that the foregoing is true and correct.

9        Executed on December 9, 2019, at Boca Raton, Florida.

Patrick Butler

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 210
Riverside, CA 92507

27

23064-000 Short Sale Motion (Palm Desert Property)

# Exhibit 1

# Schedules A/B, C and D

**Fill in this information to identify your case and this filing:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Russel Dennis Hiles, III** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | 6:16-bk-16877-WJ | | |

☐ Check if this is an
amended filing

## Official Form 106A/B
# Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:  Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1.  **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes.  Where is the property?

**1.1**

**66876 Gist Road**
Street address, if available, or other description

**Bend**          **OR**    **97703-0000**
City                State      ZIP Code

**Deschutes**
County

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
■ Other    **40 acre ranch**

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**
$12,000,000.00

**Current value of the portion you own?**
$12,000,000.00

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

**Fee simple**

☐ **Check if this is community property**
(see instructions)

## Exhibit 1

Case 6:16-bk-16877-WJ    Doc 22    Filed 08/15/16    Entered 08/15/16 16:39:59    Desc
Main Document    Page 3 of 15

| Debtor 1 | **Russel Dennis Hiles, III** | | Case number *(if known)* | **6:16-bk-16877-WJ** |
|---|---|---|---|---|

**1.2** If you own or have more than one, list here:

**155 Metate Place**

Street address, if available, or other description

**Palm Desert**  **CA**  **92260-0000**

City    State    ZIP Code

**Riverside**

County

**What is the property?** Check all that apply

- ■ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☐ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other _____

**Who has an interest in the property?** Check one

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**  **$2,750,000.00**

**Current value of the portion you own?**  **$2,750,000.00**

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

☐ **Check if this is community property** (see instructions)

---

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here................................................................=>   **$14,750,000.00**

**Part 2:    Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

**3.1**  Make: **Ford**
Model: **Fusion**
Year: **2013**
Approximate mileage: _____
Other information:

**Who has an interest in the property?** Check one

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

■ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**  **$20,000.00**

**Current value of the portion you own?**  **$20,000.00**

**3.2**  Make: **Mercedes Benz**
Model: **400SL**
Year: **2015**
Approximate mileage: _____
Other information: **Leased vehicle**

**Who has an interest in the property?** Check one

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**  **Unknown**

**Current value of the portion you own?**  **Unknown**

---

**Exhibit 1**

Case 6:16-bk-16877-WJ    Doc 22    Filed 08/15/16    Entered 08/15/16 16:39:52    Desc
Main Document    Page 3 of 55

| Debtor 1 | **Russel Dennis Hiles, III** | | Case number *(if known)* | **6:16-bk-16877-WJ** |

| | | | | |
|---|---|---|---|---|
| 3.3 | Make: **Jeep** | Who has an interest in the property? *Check one* | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* | |
| | Model: **Wrangler** | ■ Debtor 1 only | | |
| | Year: **2001** | ☐ Debtor 2 only | | |
| | Approximate mileage: | ☐ Debtor 1 and Debtor 2 only | **Current value of the entire property?** | **Current value of the portion you own?** |
| | Other information: | ☐ At least one of the debtors and another | | |
| | | ☐ Check if this is community property (see instructions) | **$5,000.00** | **$5,000.00** |

| | | | | |
|---|---|---|---|---|
| 3.4 | Make: **Golf Cart** | Who has an interest in the property? *Check one* | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* | |
| | Model: | ■ Debtor 1 only | | |
| | Year: | ☐ Debtor 2 only | | |
| | Approximate mileage: | ☐ Debtor 1 and Debtor 2 only | **Current value of the entire property?** | **Current value of the portion you own?** |
| | Other information: | ☐ At least one of the debtors and another | | |
| | | ☐ Check if this is community property (see instructions) | **$10,000.00** | **$10,000.00** |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No

☐ Yes

5  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.........................................................................=>        **$35,000.00**

**Part 3:** Describe Your Personal and Household Items

| Do you own or have any legal or equitable interest in any of the following items? | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|
| 6. **Household goods and furnishings** *Examples:* Major appliances, furniture, linens, china, kitchenware | |
| ☐ No | |
| ■ Yes. Describe..... | |
| **OR Ranch: Furniture, antiques, paintings and collectibles.** | **$550,000.00** |
| **CA Home: Furniture and bedroom furnishings; audio-visual system** | **$30,000.00** |
| 7. **Electronics** *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games | |
| ☐ No | |
| ■ Yes. Describe..... | |
| **Smart home system and security system- Oregon Ranch.** | **$150,000.00** |
| 8. **Collectibles of value** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles | |
| ☐ No | |
| ■ Yes. Describe..... | |

# Exhibit 1

Case 6:16-bk-16877-WJ    Doc 22    Filed 08/15/16    Entered 08/15/16 16:39:59    Desc
Main Document    Page 6 of 55

Debtor 1    **Russel Dennis Hiles, III**    Case number *(if known)*    **6:16-bk-16877-WJ**

| CA Home: Books | $30,000.00 |
|---|---|

9.  **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools;
   musical instruments
   ☐ No
   ■ Yes.  Describe.....

| Camera equipment | $10,000.00 |
|---|---|

| Firearms | $5,000.00 |
|---|---|

10.  **Firearms**
   *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
   ■ No
   ☐ Yes.  Describe.....

11.  **Clothes**
   *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
   ☐ No
   ■ Yes.  Describe.....

| OR Ranch:  Clothing | $5,000.00 |
|---|---|

| CA Home:  Clothing | $5,000.00 |
|---|---|

12.  **Jewelry**
   *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
   ☐ No
   ■ Yes.  Describe.....

| Watches and jewelry. | $30,000.00 |
|---|---|

13.  **Non-farm animals**
   *Examples:* Dogs, cats, birds, horses
   ■ No
   ☐ Yes.  Describe.....

14.  **Any other personal and household items you did not already list, including any health aids you did not list**
   ■ No
   ☐ Yes.  Give specific information.....

15.  Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached
   for Part 3. Write that number here .......................................................................   | $815,000.00 |
   |---|

**Part 4:**  **Describe Your Financial Assets**

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

16.  **Cash**
   *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
   ■ No
   ☐ Yes.......................................................................................................

# Exhibit 1

Case 6:16-bk-16877-WJ    Doc 22    Filed 08/15/16    Entered 08/15/16 18:39:52    Desc
Main Document    Page 37 of 125

| Debtor 1 | **Russel Dennis Hiles, III** | Case number *(if known)* | **6:16-bk-16877-WJ** |
|---|---|---|---|

**17. Deposits of money**

*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
■ Yes.......................

Institution name:

| | | | |
|---|---|---|---|
| 17.1. | **Checking** | **Chase** | **$0.56** |
| 17.2. | **Checking** | **Debtor's wife's Bank of America account # 6651.** | **$8,507.82** |

**18. Bonds, mutual funds, or publicly traded stocks**

*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

■ No
☐ Yes.................

Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☐ No
■ Yes. Give specific information about them...................

Name of entity:                                                    % of ownership:

**Hiles & Associates, LLP
d/b/a Hiles Borgeson, LLP**

**(Not operating)**                                    **100**    %                **Unknown**

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

■ No
☐ Yes. Give specific information about them

Issuer name:

**21. Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

■ No
☐ Yes. List each account separately.

Type of account:            Institution name:

**22. Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☐ No
■ Yes. .....................

Institution name or individual:

| | | |
|---|---|---|
| **Security Deposit: Electric** | **Southern California Edison** | **$3,400.00** |
| **Electric** | **Prepayment to SoCal Edison** | **$3,500.00** |

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No
☐ Yes.............        Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**

26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☐ No
■ Yes.............        Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

# Exhibit 1

| Debtor 1 | **Russel Dennis Hiles, III** | Case number *(if known)* | **6:16-bk-16877-WJ** |

| | |
|---|---|
| **529 Accounts for:**<br>**Debtor's stepdaugheter ($11K)**<br>**Debtor's grandaughter ($34K)**<br>**Debtor's grandson ($15K)**<br>**\*Not property of the estate pursuant to 11 U.S.C. Section 541(b).** | **$0.00** |

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

   ■ No

   ☐ Yes. Give specific information about them...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
   *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

   ☐ No

   ■ Yes. Give specific information about them...

| | |
|---|---|
| **Copyright/license rights in Debtor's book entitled "We are One. A photographic celebration of diversity in America".** | **$0.00** |

27. **Licenses, franchises, and other general intangibles**
   *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

   ☐ No

   ■ Yes. Give specific information about them...

| | |
|---|---|
| **Debtor is a licensed attorney with the California State Bar.** | **$0.00** |

| **Money or property owed to you?** | **Current value of the portion you own?**<br>Do not deduct secured claims or exemptions. |
|---|---|

28. **Tax refunds owed to you**

   ■ No

   ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

29. **Family support**
   *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

   ■ No

   ☐ Yes. Give specific information......

30. **Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else

   ■ No

   ☐ Yes. Give specific information..

31. **Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

   ☐ No

   ■ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| **Homeowners' and property insurance for Oregon and Palm Desert properties. No cash value.**<br>**Burial insurance policy. No cash value.**<br>**Vehicle insurance. No cash value.** | **Debtor and wife.** | **$0.00** |

# Exhibit 1

Case 6:16-bk-16877-WJ    Doc 22    Filed 08/15/16    Entered 08/15/16 18:39:52    Desc
Main Document    Page 12 of 35

Debtor 1    **Russel Dennis Hiles, III**    Case number *(if known)*    **6:16-bk-16877-WJ**

---

32.  **Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☑ No
☐ Yes.  Give specific information..

---

33.  **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue
☐ No
☑ Yes.  Describe each claim.........

| | |
|---|---|
| Claims for indemnity and contribution against Christopher Borgeson. | Unknown |
| Claims against Farmers Insurance Exchange, Norton Rose Fulbright, LLP, Peter Mason, Stoel Rives, LLP, Amy Edwards for breaches of contract re arbitration confidentiality, public disclosure of private facts, tortious intereference with contract, slander, and slander of title. | Unknown |

---

34.  **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
☑ No
☐ Yes.  Describe each claim.........

35.  **Any financial assets you did not already list**
☑ No
☐ Yes.  Give specific information..

36.  Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here.............................................................................................................

**$15,408.38**

---

**Part 5:**    Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37.  **Do you own or have any legal or equitable interest in any business-related property?**
☑ No. Go to Part 6.
☐ Yes.  Go to line 38.

---

**Part 6:**    Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

46.  **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
☑ No. Go to Part 7.
☐ Yes.  Go to line 47.

---

**Part 7:**    Describe All Property You Own or Have an Interest in That You Did Not List Above

53.  **Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership
☐ No
☑ Yes. Give specific information.........

| | |
|---|---|
| Big Horn golf club membership (Not a readily saleable asset.  Sale requires curing delinquency under memebership and other contractual contingencies) | $225,000.00 |

---

54.  Add the dollar value of all of your entries from Part 7. Write that number here ....................................

**$225,000.00**

---

Official Form 106A/B    Schedule A/B: Property    page 7

# Exhibit 1

Case 6:16-bk-16877-WJ    Doc 22    Filed 08/15/16    Entered 08/15/16 18:39:52    Desc
Main Document    Page 13 of 35

Debtor 1    **Russel Dennis Hiles, III**    Case number *(if known)*    **6:16-bk-16877-WJ**

| Part 8: | List the Totals of Each Part of this Form |
|---|---|

| | | | |
|---|---|---|---|
| 55. | **Part 1: Total real estate, line 2** ................................................................................................ | | $14,750,000.00 |
| 56. | **Part 2: Total vehicles, line 5** | $35,000.00 | |
| 57. | **Part 3: Total personal and household items, line 15** | $815,000.00 | |
| 58. | **Part 4: Total financial assets, line 36** | $15,408.38 | |
| 59. | **Part 5: Total business-related property, line 45** | $0.00 | |
| 60. | **Part 6: Total farm- and fishing-related property, line 52** | $0.00 | |
| 61. | **Part 7: Total other property not listed, line 54** + | $225,000.00 | |
| 62. | **Total personal property.** Add lines 56 through 61... | $1,090,408.38 | Copy personal property total → $1,090,408.38 |
| 63. | **Total of all property on Schedule A/B.** Add line 55 + line 62 | | $15,840,408.38 |

# Exhibit 1

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Russel Dennis Hiles, III** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | **6:16-bk-16877-WJ** | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt                    4/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

**Part 1:    Identify the Property You Claim as Exempt**

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ■ You are claiming state and federal nonbankruptcy exemptions.   11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.   11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | | Specific laws that allow exemption |
|---|---|---|---|---|
| **155 Metate Place Palm Desert, CA 92260  Riverside County**<br>Line from *Schedule A/B*: **1.2** | $2,750,000.00 | ■ | $175,000.00 | C.C.P. § 704.730 |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **2013 Ford Fusion**<br>Line from *Schedule A/B*: **3.1** | $20,000.00 | ■ | $3,050.00 | C.C.P. § 704.010 |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **CA Home: Furniture and bedroom furnishings; audio-visual system**<br>Line from *Schedule A/B*: **6.2** | $30,000.00 | ■ | $30,000.00 | C.C.P. § 704.020 |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Camera equipment**<br>Line from *Schedule A/B*: **9.1** | $10,000.00 | ■ | $8,000.00 | C.C.P. § 704.060 |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Watches and jewelry.**<br>Line from *Schedule A/B*: **12.1** | $30,000.00 | ■ | $8,000.00 | C.C.P. § 704.040 |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

# Exhibit 1

Case 6:16-bk-16877-WJ    Doc 22    Filed 08/15/16    Entered 08/15/16 18:39:54    Desc
Main Document    Page 15 of 35

| Debtor 1 | **Russel Dennis Hiles, III** | | | Case number (if known) | **6:16-bk-16877-WJ** |
|---|---|---|---|---|---|

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Checking: Debtor's wife's Bank of America account # 6651.**<br>Line from *Schedule A/B*: **17.2** | $8,507.82 | ☑           $3,200.00<br><br>☐   100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.080** |

3. **Are you claiming a homestead exemption of more than $160,375?**
   (Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☐   No

   ☑   Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

        ☑   No

        ☐   Yes

# Exhibit 1

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Russel Dennis Hiles, III** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | **6:16-bk-16877-WJ** |
| (if known) | |

☐ Check if this is an
amended filing

## Official Form 106D

## Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the<br>value of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim | Column C<br>Unsecured<br>portion<br>If any |
|---|---|---|---|---|
| **2.1**   **Bank Of America**<br>Creditor's Name | Describe the property that secures the claim:<br>**155 Metate Place Palm Desert, CA 92260  Riverside County** | $1,395,102.00 | $2,750,000.00 | $0.00 |

Nc4-105-03-14
Po Box 26012
Greensboro, NC 27410
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

| Date debt was incurred   5/03/16 | **Opened 03/13  Last Active** | Last 4 digits of account number   **2540** |
|---|---|---|

| | | | | |
|---|---|---|---|---|
| **2.2**   **Bank Of America**<br>Creditor's Name | Describe the property that secures the claim:<br>**66876 Gist Road Bend, OR 97703 Deschutes County** | $783,134.00 | $12,000,000.00 | $0.00 |

Nc4-105-03-14
Po Box 26012
Greensboro, NC 27410
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit

## Exhibit 1

Debtor 1    **Russel Dennis Hiles, III**                                    Case number (if know)    **6:16-bk-16877-WJ**
_____
First Name    Middle Name    Last Name

☐ Check if this claim relates to a          ☐ Other (including a right to offset)    _____
   community debt

          **Opened
          09/08  Last
          Active**
Date debt was incurred  **3/30/16**    Last 4 digits of account number    **0817**

---

| 2.3 | **De Castro West, et al.** | Describe the property that secures the claim: | $60,000.00 | $2,750,000.00 | $0.00 |

Creditor's Name

**Attn: Michael Cohen
10960 Wilshire Blvd.,
14th Fl.
Los Angeles, CA
90024-3881**
Number, Street, City, State & Zip Code

Describe the property that secures the claim:

**155 Metate Place Palm Desert, CA
92260  Riverside County**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent

☐ Unliquidated

☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
   community debt

**Nature of lien.** Check all that apply.

■ An agreement you made (such as mortgage or secured
   car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)

☐ Judgment lien from a lawsuit

☐ Other (including a right to offset)    _____

Date debt was incurred  **5/20/2016**    Last 4 digits of account number    _____

---

| 2.4 | **Deschutes County Treasurer** | Describe the property that secures the claim: | $5,000.00 | $12,000,000.00 | $0.00 |

Creditor's Name

**1300 NW Wall St., #204
Bend, OR 97701**
Number, Street, City, State & Zip Code

Describe the property that secures the claim:

**66876 Gist Road Bend, OR 97703
Deschutes County**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent

☐ Unliquidated

☐ Disputed

**Nature of lien.** Check all that apply.

■ An agreement you made (such as mortgage or secured
   car loan)

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
   community debt

☐ Statutory lien (such as tax lien, mechanic's lien)

☐ Judgment lien from a lawsuit

☐ Other (including a right to offset)    _____

Date debt was incurred  **2014 - 2015**    Last 4 digits of account number    **7186**

---

| 2.5 | **Ford Motor Credit** | Describe the property that secures the claim: | $16,911.00 | $20,000.00 | $0.00 |

Creditor's Name

**Po Box 62180
Colorado Springs, CO
80962**
Number, Street, City, State & Zip Code

Describe the property that secures the claim:

**2013 Ford Fusion**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent

☐ Unliquidated

☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only

**Nature of lien.** Check all that apply.

■ An agreement you made (such as mortgage or secured
   car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)

---

Official Form 106D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 2 of 4

Best Case Bankruptcy

# Exhibit 1

| Debtor 1 | **Russel Dennis Hiles, III** | | | Case number *(if know)* | **6:16-bk-16877-WJ** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) _____

**Opened 11/13  Last Active**

Date debt was incurred   **6/24/16**          Last 4 digits of account number   **3833** _____

---

| 2.6 | **Franchise Tax Board** | Describe the property that secures the claim: | **$1,369,572.62** | **$2,750,000.00** | **$74,674.62** |
|---|---|---|---|---|---|

Creditor's Name

**Attn-Bankruptcy
PO Box 2952
Sacramento, CA
95812-2952**

Number, Street, City, State & Zip Code

**Describe the property that secures the claim:**

**155 Metate Place Palm Desert, CA 92260  Riverside County**

**As of the date you file, the claim is:** Check all that apply.

- ■ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Who owes the debt?** Check one.

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) _____

Date debt was incurred   **2014, 2011**          Last 4 digits of account number   **4427** _____

---

| 2.7 | **Mb Fin Svcs** | Describe the property that secures the claim: | **$27,451.00** | **Unknown** | **Unknown** |
|---|---|---|---|---|---|

Creditor's Name

**36455 Corporate Dr
Farmington Hills, MI
48331**

Number, Street, City, State & Zip Code

**Describe the property that secures the claim:**

**2015 Mercedes Benz 400SL Leased vehicle**

**As of the date you file, the claim is:** Check all that apply.

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Who owes the debt?** Check one.

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) _____

**Opened 3/27/15  Last Active**

Date debt was incurred   **6/20/16**          Last 4 digits of account number   **8001** _____

---

| Add the dollar value of your entries in Column A on this page. Write that number here: | **$3,657,170.62** |
|---|---|
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | **$3,657,170.62** |

**Part 2:    List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

---

# Exhibit 1

Case 6:16-bk-16877-WJ    Doc 22    Filed 08/15/16    Entered 08/15/16 16:39:54    Desc
Main Document    Page 19 of 35

| Debtor 1 | **Russel Dennis Hiles, III** | | | Case number (if know) | **6:16-bk-16877-WJ** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

Name, Number, Street, City, State & Zip Code
**Deschutes County Assessor**
**PO Box 6005**
**Bend, OR 97708**

On which line in Part 1 did you enter the creditor?  **2.4**

Last 4 digits of account number ___

---

Name, Number, Street, City, State & Zip Code
**Franchise Tax Board**
**PO Box 942867**
**Sacramento, CA 94267**

On which line in Part 1 did you enter the creditor?  **2.6**

Last 4 digits of account number  **4427**

---

Name, Number, Street, City, State & Zip Code
**Franchise Tax Board**
**Vehicle Registration Collections**
**PO Box 419001**
**Rancho Cordova, CA 95741-9091**

On which line in Part 1 did you enter the creditor?  **2.6**

Last 4 digits of account number  **2015**

---

Official Form 106D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 4 of 4

# Exhibit 1

# Exhibit 2

# Title Report

**CLTA Preliminary Report Form**                    Order Number:  O-SA-5622938
(Rev. 11/06)                                        Page Number:  1

**Updated**



# First American Title Company

**4 First American Way**
**Santa Ana, CA 92707**
California Department of Insurance License No. 151

Antonia Delgado
A & A Escrow Services, Inc
415 North Crescent Drive, Suite 320
Beverly Hills, CA 90210
Phone: (310)550-6055
Fax:
Customer Reference:                    104577-AA
Order Number:                          O-SA-5622938 (dt)


Title Officer:                         Debbie Tognetti
Phone:                                 (714)250-8579
Fax No.:                               (714)481-2956
E-Mail:                                FAHQ-RA-octitle3@firstam.com
Buyer:                                 Yokang Zhou and Guillermo Fernandez Castaneda
Owner:                                  Russell D. Hiles
Property:                              155 Metate Place
                                       Palm Desert, CA 92260

  Sales Price $1,450,000.00

### PRELIMINARY REPORT

In response to the above referenced application for a policy of title insurance, this company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit A attached. *The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.* Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit A. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

# Exhibit 2
*First American Title*
Page 1 of 15

Order Number:  **O-SA-5622938**
Page Number:  2

Dated as of November 18, 2019 at 7:30 A.M.

The form of Policy of title insurance contemplated by this report is:

ALTA/CLTA Homeowner's (EAGLE) Policy of Title Insurance (2013) and ALTA Ext Loan Policy 1056.06 (06-17-06) if the land described is an improved residential lot or condominium unit on which there is located a one-to-four family residence; or ALTA Standard Owner's Policy 2006 (WRE 06-17-06) and the ALTA Loan Policy 2006 (06-17-06) if the land described is an unimproved residential lot or condominium unit

A specific request should be made if another form or additional coverage is desired.

Title to said estate or interest at the date hereof is vested in:

RUSSEL D. HILES, AN UNMARRIED MAN, SUBJECT TO EXCEPTION NO. 13 AND 16, subject to proceedings pending in the Bankruptcy Court of the CENTRAL District of the U. S. District Court, CALIFORNIA entitled in re: RUSSEL DENNIS HILES, III, debtor, Case No. 6:16-BK-16877-WJ, wherein a petition for relief was filed on August 01, 2016.

The estate or interest in the land hereinafter described or referred to covered by this Report is:

FEE

The Land referred to herein is described as follows:

(See attached Legal Description)

At the date hereof exceptions to coverage in addition to the printed Exceptions and Exclusions in said policy form would be as follows:

1.    General and special taxes and assessments for the fiscal year 2019-2020.
      First Installment:            $15,261.49 , OPEN
      Penalty:                      $0.00
      Second Installment:           $15,261.49 , OPEN
      Penalty:                      $0.00
      Tax Rate Area:                018-197
      A. P. No.:                    7713000156

2.    The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.



# Exhibit 2

*First American Title*
Page 2 of 15

Order Number:  O-SA-5622938
Page Number:  3

3.   Any easements or servitudes appearing in the public records.
     Affects:        Common Area.

4.   The terms and provisions contained in the document entitled "ENCROACHMENT PERMIT"
     recorded June 07, 1990 as INSTRUMENT NO. 90-209269 of Official Records.

5.   Covenants, conditions, restrictions, easements, assessments, liens, charges, terms and provisions in
     the document recorded October 02, 1990 as INSTRUMENT NO. 90-364698 of Official Records, which
     provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or
     deed of trust made in good faith and for value, but deleting any covenant, condition, or restriction
     indicating a preference, limitation or discrimination based on race, color, religion, sex, sexual
     orientation, familial status, disability, handicap, national origin, genetic information, gender, gender
     identity, gender expression, source of income (as defined in California Government Code § 12955(p))
     or ancestry, to the extent such covenants, conditions or restrictions violation 42 U.S.C. § 3604(c) or
     California Government Code § 12955.  Lawful restrictions under state and federal law on the age of
     occupants in senior housing or housing for older persons shall not be construed as restrictions based
     on familial status.

     Document(s) declaring modifications thereof recorded October 01, 1991 as INSTRUMENT NO. 91-
     340403 of Official Records.

     A declaration of annexation recorded August 03, 1993 as INSTRUMENT NO. 93-301648 of Official
     Records, but deleting any covenant, condition, or restriction indicating a preference, limitation or
     discrimination based on race, color, religion, sex, sexual orientation, familial status, disability,
     handicap, national origin, genetic information, gender, gender identity, gender expression, source of
     income (as defined in California Government Code § 12955(p)) or ancestry, to the extent such
     covenants, conditions or restrictions violation 42 U.S.C. § 3604(c) or California Government Code §
     12955.  Lawful restrictions under state and federal law on the age of occupants in senior housing or
     housing for older persons shall not be construed as restrictions based on familial status.

6.   The Terms, Provisions and Easement(s) contained in the document entitled "DECLARATION OF
     RECIPROCAL EASEMENTS AND AGREEMENT" recorded February 22, 1991 as INSTRUMENT NO. 91-
     59893 of Official Records.

7.   An easement for EITHER OR BOTH POLE LINES, CONDUITS OR UNDERGROUND FACILITIES and
     incidental purposes in the document recorded November 05, 1992 as INSTRUMENT NO. 92-
     423599 of Official Records.

8.   Any and all offers of dedications, conditions, restrictions, easements, notes and/or provisions shown
     or disclosed by the filed or recorded map referred to in the legal description including but not limited
     to: PUBLIC UTILITY EASEMENT and incidental purposes affecting said land.

9.   An easement for EITHER OR BOTH POLE LINES, CONDUITS OR UNDERGROUND FACILITIES and
     incidental purposes in the document recorded October 06, 1994 as INSTRUMENT NO. 94-388025 of
     Official Records.

10.  An easement for EITHER OR BOTH POLE LINES, CONDUITS OR UNDERGROUND FACILITIES and
     incidental purposes in the document recorded October 06, 1994 as INSTRUMENT NO. 94-388025 of
     Official Records.

     A PORTION OF SAID EASEMENT WAS QUITCLAIMED BY DOCUMENT RECORDED JULY 5, 1996 AS
     INSTRUMENT NO. 250964 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

## Exhibit 2

Order Number: O-SA-5622938
Page Number: 4

11.    A deed of trust to secure an original indebtedness of $1,500,000.00 recorded April 03, 2013 as
       INSTRUMENT NO. 13-157641 OF OFFICIAL RECORDS.
       Dated:                        March 29, 2013
       Trustor:                      RUSSEL D HILES, AN UNMARRIED MAN
       Trustee:                      RECONTRUST COMPANY, N.A.
       Beneficiary:                  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
       LENDER:                       BANK OF AMERICA, N.A.

       According to the public records, the beneficial interest under the deed of trust has been assigned
       to WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN
       TRUST A by various assignments, the last of which was recorded March 30, 2017 as INSTRUMENT
       NO. 17-128214 of Official Records.

       A document recorded OCTOBER 03, 2019 as INSTRUMENT NO. 19-396444 of Official Records
       provides that CLEAR RECON CORP was substituted as trustee under the deed of trust.

       A notice of default recorded OCTOBER 03, 2019 as INSTRUMENT NO. 19-396445 of Official Records.

12.    The effect of a deed dated May 05, 2015, executed by RUSSEL D. HILES, as Grantor, to MELANIE
       NELL ROE, as Grantee, recorded May 18, 2016, as INSTRUMENT NO. 16-203200 of Official Records.

       The requirement that this office be furnished with the evidence that the deed was an absolute
       conveyance for value, and that there are no other agreements, oral or written, regarding the
       ownership of the land described herein.

       NOTE: Unable to verify if the above referenced "uninsured" deed is a valid transfer.

13.    A deed of trust to secure an original indebtedness of $NONE SHOWN recorded May 20, 2016 as
       INSTRUMENT NO. 16-207845 OF OFFICIAL RECORDS.
       Dated:                        May 05, 2016
       Trustor:                      MELANIE NELL ROE
       Trustee:                      FIDELITY TITLE COMPANY
       Beneficiary:                  DECASTYRO, WEST, CHODOROW, MENDLER, GLICKFELD &
                                     NAS, INC., A CALIFORNIA CORPORATION

14.    A LIEN IN FAVOR OF THE STATE OF CALIFORNIA, EVIDENCED BY A CERTIFICATE ISSUED BY THE
       FRANCHISE TAX BOARD , RECORDED July 11, 2016  AS INSTRUMENT NO. 16-287140 OF OFFICIAL
       RECORDS.

| DEBTOR: | RUSSEL D HILES |
| CERTIFICATE NO.: | 16180761873 |
| AMOUNT: | $1,369,572.62 , AND ANY OTHER AMOUNTS DUE THEREUNDER. |

15.    The effect of a deed dated July 15, 2016, executed by MELANIE NELL ROE, as Grantor, to RUSSELL
       D. HILES, as Grantee, recorded August 04, 2016, as INSTRUMENT NO. 16-331744 of Official
       Records.

       The requirement that this office be furnished with the evidence that the deed was an absolute
       conveyance for value, and that there are no other agreements, oral or written, regarding the
       ownership of the land described herein.

# Exhibit 2

*First American Title*

Order Number: **O-SA-5622938**
Page Number: 5

NOTE: Unable to verify if the above referenced "uninsured" deed is a valid transfer.

16.    Proceedings pending in the Bankruptcy Court of the CENTRAL District of the U.S. District Court, CALIFORNIA, entitled in re: RUSSEL DENNIS HILES, III, debtor, Case No. 6:16-BK-16877-WJ, wherein a petition for relief was filed under Chapter 1  on  August 01, 2016.

17.    A certified copy of a judgment or an abstract thereof, recorded April 16, 2019 as INSTRUMENT NO. 19-128518 of Official Records.

| | |
|---|---|
| Court: | SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES |
| Case No.: | BS168106 |
| Debtor: | RUSSEL D. HILES AND HILES & ASSOCIATES LLP, D/B/A HILES BORGESON |
| Creditor: | FARMERS INSURANCE EXCHANGE |
| Amount: | $5,922,655.54, and any other amounts due thereunder |

18.    Any right, title or interest of the spouse (if any) of MELANIE NELL ROE.

19.    Any easements and/or servitudes affecting easement parcel(s) 2 AND 3 herein described.

   **Prior to the issuance of any policy of title insurance, the Company will require:**

20.    A deed from the spouse (if any) of MELANIE NELL ROE be recorded in the public records, or the joinder of the spouse named herein on any conveyance, encumbrance or lease to be executed by said married person.
The deed should contain the following statement:
"It is the express intent of the grantor, being the spouse of the grantee, to convey all right, title and interest of the grantor, community or otherwise, in and to the herein described property to the grantee as his/her sole and separate property."

# Exhibit 2

*First American Title*
Page 5 of 15

Order Number: **O-SA-5622938**
Page Number:  6

---

### INFORMATIONAL NOTES

---

Note: The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than the certain dollar amount set forth in any applicable arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. If you desire to review the terms of the policy, including any arbitration clause that may be included, contact the office that issued this Commitment or Report to obtain a sample of the policy jacket for the policy that is to be issued in connection with your transaction.

1.  This report is preparatory to the issuance of an ALTA Loan Policy. We have no knowledge of any fact which would preclude the issuance of the policy with CLTA endorsement forms 100 and 116 and if applicable, 115 and 116.2 attached.

    When issued, the CLTA endorsement form 116 or 116.2, if applicable will reference a(n) SINGLE FAMILY RESIDENCE LYING WITHIN A PLANNED UNIT DEVELOPMENT known as 155 METATE PLACE, PALM DESERT, CA.

2.  According to the public records, there has been no conveyance of the land within a period of twenty-four months prior to the date of this report, except as follows:

    None

    NOTE to proposed insured lender only: No Private transfer fee covenant, as defined in Federal Housing Finance Agency Final Rule 12 CFR Part 1228, that was created and first appears in the Public Records on or after February 8, 2011, encumbers the Title except as follows: None

The map attached, if any, may or may not be a survey of the land depicted hereon. First American expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

# Exhibit 2

*First American Title*
Page 6 of 15

Order Number: **O-SA-5622938**
Page Number: 7

**LEGAL DESCRIPTION**

Real property in the City of Palm Desert, County of Riverside, State of California, described as follows:

PARCEL 1:

LOT 10 OF TRACT NO. 27709, IN THE CITY OF PALM DESERT, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 245 PAGE(S) 67 THROUGH 71, INCLUSIVE, OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA;

EXCEPTING THEREFROM ALL OIL, GAS AND MINERAL DEPOSITS TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE AND REMOVE THE SAME AS RESERVED BY THE UNITED STATES OF AMERICA IN THE PATENT RECORDED APRIL 25, 1961 AS INSTRUMENT NO. 35226; OCTOBER 18, 1960 AS INSTRUMENT NO. 89920 AND SEPTEMBER 13, 1961 AS INSTRUMENT NO. 78638 ALL OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

PARCEL 2:

ALL USE RIGHTS AND EASEMENTS SPECIFIED AS EXISTING IN OR GRANTED TO AN OWNER IN THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR BIGHORN, RECORDED OCTOBER 2, 1990 AS INSTRUMENT NO. 364698 AND MODIFIED OCTOBER 1, 1991 AS INSTRUMENT NO. 340403 AND BY DECLARATION OF ANNEXATION RECORDED AUGUST 3, 1993 AS INSTRUMENT NO. 301648 ALL OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, (THE DECLARATION).

PARCEL 3:

NON-EXCLUSIVE EASEMENTS OVER, UNDER AND ACROSS THE PALM VALLEY STORMWATER CHANNEL PROJECT FOR BRIDGES, WATER, SEWER, TELEPHONE, ACCESS, ROAD AND OTHER UTILITY PURPOSES SUBJECT TO THE TERMS AND CONDITIONS OF THE DECLARATION AND THE TERMS AND CONDITIONS CONTAINED IN THAT CERTAIN FINAL ORDER OF CONDEMNATION ACTION, ENTERED IN CASE NO. 498807 (PREVIOUSLY CASE NO. 36116, INDIO SUPERIOR COURT) OF SUPERIOR COURT FOR THE COUNTY OF SAN DIEGO, A CERTIFIED COPY OF WHICH RECORDED FEBRUARY 23, 1990 AS INSTRUMENT NO. 67978 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

APN: 771-300-015-6

# Exhibit 2

*First American Title*
Page 7 of 15

Order Number:  **O-SA-5622938**
Page Number:  8



**Exhibit 2**

*First American Title*

Page 8 of 15

Order Number:  **O-SA-5622938**
Page Number:  9

### *NOTICE*

Section 12413.1 of the California Insurance Code, effective January 1, 1990, requires that any title insurance company, underwritten title company, or controlled escrow company handling funds in an escrow or sub-escrow capacity, wait a specified number of days after depositing funds, before recording any documents in connection with the transaction or disbursing funds. This statute allows for funds deposited by wire transfer to be disbursed the same day as deposit. In the case of cashier's checks or certified checks, funds may be disbursed the next day after deposit. In order to avoid unnecessary delays of three to seven days, or more, please use wire transfer, cashier's checks, or certified checks whenever possible.

# Exhibit 2

*First American Title*

Order Number: **O-SA-5622938**
Page Number: **10**

**EXHIBIT A**
**LIST OF PRINTED EXCEPTIONS AND EXCLUSIONS (BY POLICY TYPE)**

**CLTA STANDARD COVERAGE POLICY – 1990**
EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)   Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)   Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.   Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.   Defects, liens, encumbrances, adverse claims or other matters:

    (a)   whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

    (b)   not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c)   resulting in no loss or damage to the insured claimant;

    (d)   attaching or created subsequent to Date of Policy; or

    (e)   resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.   Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.   Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.   Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.   Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public, records.

2.   Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.   Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.   Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.   (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.   Any lien or right to a lien for services, labor or material not shown by the public records.


**CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)**
EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.   Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
    a.   building;
    b.   zoning;
    c.   land use;



# Exhibit 2

*First American Title*

Order Number: O-SA-5622938
Page Number: 11

    d.  improvements on the Land;
    e.  land division; and
    f.  environmental protection.
    This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3.  The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.

4.  Risks:
    a.  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
    b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
    c.  that result in no loss to You; or
    d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5.  Failure to pay value for Your Title.

6.  Lack of a right:
    a.  to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b.  in streets, alleys, or waterways that touch the Land.
    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7.  The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

8.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

9.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $10,000 |
| Covered Risk 18: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 19: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 21: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $5,000 |

### 2006 ALTA LOAN POLICY (06-17-06)
#### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.    (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

        (i) the occupancy, use, or enjoyment of the Land;
        (ii) the character, dimensions, or location of any improvement erected on the Land;
        (iii) the subdivision of land; or
        (iv) environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.    Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.    Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

# Exhibit 2
*First American Title*
Page 11 of 15

Order Number: **O-SA-5622938**
Page Number: 12

(c) resulting in no loss or damage to the Insured Claimant;

(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or

(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

(a) a fraudulent conveyance or fraudulent transfer, or

(b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

EXCEPTIONS FROM COVERAGE

[Except as provided in Schedule B - Part II,[ t[or T]his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

**[PART I**

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.  Any lien or right to a lien for services, labor or material not shown by the public records.

**PART II**

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss

or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:]

**2006 ALTA OWNER'S POLICY (06-17-06)**

EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

(i) the occupancy, use, or enjoyment of the Land;

(ii) the character, dimensions, or location of any improvement erected on the Land;

(iii) the subdivision of land; or

(iv) environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

(a) created, suffered, assumed, or agreed to by the Insured Claimant;

(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

# Exhibit 2

*First American Title*

Page 12 of 15

(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 or 10); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
(a) a fraudulent conveyance or fraudulent transfer, or
(b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:
[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.

7.  [Variable exceptions such as taxes, easements, CC&R's, etc. shown here.]

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (07-26-10)**
EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

> (i) the occupancy, use, or enjoyment of the Land;
> (ii) the character, dimensions, or location of any improvement erected on the Land;
> (iii) the subdivision of land; or
> (iv) environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk  5, 6, 13(c), 13(d), 14 or 16.
(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters
(a) created, suffered, assumed, or agreed to by the Insured Claimant;
(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the

# Exhibit 2

*First American Title*
Page 13 of 15

Order Number: **O-SA-5622938**
Page Number: 14

Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    (a) a fraudulent conveyance or fraudulent transfer, or

    (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

# Exhibit 2

*First American Title*

Order Number:  **O-SA-5622938**
Page Number:  15



## First American Title

**Privacy Information**

**We Are Committed to Safeguarding Customer Information**

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information - particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, together with our subsidiaries we have adopted this Privacy Policy to govern the use and handling of your personal information.

**Applicability**

This Privacy Policy governs our use of the information that you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity. First American has also adopted broader guidelines that govern our use of personal information regardless of its source. First American calls these guidelines its Fair Information Values.

**Types of Information**

Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;
- Information about your transactions with us, our affiliated companies, or others; and
- Information we receive from a consumer reporting agency.

**Use of Information**

We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies and escrow companies. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

**Former Customers**

Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

**Confidentiality and Security**

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's Fair Information Values. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

**Information Obtained Through Our Web Site**

First American Financial Corporation is sensitive to privacy issues on the Internet. We believe it is important you know how we treat the information about you we receive on the Internet.

In general, you can visit First American or its affiliates' Web sites on the World Wide Web without telling us who you are or revealing any information about yourself. Our Web servers collect the domain names, not the e-mail addresses, of visitors. This information is aggregated to measure the number of visits, average time spent on the site, pages viewed and similar information. First American uses this information to measure the use of our site and to develop ideas to improve the content of our site.

There are times, however, when we may need information from you, such as your name and email address. When information is needed, we will use our best efforts to let you know at the time of collection how we will use the personal information. Usually, the personal information we collect is used only by us to respond to your inquiry, process an order or allow you to access specific account/profile information. If you choose to share any personal information with us, we will only use it in accordance with the policies outlined above.

**Business Relationships**

First American Financial Corporation's site and its affiliates' sites may contain links to other Web sites. While we try to link only to sites that share our high standards and respect for privacy, we are not responsible for the content or the privacy practices employed by other sites.

**Cookies**

Some of First American's Web sites may make use of "cookie" technology to measure site activity and to customize information to your personal tastes. A cookie is an element of data that a Web site can send to your browser, which may then store the cookie on your hard drive.

FirstAm.com uses stored cookies. The goal of this technology is to better serve you when visiting our site, save you time when you are here and to provide you with a more meaningful and productive Web site experience.

-----------------------------------------------------------------------

**Fair Information Values**

**Fairness** We consider consumer expectations about their privacy in all our businesses. We only offer products and services that assure a favorable balance between consumer benefits and consumer privacy.

**Public Record** We believe that an open public record creates significant value for society, enhances consumer choice and creates consumer opportunity. We actively support an open public record and emphasize its importance and contribution to our economy.

**Use** We believe we should behave responsibly when we use information about a consumer in our business. We will obey the laws governing the collection, use and dissemination of data.

**Accuracy** We will take reasonable steps to help assure the accuracy of the data we collect, use and disseminate. Where possible, we will take reasonable steps to correct inaccurate information. When, as with the public record, we cannot correct inaccurate information, we will take all reasonable steps to assist consumers in identifying the source of the erroneous data so that the consumer can secure the required corrections.

**Education** We endeavor to educate the users of our products and services, our employees and others in our industry about the importance of consumer privacy. We will instruct our employees on our fair information values and on the responsible collection and use of data. We will encourage others in our industry to collect and use information in a responsible manner.

**Security** We will maintain appropriate facilities and systems to protect against unauthorized access to and corruption of the data we maintain.

# Exhibit 2

*First American Title*

Page 15 of 15

# Exhibit 3

# Secured Creditor Payoff Quote



**MORTGAGE SERVICES, LLC**

P.O. Box 3489, Anaheim, CA 92803
(800) 561-4567

PO338

## PAYOFF STATEMENT

12/13/18

To:    EXTERNAL
        JBRADY@MCCARTHYHOLUS.COM

Loan Number:        ▮▮▮▮▮▮
Re: Mortgagor:      RUSSEL D HILES
Co-Mortgagor:

   Property:        155 METATE PLACE
                    PALM DESERT      CA 92260

These figures are good through 12/31/18 subject to the conditions herein.
This loan is due for the 05/01/16 payment.

| | |
|---|---:|
| The current total unpaid principal balance is: | $1395102.03 |
| Interest at 2.37500: | $114291.66 |
| Principal & Interest Advance: | $.00 |
| Recording Cost: | $34.00 |
| Other Unpaid Expenses: | $1482.02 |
| Recon/Release Cost: | $17.00 |
| Deferred Pursuant to Loan Modification: | $0.00 |
| Late charges: | $874.44 |
| PMI/MI Premium Due: | $0.00 |
| Escrow Impound Shortage: | $15277.52 |
| Escrow Credit: | $-0.00 |
| Prepayment Penalty: | $0.00 |
| Suspense Balance: | $0.00 |
| **TOTAL AMOUNT TO PAY LOAN IN FULL** | **$1527078.67** |

Funds received after 12/31/18 will require an additional $186.3321 interest per day.

# Exhibit 3



P.O. Box 3489, Anaheim, CA 92803
(800) 561-4567

## Here is what you'll need to do before payoff:

- Continue making your monthly payments until you send us the amount needed to pay off your mortgage.
- If you are enrolled in our automatic payment service, please cancel it via carringtonhomeloans.com or call us at 800-561-4567.
- If you've been paying through another bill payment service, you'll need to cancel your payments after your mortgage has been paid off. Work with your provider in advance so the payment won't be automatically sent after your loan is paid off.

## Send your funds to pay off your mortgage using one of these options:

| Wire transfer (fastest option)<br>For same day processing, we must receive full payoff amount before 2:00 P.M. EST. | Certified funds(cashier's check or money orders) by overnight or regular mail:<br>Be sure to write your Carrington loan number on the check and include your name and property address. |
| --- | --- |
| Include the following information with your wire transfer:<br>JPMorgan Chase Bank, N.A.<br><br>Account# ▮▮▮▮▮<br>Your name<br>Your property address<br>Loan number | Please remit to the address below:<br>ATTENTION:  CASHIERING<br>1600 South Douglass Road Suite 200A<br>Anaheim, CA 92806<br>Failure to send checks to the above address may result in the accrual of additional interest. |

**Note: If a HUD partial claim was completed on this loan, please contact HUD National Servicing center at (877)622-8525, option3 to obtain a payoff statement for a partial claim.**

Issuance of this statement does not suspend the contract requirement to make the mortgage payments when due. A late charge of $0.00 will be assessed 15 days after a current payment is due and should be added to the payoff total if received after that time.

Should you have any questions regarding this payoff statement notice, please contact Customer Service at 800-561-4567, Monday Thru Friday 8:00 AM to 8:00 PM, Eastern Standard Time.

# Exhibit 3



P.O. Box 3489, Anaheim, CA 92803
(800) 561-4567

## Important information about your payoff

The payoff amount is subject to our final verification once we receive the payoff funds. Regardless of the "good through" date on Page 1, if the loan is in default-related proceedings, including, but not limited to, foreclosure sale, such proceedings will continue, and all fees and costs incurred after this payoff quote is issued will continue to be assessed until the loan is paid in full.  If the payoff funds received are insufficient to pay off the account in full for any reason, including, but limited to, error in calculation, NSF, or additional escrow disbursements and/or adjustments, CMS reserves the right to decline to pay the account in full.  In addition, any and all accrued interest will be due at the time of payoff.

**Notice to borrowers with adjustable rate mortgages:** The interest rate provided on the payoff statement represents the interest rate in effect on your account at the time the payoff statement was generated. Payoff funds received may not be applied at this interest rate if the interest rate subsequently changed.

### FHA-Insured Loan Payoff Procedure Disclosure:

#### Mortgages Insured on or after August 2, 1985, and Closed Before January 21, 2015:

You may prepay your mortgage at any time without penalty.  However, in order to avoid the accrual of interest on your loan after the date of prepayment, the prepayment must be received on the installment due date (generally the first day of the month). Otherwise, you may be required to pay interest on the amount pre-paid through the end of the month.

**NOTE**: Because your loan provides for the collection of interest through the end of the calendar month in which your prepayment is received, it is to your advantage to ensure that the prepayment reaches us as close to the end of the month as possible, but no later than the first work day of the following month.

### Mortgages Closed on or After January 21, 2015

You may prepay your mortgage at any time without penalty. You will only be required to pay interest through the date the prepayment is made.

### Short Payoff

If the payoff funds are insufficient to pay the total amount owed to pay off this loan, funds in the escrow balance may be used to cover the short payoff.  Written authorization from you is required to apply positive escrow balance to the payoff amount. If the escrow balance is insufficient to pay off the total owed, we will return the payoff funds and you will need to order a new quote. For accounts secured by property in the state of **West Virginia**: If the negotiable instrument is for an amount less than what is required to pay the account in full, the issuer will be contacted prior to the application of the instrument to the account.

**CARRINGTON**
MORTGAGE SERVICES, LLC
NMLS ID #2600

P.O. Box 3489, Anaheim, CA 92803
(800) 561-4567

## FHA Homeowners Fact Sheet

**Who may be eligible for an FHA refund or share?**

**Premium Refund:** You may be eligible for a refund of a portion of paid FHA mortgage insurance premium if you:

➢ acquired your loan after September 1, 1983,
➢ paid an upfront mortgage insurance premium at closing, and
➢ did not default on your mortgage payments.

Review your settlement papers or check with your mortgage company to determine if you paid an upfront premium.

**Distributive Share**: You may be eligible for a share of any excess earnings from the Mutual Mortgage Insurance Fund if you:

➢ originated your loan before September 1, 1983,
➢ paid on your loan for more than seven years, and
➢ had your FHA insurance terminated before November 5, 1990.

**Exceptions:**

➢ **Assumptions**: When an FHA-insured loan is assumed, the insurance remains in force (the seller receives no refund). The owner(s) of the property at the time the insurance is terminated is entitled to any refund.
➢ **FHA to FHA Refinances**: When an FHA loan is refinanced, the refund from the old premium may be applied toward the up-front premium required for the new loan.
➢ **Claim**: When a mortgage company submits a claim to HUD for insurance benefits, no refund is due the homeowner.
➢ **Statute of Limitations**: HUD is not liable for a distributive share that remains unclaimed 6 years from the date notification was first sent to the last known address of the mortgagor

**IMPORTANT:** The rules governing eligibility for premium refunds and distributive share payments are based on the financial status of the FHA insurance fund and are subject to change.

**How are refunds determined?**

For any FHA-insured loans with a closing date prior to January 1, 2001, and endorsed before December 8, 2004, no refund is due the homeowner after the end of the seventh year of insurance. For any FHA-insured loans closed on or after January 1, 2001 and endorsed before December 8, 2004, no refund is due the homeowner after the fifth year of insurance.  For FHA-insured loans endorsed on or after December 8, 2004,
no refund is due the homeowner unless they refinanced to a new FHA-insured loan, and no refund is due these homeowners after the third year of insurance.

**How are refunds processed?**

➢ Your mortgage company notifies HUD of the termination of the FHA mortgage insurance for your loan.
➢ If you are eligible for a refund, HUD will either request that the U.S. Department of the Treasury (Treasury) issue a check directly to you or send you an Application for Premium Refund or Distributive Share Payment (form HUD-27050-B) so that you can provide HUD with additional information about your case.

# Exhibit 3



P.O. Box 3489, Anaheim, CA 92803
(800) 561-4567

> ➢ If you receive a form HUD-27050-B, please read and complete the application carefully, sign it, have it notarized, and return it to HUD along with proof that you were the owner of the property at the time that the insurance was terminated.
> ➢ After HUD receives your completed form HUD-27050-B and the necessary supporting documentation, this information will be carefully reviewed. Upon completion of this review, HUD will either request that Treasury issue a check directly to you or request additional information from you.

**How to follow up**

If you do not receive a check or an application within 45 days after you have paid off your loan, check with your mortgage company to confirm that they have sent HUD a request to terminate the mortgage insurance on your loan. If they confirm that the correct termination information was sent, contact HUD. If you do not receive a refund or any other documentation from HUD within 120 days after the date you mailed your application, contact HUD immediately.

**How to contact HUD**

> ➢ **Phone:** (800) 697-6967, 9:00 a.m. to 6:00 p.m. Eastern Standard Time, Monday through Friday.
> ➢ **Mail:** U.S. Department of Housing and Urban Development, P.O. Box 44372, Washington, DC 20026-4372.

**Note:** All inquiries should include your name, your FHA case number, the date that the mortgage was paid-in-full, the property address, and your daytime phone number.

**Si usted habla español y tiene dificultad leyendo o hablando ingles,
por favor, llame usted a este number telefonico (800) 697-6967**

**Exhibit 3**

CARRINGTON MORTGAGE SERVICES   -680                                    12/13/18
1600 SOUTH DOUGLASS ROAD
SUITES 110 & 200-A
ANAHEIM            CA
         92806


▮▮▮▮▮▮▮     2250                    155 METATE PLACE

CONVENTIONAL                       PALM DESERT        CA 92260

      EXTERNAL                     RUSSEL D HILES
      JBRADY@MCCARTHYHOLUS.COM     155 METATE PL

                                   PALM DESERT        CA 92260-7334


| FEE TYPE | EXP CODE | DATE ASSESSED | DESCRIPTION | FEE AMOUNT | REM BALANCE |
|---|---|---|---|---|---|
| 40 | 29 | 03/09/17 | PROPERTY INSPECTION | 15.00 | 15.00 |
| 40 | 29 | 04/11/17 | PROPERTY INSPECTION | 15.00 | 15.00 |
| 40 | 29 | 05/09/17 | PROPERTY INSPECTION | 15.00 | 15.00 |
| 40 | 29 | 06/08/17 | PROPERTY INSPECTION | 15.00 | 15.00 |
| 40 | 58 | 06/13/17 | CHAPTER 13 PROOF OF CLAIM | 411.02 | 411.02 |
| 40 | 29 | 07/12/17 | PROPERTY INSPECTION | 15.00 | 15.00 |
| 40 | 29 | 08/08/17 | PROPERTY INSPECTION | 15.00 | 15.00 |
| 40 | 23 | 09/15/17 | FILING FEES | 181.00 | 181.00 |
| 40 | 29 | 10/11/17 | PROPERTY INSPECTION | 15.00 | 15.00 |
| 40 | 29 | 10/11/17 | PROPERTY INSPECTION | 15.00 | 15.00 |
| 40 | 29 | 11/10/17 | PROPERTY INSPECTION | 15.00 | 15.00 |
| 40 | 29 | 12/11/17 | PROPERTY INSPECTION | 15.00 | 15.00 |
| 40 | 29 | 01/18/18 | PROPERTY INSPECTION | 20.00 | 20.00 |
| 40 | 53 | 01/30/18 | BANKRUPTCY ATTORNEY FEES | 360.00 | 360.00 |
| 40 | 29 | 02/09/18 | PROPERTY INSPECTION | 20.00 | 20.00 |
| 40 | 29 | 03/19/18 | PROPERTY INSPECTION | 20.00 | 20.00 |
| 40 | 29 | 04/09/18 | PROPERTY INSPECTION | 20.00 | 20.00 |
| 40 | 29 | 05/08/18 | PROPERTY INSPECTION | 20.00 | 20.00 |
| 40 | 29 | 06/07/18 | PROPERTY INSPECTION | 20.00 | 20.00 |
| 40 | 29 | 07/11/18 | PROPERTY INSPECTION | 20.00 | 20.00 |
| 40 | 29 | 08/21/18 | PROPERTY INSPECTION | 20.00 | 20.00 |
| 40 | 29 | 09/20/18 | PROPERTY INSPECTION | 20.00 | 20.00 |
| 40 | 29 | 10/23/18 | PROPERTY INSPECTION | 20.00 | 20.00 |
| 163 | 0 | 02/22/17 | CORP ADV 2 | 180.00 | 180.00 |

TOTAL FEES DUE                                                    1482.02


# Exhibit 3

# Exhibit 4

# De Castro Judgment

Leonard M. Shulman - Bar No. 126349
Rika M. Kido - Bar No. 273780
**SHULMAN HODGES & BASTIAN LLP**
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone:      (949) 340-3400
Facsimile:      (949) 340-3000
Email:           LShulman@shbllp.com
                 RKido@shbllp.com

Attorneys for Plaintiff Lynda T. Bui,
Chapter 7 Trustee

FILED & ENTERED

SEP 20 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gooch      DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re: | Case No. 6:16-bk-16877-WJ |
| RUSSEL DENNIS HILES, III, | CHAPTER 7 |
| Debtor. | Adv No. 6:18-ap-01154-WJ |
| LYNDA T. BUI, solely in her capacity as the Chapter 7 Trustee for the bankruptcy estate of Russel Dennis Hiles, III, | **JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT** |
| Plaintiff, | |
| vs. | |
| DE CASTRO, WEST, CHODOROW, MENDLER, GLICKFELD & NASS, INC., a California professional corporation, | |
| Defendant. | |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-500\1260031.1

# Exhibit 4

1

1     The Court has reviewed the "Stipulation for Entry of Judgment" filed on September 20,

2    2018 as docket number 13, between plaintiff Lynda T. Bui, solely in her capacity as the chapter 7

3    trustee for the bankruptcy estate of Russel Dennis Hiles, III and Defendant De Castro, West,

4    Chodorow, Mendler, Glickfeld & Nass, Inc., a California professional corporation ("Defendant"),

5    and good cause appearing,

6     IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the deed of trust in favor

7    of the Defendant for the amount of $60,000, which was recorded on May 20, 2016 in the

8    Riverside County Recorder's Office as Document Number 2016-0207845 against the real property

9    located at 155 Metate Place, Palm Desert, CA 92260, APN: 771-300-015-6, was a preferential

10   transfer under 11 U.S.C. § 547 and is hereby void and recovered for the benefit of the estate under

11   11 U.S.C. § 550 and is automatically preserved for the benefit of the estate under 11 U.S.C. § 551.

12                               ###

13

14

15

16

17

18

19

20

21

22

23

24

25

26  Date: September 20, 2018

_Wayne Johnson_

27                                    Wayne Johnson

28                                    United States Bankruptcy Judge

# Exhibit 4

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5401-500\1260035.1                  2

# Exhibit 5

# HOA Letter

# FIORE RACOBS & POWERS
### —— A PROFESSIONAL LAW CORPORATION ——

AMBER T. ASHBY
JULIE R. BALBINI
NATHAN P. BETTENHAUSEN*
DENNIS M. BURKE*
RICHARD S. FIORE*+
JACQUELINE D. FOSTER*
LAURIE C. KEATING
NICOLE A. LILOMAIAVA
JOHN R. MACDOWELL*+
ERIN A. MALONEY*+
JANET L.S. POWERS*+
PETER E. RACOBS*
ANDREW D. SCOBLE
MARGARET G. WANGLER*+
PHILIP H. YE

*DENOTES SHAREHOLDER
+ CAI COLLEGE OF COMMUNITY
ASSOCIATION LAWYERS (CCAL®)

**INLAND EMPIRE OFFICE**
ASSESSMENT COLLECTION DEPARTMENT

6820 INDIANA AVENUE, SUITE 140
RIVERSIDE, CALIFORNIA 92506-7202

TELEPHONE (951) 342-7954
FAX (951) 369-6355

FIORELAW.COM

December 3, 2019

ORANGE COUNTY OFFICE
6440 OAK CANYON, SUITE 250
IRVINE, CALIFORNIA 92618
(949) 727-3111
FAX (949) 727-3311

COACHELLA VALLEY OFFICE
74-130 COUNTRY CLUB DRIVE, SUITE 102
PALM DESERT, CALIFORNIA 92260
(760) 776-6511
FAX (760) 776-6517

SAN DIEGO COUNTY OFFICE
380 S. MELROSE DRIVE, SUITE 330
VISTA, CALIFORNIA 92081
(760) 707-1988
FAX (760) 776-6517

File No. 63473-28

**SENT VIA EMAIL & FIRST CLASS MAIL**

A & A Escrow Services, Inc.
415 N. Crescent Drive, Ste. 320
Beverly Hills, CA 90210

Attn: Antonia Delgado, Sr. Escrow Officer
Email: diana@aaescrow.com

|  |  |  |
|---|---|---|
| **Re:** | **Association:** | **BIGHORN Homeowners Association, Inc.** |
|  | **Property:** | **155 Metate Place, Palm Desert, California** |
|  | **Owner:** | **Bankruptcy Estate of Russel Dennis Hiles** |
|  | **Escrow No.:** | **104577-AA** |
|  |  |  |
| **Subject:** | **REVISED PAYOFF DEMAND** | |

Dear Ms. Delgado:

As you know, this firm represents BIGHORN Homeowners Association, Inc. ("Association"), and is acting as a debt collector on behalf thereof.

The following is a revised payoff for the demand we received on November 22, 2019, for the outstanding sums owed to BIGHORN Homeowners Association, Inc. The amounts due through December 30, 2019 (excluding any fines) are as follows:

| | |
|---|---|
| Assessments (1/1/18 – 10/1/19) | $ 22,980.00 |
| Late Charges (1/30/18 – 10/30/19) | 2,298.00 |
| Interest (2/1/18 – 12/1/19) | 3,370.42 |
| Attorneys' Fees and Costs | 1,969.05 |
| TOTAL ASSESSMENT DEBT | $ 30,617.47 |

The foregoing amount will remain valid only through December 30, 2019.

Please make all payments in the form of a CASHIER'S CHECK OR MONEY ORDER payable to "Fiore, Racobs & Powers Trust Account" and deliver to this office no later than 5:00

# Exhibit 5

FIORE, RACOBS & POWERS IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.
ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

FIORE RACOBS & POWERS
— A PROFESSIONAL LAW CORPORATION —

A & A Escrow Services, Inc.
December 3, 2019
Page 2

p.m. December 30, 2019.  The **$30,617.47** amount is the current balance on this account, provided payment is received by this office on or before **December 30, 2019**, and provided no further request for a payoff demand payment plan, or settlement offer are received prior to that date.  If any request for a payoff demand, payment plan, or settlement offer is hereafter received prior to satisfaction of the debt, additional charges will accrue, which must be paid to satisfy the debt.

Upon receipt of payment and confirmation that payment has cleared[1], we will withdraw the bankruptcy claim.

The amount stated above does not include any fines or amounts charged by my client for purposes of transferring title in its records, obtaining copies of the Association's financial statements, governing documents, etc., (Civil Code §4575 authorizes the Association to charge a fee for such information.)  You should contact my client to obtain the amount of any such transfer fee at (760) 341-5099.

If you have any questions regarding the above, please do not hesitate to call.

Very truly yours,

FIORE, RACOBS & POWERS
A Professional Law Corporation

Nicole A. Lilomaiava

NAL:hmv

cc:    Board of Directors
       BIGHORN Homeowners Association, Inc.

---

[1] Verification typically takes at least 21 days.

**Exhibit 5**

R0363431-1        FIORE, RACOBS & POWERS IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.
ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

# Exhibit 6

# Expenses Incurred

**Hiles: 155 Metate Place**
**Utility and Maintenance Payments**

| | |
|---|---:|
| Coachella Valley Water District | $ 3,300.26 |
| Southern California Edison | 11,154.52 |
| Pete's Pool Services | 3,280.00 |
| Miguel Gomez Gardening, Inc. | 5,185.00 |
| Total Payments | $ 22,919.78 |

# Exhibit 6

**Coachella Valley Water District**
**Acct #: 680735-679424**

| | | |
|---|---|---:|
| Jun-18 | $ | 243.39 |
| Jun-18 | | 114.48 |
| Jul-18 | | 153.48 |
| Aug-18 | | 285.13 |
| Sep-18 | | 435.53 |
| Oct-18 | | 417.73 |
| Nov-18 | | 489.02 |
| Dec-18 | | 606.26 |
| Jan-19 | | 399.79 |
| Feb-19 | | 21.84 |
| Mar-19 | | 49.13 |
| Apr-19 | | 34.32 |
| May-19 | | 50.16 |
| | $ | 3,300.26 |

# Exhibit 6

**Southern California Edison**
Acct #: 3-048-0471-57

| | |
|---|---:|
| Apr-18 $ | 131.17 |
| May-18 | 607.42 |
| Jun-18 | 711.78 |
| Jul-18 | 465.52 |
| Aug-18 | 317.96 |
| Sep-18 | 282.34 |
| Oct-18 | 288.84 |
| Dec-18 | 940.46 |
| Feb-19 | 790.43 |
| Mar-19 | 582.39 |
| Apr-19 | 534.23 |
| May-19 | 677.86 |
| Jun-19 | 695.08 |
| Aug-19 | 2,338.19 |
| Oct-19 | 1,790.85 |
| | $ 11,154.52 |

# Exhibit 6

## Pool Services

| | |
|---|---|
| May-18 | $250.00 |
| June 18 | $860.00 |
| Dec-18 | $835.00 |
| Apr-19 | $545.00 |
| Oct-19 | $790.00 |
| Total | $3,280.00 |

**Exhibit 6**



# STATEMENT

**Pete's Pool Services**

Post Office Box 890
Palm Desert, CA 92261
760.397.5141
www.petespoolservices.com
email: petespoolservices@msn.com

| DATE | |
|------|--|
| 05/04/18 | |
| NUMBER | |
| ACCT: | 1020000 |

Steven Speier
155 Metate pl.
Palm Desert CA 92260

**Total Due  $        0.00**

**Amount Paid: $** _____

PLEASE RETURN THIS PORTION WITH PAYMENT

| | REFERENCE | CHARGES | CREDITS | BALANCE |
|---|---|---|---|---|
| 05/04/18 | Leak point leak instespection | 250.00 | | 250.00 |
| 05/04/18 | Paid with check nr 3826 | | 250.00 | -250.00 |

90-3582/1222          3826

STEVEN M. SPEIER
POST OFFICE BOX 7637
NEWPORT BEACH, CA 92658

DATE 5-7-18

PAY TO THE ORDER OF  Ronnie Bross                     $ 250.00

Two th003 no Fifty & 00/100          DOLLARS

**USbank.**

MEMO  Pool Maintence                            MP

*Payments not received within 30 days are subject to a $25 late fee.*

### Get your best price from us for your
**Heaters • Pumps • Filters • Auto Systems • Acid Wash • Tile Cleaning**
**Remodeling • Re-Pebble – Re-Plaster**
**Call Ronny 760.397.5141**

**Exhibit 6**

| 0.00 |
|---|
| PLEASE PAY THIS AMOUNT |

*Thank You*



**Exhibit 6**

 Verizon  LTE 15:01    71%

‹ **4**

## 3 Messages

Billing  statement / invoice from Pete...



AUGUST - SEPTEMBER - OCTOBER - NOVEMBER - DECEMBER

**Pete's Pool Services PO Box 890 Palm Desert, CA 92260**

| STATEMENT | |
|---|---|
| **Date** | |
| **12/11/18** | |
| **Number** | |
| **ACCT: 1020000** | |

Steven Speier 155 Metate pl. Palm

| Total Due Amount | $ 835.00 |
|---|---|

3890

STEVEN M. SPEIER
POST OFFICE BOX 7637
NEWPORT BEACH, CA  92658

90-3582/1222

DATE 12-12-18

$ 835.00

PAY TO THE ORDER OF  Pete's Pool Services

Eight Hundred Thirty Nine 9 00/100  DOLLARS

**USbank**

MEMO  Metate Place

**Steven Speier**

| | |
|---|---|
| **From:** | Pete's Pool Services <petespoolservices@msn.com> |
| **Sent:** | Monday, June 4, 2018 9:09 PM |
| **To:** | Steven Speier |
| **Subject:** | Billing  statement / invoice from Pete's Pool Services |

**Pete's Pool Services**
**PO Box 890**
**Palm Desert, CA 92261**
**760-397-5141**

### STATEMENT

| Date |
|---|
| **06/04/18** |
| Number |
| ACCT: 1020000 |

Steven Speier
155 Metate pl.
Palm Desert CA 92260

Total Due                    $ 505.00
Amount Paid        $_____

| | Reference | Charges | Credits | Balance |
|---|---|---|---|---|
| 04/27/18 | PREVIOUS BALANCE | 445.00 | | 445.00 |
| | Credit for part of April | | -90.00 | -90.00 |
| | May Service Charges | 150.00 | | 150.00 |

| 505.00 |
|---|
| PLEASE PAY THIS AMOUNT |

**Thank You**

# Exhibit 6

1

**Steven Speier**

| | |
|---|---|
| **From:** | Pete's Pool Services <petespoolservices@msn.com> |
| **Sent:** | Monday, June 4, 2018 9:09 PM |
| **To:** | Steven Speier |
| **Subject:** | Billing  statement / invoice from Pete's Pool Services |

**Pete's Pool Services**
**PO Box 890**
**Palm Desert, CA 92261**
**760-397-5141**

| STATEMENT | |
|---|---|
| **Date** | |
| 06/04/18 | |
| **Number** | |
| ACCT: 1020000 | |

Steven Speier
155 Metate pl.
Palm Desert CA 92260

Total Due          $ 355.00
Amount Paid     $_____

| | Reference | Charges | Credits | Balance |
|---|---|---|---|---|
| | April Service Charges | 150.00 | | 150.00 |
| 04/24/18 | 2 Filter cleanings | 40.00 | | 40.00 |
| 04/24/18 | Auto fill float | 55.00 | | 55.00 |
| 04/21/18 | Green pool chemical shock treatment | 100.00 | | 100.00 |
| 04/23/18 | Used filter clamp & filter cartridges | 100.00 | | 100.00 |
| 04/27/18 | Credit for part of April | | 90.00 | -90.00 |

| 355.00 |
|---|
| PLEASE PAY THIS AMOUNT |

**Thank You**

# Exhibit 6

1

**Steven Speier**

| | |
|---|---|
| From: | Marianne Bross-Van Broekhoven <mariannevb@msn.com> |
| Sent: | Wednesday, March 27, 2019 7:52 PM |
| To: | Steven Speier |
| Subject: | Fwd: Statement from RB Pools inc. |

**Date:** March 27, 2019 at 6:35:09 PM PDT
**To:** Steven Speier <mariannevb@msn.com>
**Subject: Statement from RB Pools inc.**

**RB Pools inc.**
**PO Box 890**
**Palm Desert, CA 92261**
**760-397-5141**

**STATEMENT**

| Date |
|---|
| 03/27/19 |
| Number |
| ACCT: 1020000 |

Steven Speier
155 Metate pl.
Palm Desert CA 92260

| | |
|---|---|
| Total Due | $ 545.00 |
| Amount Paid | $_____ |

| | | Reference | Charges | Credits | Balance |
|---|---|---|---|---|---|
| | | PREVIOUS BALANCE | 325.00 | | 325.00 |
| 02/28/19 | | March Service Charges | 150.00 | | 150.00 |
| 03/09/19 | 1.00 | Filter cleaning | 40.00 | | 40.00 |
| | | Phosphate remover | 30.00 | | 30.00 |

Please let us know if you like a Free Proposal on Pool Remodeling.
Most Pool remodelings are done in 7 working day's.

| |
|---|
| 545.00 |
| PLEASE PAY THIS AMOUNT |

**Thank You**

STEVEN SPEIER
DEBORAH SPEIER
406 ORCHID AVE # 151
CORONA DL MAR, CA   92625-2443

90-3582/1222
16380056865

651

DATE 4-5-19

PAY TO THE ORDER OF  R B Pools Inc

Five Hundred Forty Five & no/100     $ 545.00

DOLLARS

**usbank.**
Five Star Service Guaranteed   usbank.com

MEMO Pools 3/27 Windws

# Exhibit 6

## Steven Speier

| | |
|---|---|
| **From:** | Marianne Bross-Van Broekhoven <mariannevb@msn.com> |
| **Sent:** | Friday, July 26, 2019 4:06 PM |
| **To:** | Steven Speier; LBui@shbllp.com |
| **Subject:** | Fwd: Billing statement / invoice from RB Pools inc. |

**Date:** July 26, 2019 at 3:45:45 PM PDT

**To:** Steven Speier <mariannevb@msn.com>
**Subject: Billing statement / invoice from RB Pools inc.**

**RB Pools inc.**
**PO Box 890**
**Palm Desert, CA 92261**
760-397-5141

**STATEMENT**

| Date |
|---|
| **07/26/19** |
| Number |
| ACCT: 1020000 |

Steven Speier
155 Metate pl.
Palm Desert CA 92260

| Total Due | $ 790.00 |
|---|---|
| Amount Paid | $_____ |

| | | Reference | Charges | Credits | Balance |
|---|---|---|---|---|---|
| | | PREVIOUS BALANCE | 640.00 | | 640.00 |
| | | July Service Charges | 150.00 | | 150.00 |

| 790.00 |
|---|
| PLEASE PAY THIS AMOUNT |

**Thank You**



# Exhibit 6

**Miguel Gomez Gardening, Inc.**

| | | |
|---|---|---:|
| Jun-18 | $ | 850.00 |
| Jul-18 | | 350.00 |
| Sep-18 | | 1,050.00 |
| Oct-18 | | 350.00 |
| Dec-18 | | 975.00 |
| Mar-19 | | 1,260.00 |
| May-19 | | 350.00 |
| | $ | 5,185.00 |

# Exhibit 6

# Miguel Gomez Gardening Inc.

**Invoice**

81-120 Alberta Ave
Indio, CA 92201
 760-424-6458

| Date | Invoice # |
|------|-----------|
| 6/20/2018 | 10234 |

| Bill To |
|---------|
| Steven Speier<br>155 Metate<br>Palm Desert, Ca 92201 |

| Ship To |
|---------|
| Steven Speier<br>155 Metate<br>Palm Desert, CA 92201 |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
|  |  |  | 6/20/2018 |  |  |  |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
|  | 01 speier | Weekly gardening service 05/01/18-05/31/18 | 350.00 | 350.00T |
|  | MISC | Clean up | 500.00 | 500.00T |
|  |  | Out-of-state sale, exempt from sales tax | 0.00% | 0.00 |

STEVEN M. SPEIER
POST OFFICE BOX 7637
NEWPORT BEACH, CA 92658

90-3582/1222     **3842**

DATE 6·27-18

PAY TO THE ORDER OF  *Miguel Gomez Gardening Inc.*    $ 850.00

*Eight Thousand Fifty & 100*    DOLLARS

**usbank.**

MEMO  *Invoice # 10234*

| | Total | $850.00 |
|--|-------|---------|

# Exhibit 6

# Miguel Gomez Gardening Inc.

81-120 Alberta Ave
Indio, CA 92201
 760-424-6458

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/2/2018 | 10292 |

**Bill To**

Steven Speier
155 Metate
Palm Desert, Ca 92201

**Ship To**

Steven Speier
155 Metate
Palm Desert, CA 92201

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
|             |       |     | 7/2/2018 |  |        |         |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|-----------|--------|
|          | 01 speier | Weekly gardening service  06/01/18 - 06/30/18 | 350.00 | 350.00T |
|          |           | Out-of-state sale, exempt from sales tax | 0.00% | 0.00 |

3844

90-3582/1222

STEVEN M. SPEIER
POST OFFICE BOX 7637
NEWPORT BEACH, CA 92658

DATE 7-5-18

$ 350.00

PAY TO THE ORDER OF  Miguel Gomez Gardening Co.

Three Hundred Fifty 9/100   DOLLARS

**US bank.**

MEMO  June 2018

**Exhibit 6**

| **Total** | $350.00 |

# Miguel Gomez Gardening Inc.

81-120 Alberta Ave
Indio, CA 92201
 760-424-6458

## Invoice

| Date | Invoice # |
|------|-----------|
| 9/29/2018 | 10486 |

**Bill To**

Steven Speier
155 Metate
Palm Desert, Ca 92201

**Ship To**

Steven Speier
155 Metate
Palm Desert, CA 92201

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
| | | | 9/29/2018 | | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| | 01 speier | Weekly gardening service  09/01/18 - 09/30/18 | 350.00 | 350.00T |
| | Past Due | | 700.00 | 700.00 |
| | | Out-of-state sale, exempt from sales tax | 0.00% | 0.00 |

STEVEN M. SPEIER
POST OFFICE BOX 7637
NEWPORT BEACH, CA  92658

90-3582/1222          3848

DATE  *10-3-18*

PAY TO THE ORDER OF  *Miguel Gomez Gardening Inc*    $ *1,050.00*

*One Thousand Fifty ⁰⁰⁄₁₀₀*                    DOLLARS

**us bank**

MEMO  *155 Metate*                           MP

| | | Total | $1,050.00 |
|--|--|-------|-----------|

# Exhibit 6

## Miguel Gomez Gardening Inc.

81-120 Alberta Ave
Indio, CA 92201
 760-424-6458

# Invoice

| Date | Invoice # |
|------|-----------|
| 10/31/2018 | 10549 |

| Bill To |
|---------|
| Steven Speier<br>155 Metate<br>Palm Desert, Ca 92201 |

| Ship To |
|---------|
| Steven Speier<br>155 Metate<br>Palm Desert, CA 92201 |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
|  |  |  | 10/31/2018 |  |  |  |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
|  | 01 speier | Weekly gardening service 10/01/18 - 10/31/18<br>Out-of-state sale, exempt from sales tax | 350.00<br>0.00% | 350.00T<br>0.00 |

STEVEN M. SPEIER
POST OFFICE BOX 7637
NEWPORT BEACH, CA 92658

90-3582/1222

3886

DATE 11-13-18

PAY TO THE ORDER OF Miguel Gomez Gardning Inc    $ 350,00

Three Hundred Fifty & no/100    DOLLARS

**usbank.**

MEMO Invoice # 10549    MP

| | Total | $350.00 |

# Exhibit 6



1/11/18    +    TL  TD  Migur
to Reputile  3  with he water Values
AT  130? ~ 120?  both  OK

# Exhibit 6

# Miguel Gomez Gardening Inc.

81-120 Alberta Ave
Indio, CA 92201
 760-424-6458

**Invoice**

| Date | Invoice # |
|------|-----------|
| 3/30/2019 | 10854 |

| Bill To |
|---------|
| Steven Speier<br>155 Metate<br>Palm Desert, Ca 92201 |

| Ship To |
|---------|
| Steven Speier<br>155 Metate<br>Palm Desert, CA 92201 |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
| | | | 3/30/2019 | | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| | 01 speier<br>Past Due | Weekly gardening service 03/01/19 - 03/30/19<br><br>Out-of-state sale, exempt from sales tax | 350.00<br>910.00<br>0.00% | 350.00T<br>910.00<br>0.00 |

STEVEN SPEIER
DEBORAH SPEIER
406 ORCHID AVE # 151
CORONA DL MAR, CA  92625-2443

90-3582/1222
163800568665

652

DATE 4-5-19

PAY TO THE ORDER OF  Miguel Gomez Gardening Inc     $ 1,260.00

One /no using Two Hundred Sixty 9 /100     DOLLARS

**us bank.**
Five Star Service Guaranteed     usbank.com

MEMO  Invoice # 10854

|  | **Total** | $1,260.00 |
|--|-----------|-----------|

# Exhibit 6

# Miguel Gomez Gardening Inc.

**Invoice**

81-120 Alberta Ave
Indio, CA 92201
760-424-6458

| Date | Invoice # |
|------|-----------|
| 5/1/2019 | 10914 |

| Bill To | Ship To |
|---------|---------|
| Steven Speier<br>155 Metate<br>Palm Desert, Ca 92201 | Steven Speier<br>155 Metate<br>Palm Desert, CA 92201 |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
|  |  |  | 5/1/2019 |  |  |  |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
|  | 01 speier | Weekly gardening service 04/01/19 - 04/30/19<br>Out-of-state sale, exempt from sales tax | 350.00<br>0.00% | 350.00T<br>0.00 |

STEVEN SPEIER
DEBORAH SPEIER
406 ORCHID AVE # 151
CORONA DL MAR, CA  92625-2443

90-3582/1222
163800568665

661

DATE 5-14-19

PAY TO THE ORDER OF  MIGUEL GOMEZ GROWE, INC     $ 350.00

Time Hundred Fifty & 00/100     DOLLARS

**us bank.**
Five Star Service Guaranteed     usbank.com

MEMO  155 METATE

| Total | $350.00 |
|-------|---------|

**Exhibit 6**

# Exhibit 7

# Purchase Contract



## Trustee Transaction Overview

Property Address:
**155 METATE PL PALM DESERT, CA 92260**

Seller Name (Trustee Name):
**Trustee Lynda Bui, BK Trustee for the Estate of Russel Hiles**

**CASE NUMBER:** 16-16877
**LIST PRICE:** $1,775,000
**OFFER PRICE:** $1,450,000
**PROPOSED BANKRUPTCY ESTATE FEE:** $72,500 Buyer's Premium
(3%) to (5%)

The Bankruptcy Estate Fee is being paid as a buyer's premium of $72,500.

**Trustee Signature**

11/18/19

**Date**

# Exhibit 7

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0



CALIFORNIA
ASSOCIATION
OF REALTORS®

**DISCLOSURE REGARDING**
**REAL ESTATE AGENCY RELATIONSHIP**
(Buyer's Brokerage Firm to Buyer)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/18)

**C☉MPASS**

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE.)**

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date 11/15/2019
                            Yokang Zhou

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date 11/15/2019
                            Guillermo Fernandez Castañeda

Agent _____**COMPASS**_____ DRE Lic. # *01991628* _____

By _____*Doug Balog*_____ Real Estate Broker (Firm)
                              DRE Lic. # *01197951* _____ Date 11/15/2019
          Salesperson or Broker-Associate, if any) *Doug Balog*

© 1991-2018, California Association of REALTORS®, Inc.

**AD REVISED 12/18 (PAGE 1 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

# Exhibit 7

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0

**CIVIL CODE SECTIONS 2079.13 – 2079.24 (2079.16 APPEARS ON THE FRONT)**

**2079.13.** As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.
**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: (a) The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.
**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
**2079.16** Reproduced on Page 1 of this AD form.
**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the seller's agent shall disclose to the seller whether the agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
**CONFIRMATION:** The following agency relationships are confirmed for this transaction:

Seller's Brokerage Firm _____ **DO NOT COMPLETE. SAMPLE ONLY** _____ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent _____ **DO NOT COMPLETE. SAMPLE ONLY** _____ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm _____ **DO NOT COMPLETE. SAMPLE ONLY** _____ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent _____ **DO NOT COMPLETE. SAMPLE ONLY** _____ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
**2079.18** (Repealed pursuant to AB-1289)
**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
**2079.21** (a) A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. (b) A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. (c) "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. (d) This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 1991-2018, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**AD REVISED 12/18 (PAGE 2 OF 2)**
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

# Exhibit 7

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0



CALIFORNIA
ASSOCIATION
OF REALTORS®

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
OR SELLER - DISCLOSURE AND CONSENT**
(C.A.R. Form PRBS, Revised 12/18)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, Buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| Seller | **Bankruptcy Estate of Russel Hiles** Date | 11/18/19 |
| Seller | | Date |
| Buyer | **Yokang Zhou** Date | 11/15/2019 |
| Buyer | **Guillermo Fernandez Castaneda** Date | 11/15/2019 |
| Buyer's Brokerage Firm **COMPASS** | DRE Lic # **01991628** | Date |
| By **Doug Balog** | DRE Lic # **01197951** | Date 11/15/2019 |
| Doug Balog | | |
| Seller's Brokerage Firm **Glass Ratner Brokerage Services, Inc.** | DRE Lic # **01980431** | Date |
| By | DRE Lic # **01828461** | Date |
| **Brian Thompson** | | |

© 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/18 (PAGE 1 OF 1)**



**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

| | |
|---|---|
| Compass - Palm Desert, 74199 El Paseo Palm Desert CA 92260 | Phone: 7606015151     Fax:     Zhou - Metate |
| Doug Balog | Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com |

# Exhibit 7

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0

COMPASS



**CALIFORNIA**
**ASSOCIATION**
**OF REALTORS®**

**WIRE FRAUD AND ELECTRONIC FUNDS**
**TRANSFER ADVISORY**
**(C.A.R. Form WFA, Revised 12/17)**

Property Address: _155 Metate Place , Palm Desert, CA  92260-7334_ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

### ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

Buyer/Tenant **X** ~~DocuSigned by:~~   **Yokang Zhou** Date 11/15/2019

Buyer/Tenant **X** B0B6120743E1417   **Guillermo Fernandez Castaneda**Date 11/15/2019

Seller/Landlord **X** 89C4E87F1274452...   **Bankruptcy Estate of Russel Hiles** Date 4/18/19

Seller/Landlord _____ Date _____

©2016-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REALESTATE BUSINESS SERVICES, LLC.
_a subsidiary of the California Association of REALTORS®_
525 South Virgil Avenue, Los Angeles, California 90020



**WFA REVISED 12/17 (PAGE 1 OF 1)**

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

# Exhibit 7

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0



CALIFORNIA
ASSOCIATION
OF REALTORS®

**CALIFORNIA
RESIDENTIAL PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RPA-CA, Revised 12/18)

C✺MPASS

Date Prepared: _11/15/2019_
1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _Yokang Zhou , Guillermo Fernandez Castaneda_ ("Buyer").
   B. **THE REAL PROPERTY** to be acquired is _155 Metate Place , Palm Desert, CA  92260-7334_ , situated in
      _Palm Desert_ (City), _Riverside_ (County), California, _92260-7334_ (Zip Code), Assessor's Parcel No. _771300015_ ("Property").
   C. **THE PURCHASE PRICE** offered is _One Million, Four Hundred Fifty Thousand_
      Dollars $ _1,450,000.00_
   D. **CLOSE OF ESCROW** shall occur on [X] _45 days per para 9.-BK Global Addendum_ (date)(or [ ] ____ **Days** After Acceptance).
   E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.
2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a [X] "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B. **CONFIRMATION:** The following agency relationships are confirmed for this transaction:
      **Seller's Brokerage Firm** _Glass Ratner Brokerage Services, Inc._ License Number _01980431_
      Is the broker of (check one): [X] the seller; or [ ] both the buyer and seller. (dual agent)
      Seller's Agent _Brian Thompson_ License Number _01828461_
      Is (check one): [X] the Seller's Agent. (salesperson or broker associate) [ ] both the Buyer's and Seller's Agent. (dual agent)
      **Buyer's Brokerage Firm** _COMPASS_ License Number _01991628_
      Is the broker of (check one): [X] the buyer; or [ ] both the buyer and seller. (dual agent)
      Buyer's Agent _Doug Balog_ License Number _01197951_
      Is (check one): [X] the Buyer's Agent. (salesperson or broker associate) [ ] both the Buyer's and Seller's Agent. (dual agent)
   C. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible
      Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _43,500.00_
      (1) Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds
      transfer, [ ] cashier's check, [ ] personal check, [ ] other _____ within 3 business days
      after Acceptance (or _wire deposit due within 48 hours after Seller's acceptance of this offer_ );
      OR (2) [ ] Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____)
      to the agent submitting the offer (or to _____), made payable to
      _____. The deposit shall be held uncashed until Acceptance and then deposited
      with Escrow Holder within 3 business days after Acceptance (or _____).
      Deposit checks given to agent shall be an original signed check and not a copy.
      (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . $ _101,500.00_
      within ____ **Days** After Acceptance (or _wire deposit due with 72 hours of Seller's short sale approval letter_ ).
      If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
      deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
      RID) at the time the increased deposit is delivered to Escrow Holder.
   C. [X] **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer
      obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or
      [ ] Buyer shall, within 3 (or ____ ) **Days** After Acceptance, Deliver to Seller such verification.
   D. **LOAN(S):**
      (1) **FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
      This loan will be conventional financing **OR** [ ] FHA, [ ] VA, [ ] Seller financing (C.A.R. Form SFA),
      [ ] assumed financing (C.A.R. Form AFA), [ ] Other _____ . This loan shall be at a fixed
      rate not to exceed ____ % or, [ ] an adjustable rate loan with initial rate not to exceed ____%.
      Regardless of the type of loan, Buyer shall pay points not to exceed ____ % of the loan amount.
      (2) [ ] **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
      This loan will be conventional financing **OR** [ ] Seller financing (C.A.R. Form SFA), [ ] assumed
      financing (C.A.R. Form AFA), [ ] Other _____ . This loan shall be at a fixed rate not to
      exceed ____ % or, [ ] an adjustable rate loan with initial rate not to exceed ____%.
      Regardless of the type of loan, Buyer shall pay points not to exceed ____ % of the loan amount.
      (3) **FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has **17 (or ____ ) Days** After Acceptance
      to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that
      Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender
      requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a
      part of this Agreement.
   E. **ADDITIONAL FINANCING TERMS:** _____

   F. **BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . $ _1,305,000.00_
      to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   G. **PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _1,450,000.00_
   Buyer's Initials X(____)X(____)                    Seller's Initials X(____)(____)
   © 1991-2018, California Association of REALTORS®, Inc.

| Compass - Palm Desert, 74199 El Paseo Palm Desert CA 92260 | Phone: 7606015151 | Fax: | Zhou - Metate |
| Doug Balog | Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com | | |

# Exhibit 7

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0

Property Address: *155 Metate Place , Palm Desert, CA  92260-7334*      Date: *November 15, 2019*

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within **3 (or ____ ) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☒ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within **17 (or ____ ) Days** After Acceptance.

**J. LOAN TERMS:**

**(1) LOAN APPLICATIONS:** Within **3 (or ____ ) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

**(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

**(3) LOAN CONTINGENCY REMOVAL:**

Within **21 (or ____ ) Days** After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

**(4) ☐ NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing.  Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**

**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

**OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**

**A. ADDENDA:**

| | |
|---|---|
| ☒ Addendum #  *Two*  (C.A.R. Form ADM) | |
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☒ Other *BK Global Contract Addendum* |

**B. BUYER AND SELLER ADVISORIES:**

| | |
|---|---|
| | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Probate Advisory (C.A.R. Form PA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ REO Advisory (C.A.R. Form REO) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ Other |

**6. OTHER TERMS:** *A. Buyer is aware it may take up to ten (10) days to receive a response from Federal Bankruptcy Trustee. B. BK Global Addendum paragraph 8. content is noted by Buyer.  C. In the event Seller is unable to close escrow OR a higher bid is received at  Court Sale Hearing, Buyer's full deposit is refundable to Buyer.  D. Buyer Yokang Zhou is commonly referred to as 'Danny' Zhou.*

**7. ALLOCATION OF COSTS**

**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**

(1) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☒ environmental ☐ Other: _____ prepared by *Seller's Choice* .

(2) ☒ Buyer ☐ Seller shall pay for the following Report *termite inspection & report* prepared by *Buyer's choice* .

(3) ☒ Buyer ☐ Seller shall pay for the following Report *physical inspection report* prepared by *Buyer's choice* .

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**

(1) ☒ Buyer ☐ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

Buyer's Initials **X**(_____)(_____)      Seller's Initials **X**(_____)(_____)

**RPA-CA REVISED 12/18 (PAGE 2 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 2 OF 10)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan  48026  www.zipLogix.com     Zhou - Metate

# Exhibit 7

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0

Property Address: *155 Metate Place , Palm Desert, CA  92260-7334*      Date: *November 15, 2019*

(2) (i) ☒ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.

(ii) ☒ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.

(iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**

(1) (a) ☒ Buyer ☒ Seller shall pay escrow fee *each pay their own-shared equally* .

   (b) Escrow Holder shall be *A & A Escrow Services, Inc.* .

   (c) The Parties shall, within **5 (or ___ ) Days** After receipt, sign and return Escrow Holder's general provisions.

(2) (a) ☒ Buyer ☒ Seller shall pay for **owner's** title insurance policy specified in paragraph 13E *each pay their own-shared equally* .

   (b) Owner's title policy to be issued by *First American Title - Bankruptcy Division* .

   (Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**

(1) ☒ Buyer ☐ Seller shall pay County transfer tax or fee *if applicable* .

(2) ☒ Buyer ☐ Seller shall pay City transfer tax or fee *if applicable* .

(3) ☒ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee *if applicable* .

(4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.

(5) ☒ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.

(6) Buyer to pay for any HOA certification fee.

(7) ☒ Buyer ☐ Seller shall pay for any private transfer fee *remediation of Section 1 & 2 detected in termite report* .

(8) ☐ Buyer ☐ Seller shall pay for _____ .

(9) ☐ Buyer ☐ Seller shall pay for _____ .

(10) ☐ Buyer ☐ Seller shall pay for the cost, not to exceed $ _____ , of a standard (or ☐ upgraded) one-year home warranty plan, issued by _____ , with the following optional coverages: ☐ Air Conditioner ☐ Pool/Spa ☐ Other: _____ .

Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

OR ☒ **Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.**

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.

**B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,

(1) All EXISTING fixtures and fittings that are attached to the Property;

(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☐ all stove(s), except _____ ; ☐ all refrigerator(s) except _____ ; ☐ all washer(s) and dryer(s), except _____ ;

(3) The following additional items: _____

(4) Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are (☐ are NOT) included in the sale.

(5) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.

(6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and _____ , and (ii) are transferred without Seller warranty regardless of value.

**C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) _____

_____ . **Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or ☐ will be removed and holes or other damage shall be repaired, but not painted).**

**9. CLOSING AND POSSESSION:**

**A.** Buyer intends (or ☒ does not intend) to occupy the Property as Buyer's primary residence.

**B. Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or ( _____ ☐ AM/☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than ___ calendar days after Close Of Escrow; or (iii) ☐ at ____ ☐ AM/☐ PM on _____ .

Buyer's Initials X( _____ )X( _____ )        Seller's Initials X( _____ ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 3 OF 10)**



# Exhibit 7

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0

Property Address: *155 Metate Place , Palm Desert, CA  92260-7334*                                          Date: *November 15, 2019*

**C. Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

**D. Tenant-occupied Property: Property shall be vacant** at least **5 (or ___ ) Days** Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**

OR ☐ **Tenant to remain in possession** (C.A.R. Form TIP).

**E.** At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

**F.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**10. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

**A. (1)** Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and **(ii)** unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).

**(2)** Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Seller's Agent, if any, has completed and signed the Seller's Brokerage Firm section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Brokerage Firm, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Brokerage Firm.

**(3) Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.

**(4)** Within the time specified in paragraph 14A, (i) Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).

**(5)** Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

**(6)** In the event Seller or Seller's Brokerage Firm, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

**(7)** If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, or by an electronic record satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of cancellation to Seller or Seller's agent.

**B. NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; **(ii)** disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**C. WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

**D. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

**E. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

**F. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

**(1) SELLER HAS: 7 (or ___ ) Days** After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials X (____) X (GFC)                          Seller's Initials X (____) (____)

**RPA-CA REVISED 12/18 (PAGE 4 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 4 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                          Zhou - Metate

# Exhibit 7

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0

Property Address: **155 Metate Place , Palm Desert, CA  92260-7334**        Date: **November 15, 2019**

**(2)** If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ___ ) Days** After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). **(vi)** private transfer fees; **(vii)** Pet fee restrictions; and **(viii)** smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.

    **A.** Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.

    **B.** Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

    **C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

    **A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: **(i)** a general physical inspection; **(ii)** an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** inspect for lead-based paint and other lead-based paint hazards; **(iv)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); **(v)** review the registered sex offender database; **(vi)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and **(vii)** review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.

    **B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

    **C.** Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

    **D. Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

    **A.** Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

    **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.

    **C.** Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

    **D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

    **E.** Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

Buyer's Initials **X**(_____)(_____)        Seller's Initials **X**(_____)(_____)

**RPA-CA REVISED 12/18 (PAGE 5 OF 10)**



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 5 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    Zhou - Metate

# Exhibit 7

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0

Property Address: **155 Metate Place , Palm Desert, CA 92260-7334**                    Date: **November 15, 2019**

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

A. SELLER HAS: 7 (or ___ ) Days After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

B. **(1)  BUYER HAS: 17 (or _10_ ) Days** After Acceptance, unless otherwise agreed in writing, to:

(i) complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.

(2) Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

(3) By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or ___ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

(4) **Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

(5) **Access to Property:** Buyer shall have access to the Property to conduct inspections and investigations for **17 (or ____) Days** After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

C. [X] **REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.**

D. **SELLER RIGHT TO CANCEL:**

(1) **Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); **(iii)** Deliver a letter as required by paragraph 3J(1); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; **(v)** In writing assume or accept leases or liens specified in 8B5; **(vi)** Return Statutory and Lead Disclosures as required by paragraph 10A(5); or **(vii)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or **(viii)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or ___ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

F. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

G. **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or _____ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

Buyer's Initials X(_____)X(_____)                    Seller's Initials X(_____) (_____)

**RPA-CA REVISED 12/18 (PAGE 6 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 6 OF 10)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    Zhou - Metate

# Exhibit 7

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0

Property Address: *155 Metate Place , Palm Desert, CA  92260-7334*     Date: *November 15, 2019*

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or ___ ) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**

    **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

    **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days** After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

    **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the **joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or ___ ) Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.

    **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials **X**( 1K )( GFC )           Seller's Initials **X**( ) ( ___ )

**RPA-CA REVISED 12/18 (PAGE 7 OF 10)**

**Exhibit 7**

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0

Property Address: *155 Metate Place , Palm Desert, CA  92260-7334*     Date: *November 15, 2019*

    **C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

    **D.** Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

    **E.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

**21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

    **A.** Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

    **B.** LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).

    Buyer's Initials                  Seller's Initials _____ / _____

**22. DISPUTE RESOLUTION:**

    **A.** MEDIATION: The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. **Exclusions from this mediation agreement are specified in paragraph 22C.**

    **B.** ARBITRATION OF DISPUTES:

    The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.

    "NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

    "WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

    Buyer's Initials                  Seller's Initials _____ / _____

    **C.** ADDITIONAL MEDIATION AND ARBITRATION TERMS:

      **(1)** EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials **X** ( _____ ) ( _____ )             Seller's Initials **X** ( _____ ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 8 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     Zhou - Metate

# Exhibit 7

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0

Property Address: *155 Metate Place , Palm Desert, CA  92260-7334*                    Date: *November 15, 2019*

     (2) **PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.**

     (3) **BROKERS: Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.**

23. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

24. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

25. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

26. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

27. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

28. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

29. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

30. **DEFINITIONS:** As used in this Agreement:

  A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.

  B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

  C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.

  D. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.

  E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.

  F. **"Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

  G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

  H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

  I. **"Deliver", "Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).

  J. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

  K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

  L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

  M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

31. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ *Doug Balog* _____ , who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by ☐ _____ ☐ AM/ ☐ PM, on *Bankruptcy Court Approval* ___ (date)).

☐ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date 11/15/2019    BUYER _____

(Print name) *Yokang Zhou* _____    DocuSigned by:

Date 11/15/2019    BUYER _____

(Print name) *Guillermo Fernandez Castaneda* _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials **X**( _____ ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 9 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 9 OF 10)**

Produced with zipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    Zhou - Metate

# Exhibit 7

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0

Property Address: *155 Metate Place , Palm Desert, CA  92260-7334*                    Date: *November 15, 2019*

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:**

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date 11/18/19    SELLER _____

**(Print name)** *Bankruptcy Estate of Russel Hiles*

Date _____    SELLER _____

**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ )  **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
    (Initials)          personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
                        ☐ AM/ ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by
                        Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation
                        is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that
                        Confirmation of Acceptance has occurred.

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING (BUYER'S) BROKER COMPENSATION:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
E. **PRESENTATION OF OFFER:** Pursuant to Standard of Practice 1-7, if Buyer's Broker makes a written request, Seller's Broker shall confirm in writing that this offer has been presented to Seller.

Buyer's Brokerage Firm *COMPASS*                                    DRE Lic. # *01991628*
By  *Doug Balog*                    *Doug Balog* DRE Lic. # *01197951*        Date 11/15/2019
By _____                                    DRE Lic. # _____        Date _____
Address *74199 El Paseo #200*                    City *Palm Desert*        State *Ca*    Zip *92260*
Telephone *(760)601-5151*        Fax _____        E-mail *Doug@DougBalog.com*
Seller's Brokerage Firm *Glass Ratner Brokerage Services, Inc.*            DRE Lic. # *01980431*
By _____                    *Brian Thompson* DRE Lic. # *01828461*        Date _____
By _____                                    DRE Lic. # _____        Date _____
Address *19800 MacArthur Blvd., Suite 820*            City *Irvine*        State *CA*    Zip *92612*
Telephone *(949)981-9120*        Fax _____        E-mail *BrianThompsonRE@gmail.com*

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____  ☐ Seller's Statement of Information and _____
_____, and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____            Escrow # _____
By _____                                Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Department of Real Estate.

**PRESENTATION OF OFFER: (** _____ **)** _____ ) Seller's Broker presented this offer to Seller on _____ (date).
                        Broker or Designee Initials

**REJECTION OF OFFER: (** _____ **) (** _____ **)** No counter offer is being made. This offer was rejected by Seller on _____ (date).
                        Seller's Initials

©1991- 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:            Buyer Acknowledges that page 10 is part of this Agreement X _____ X _____
REAL ESTATE BUSINESS SERVICES, LLC.                                Buyer's Initials
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020
**RPA-CA REVISED 12/18 (PAGE 10 of 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 10 OF 10)**

# Exhibit 7

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0

CALIFORNIA
ASSOCIATION
OF REALTORS®

**BUYER'S INSPECTION ADVISORY**

(C.A.R. Form BIA, Revised 11/14)

COMPASS

Property Address **155 Metate Place , Palm Desert, CA  92260-7334**

**1. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**2. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

**3. YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

**A. GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

**B. SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

**C. WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

**D. SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

**E. WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

**F. ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

**G. EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

**H. FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

**I. BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

**J. RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

**K. SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

**L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

| Buyer | | 11/15/2019 | Buyer | | 11/15/2019 |
|---|---|---|---|---|---|
| | *Yoxang Zhou* | | | *Guillermo Fernandez Castaneda* | |

©1991-2004, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**BIA REVISED 11/14 (PAGE 1 OF 1)**



**BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)**

# Exhibit 7

DocuSign Envelope ID: 0E6F3E0B-41B3-477E-971E-03DA521C33D0



# Purchase & Sale of Real Property Contract Addendum

| 155 METATE PL PALM DESERT, CA 92260 |
| --- |

## Property Address

1.  Buyer acknowledges that this property is subject to Short Sale Lender or Servicer Approval as applicable and Bankruptcy Court Approval of the sale or transfer of the subject property.

2.  The Bankruptcy Estate Fee is to be paid from the Sellers proceeds or as a buyer's premium and said Fee shall be made payable to the Bankruptcy Estate.

3.  Buyer acknowledges that the property is sold "AS IS". Absolutely no repairs will be authorized. Seller is unable to remove any debris or personal property left on the Property nor warrants that any appliances or other personal property will be left on the Property or transferred as part of this transaction.

4.  Seller shall make no concessions and can pay no closing costs to, for or on behalf of the buyer.

5.  The parties agree that the **ESCROW AGENT** for this transaction is:

| | |
| --- | --- |
| **ESCROW AGENT** | A & A Escrow Services, Inc. |
| **ADDRESS** | 415 N. Crescent Drive, Suite 320 |
| **CITY, STATE, ZIP** | Beverly Hills, CA 90210 |
| **PHONE** | (877) 365-5301 |
| **EMAIL** | antonia@aaescrow.com |

The initial earnest money deposit in the amount of 3% of the purchase price is due to escrow agent within 48 hours of seller's acceptance of the contract (for all contracts). The second (2nd) earnest money deposit in the amount of 7% of the purchase price for cash transactions (total earnest money deposits equal 10% for cash transactions) or 2% of the purchase price for financed transactions (total earnest money deposits equal 5% for financed transactions) are due to escrow agent within 72 hours of the issuance of the short sale approval letter by the short sale lender or servicer. All earnest money deposits are to be deposited with escrow agent in the form of a cashier's check or bank wire.



# Exhibit 7

6.      The CLOSING AND TITLE AGENT for this transaction shall be:

| | |
|---|---|
| **CLOSING AND TITLE AGENT** | A & A Escrow Services, Inc. |
| **ADDRESS** | 415 N. Crescent Drive, Suite 320 |
| **CITY, STATE, ZIP** | Beverly Hills, CA 90210 |
| **PHONE** | (877) 365-5301 |
| **EMAIL** | antonia@aaescrow.com |

Closing and Title Agent duties shall include, but are not limited to: drafting estimated settlement statements upon execution of contract and as requested or required by the short sale lender or servicer in order to obtain the short sale approval(s) for the subject transaction (including all seller side fees and pro-rations), working with BK Global in regard to obtaining said short sale approval(s) and to clear any and all liens that may encumber the property or title to the subject property (if any), and coordinating the closing of this transaction with the real estate agents or brokers as applicable and the parties to the transaction including the Trustee for the selling Bankruptcy Estate.

7.      The Seller in this transaction is exempt from providing the Homeowner's Association documents to Buyer as this is a court-ordered sale transaction. Buyer will be solely responsible for any application, transfer, capital contributions and initial membership fees charged by or due to any Association(s) or Management Company. Buyer is aware it may take up to 10 days to receive a response from the Federal Bankruptcy Trustee (Seller).

8.      If the applicable Short Sale Approval(s) is/are not issued within 120 days after the Seller's contract acceptance date, Buyer may cancel the Residential Purchase Agreement for any reason without penalty.

9.      Buyer agrees to close this transaction within 45 days of issuance of the short sale approval and agrees to close pursuant to the terms included in the Order entered by the Bankruptcy Court approving the sale transaction and pursuant to the instructions of the Federal Bankruptcy Trustee.

10.     Buyer shall be responsible for connecting any utilities necessary to perform inspections requested and any related costs as part of any due diligence period or inspection. Buyer shall use this period to satisfy themselves of all mechanical, structural and/or functional related concerns regarding the property. Buyer shall have the same amount of time to obtain, review, and satisfy themselves of any association rules, regulations, requirements and/or fees, if applicable. Seller will not pay any upfront expenses related to plowing the road for access to the property. Should the Buyer require the septic system be pumped and inspected, that shall be done at the buyer's expense. Buyer shall remove any and all contingencies within 10 calendar days of written acceptance of the contract (original purchase contract and addendum). By no later than 3:00pm on the 10th calendar day after acceptance, Buyer may advise Seller in writing of its election to cancel the Sale, in which case Buyer shall receive a full refund of the Deposit (the "Notice to Cancel"). Absent Buyer's submission of a Notice to Cancel in accordance with the addendum, the Sale shall be without any further contingencies or due diligence requirements of the Buyer.

**Without limiting the generality of the foregoing, Buyer's silence shall be deemed as an acceptance and affirmative election to proceed with with the Sale without any further contingencies or due diligence requirements.**

11.     Any issues regarding permitting or open or expired permits will be the responsibility of the buyer and clearance or closure of the same will not be part of the contract and will not be a requirement of closing.

**Exhibit 7**

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0

12. Buyer acknowledges that the seller may not have access to garage remotes, mailbox keys or access related keys to the property. Seller will tender any items available at the close of escrow but shall not be liable to provide items not in his/her possession.

13. Buyer shall immediately disclose if he/she is related to the debtor or seller. Buyer understands that most lenders and/or servicers or investors require an Arm's Length Disclosure to be signed by the parties as a condition of the short sale approval, and some lenders and/or servicers or i investors will not allow a family member or relative to purchase a property in which a debtor or seller related to the buyer has or may have interest.

14. Should buyer be representing self as an agent, buyer understands that some lenders and/or servicers or investors will not allow buyer(s) to receive any funds from the sale of the property, including commissions.

15. Offers in the name of a corporation, trust, LLC or partnership will need to show proof of all entity owners and shall provide a copy of the articles of organization (and operating agreement when applicable) which must provide for who is authorized to sign on behalf of the entity. Buyer understands and acknowledges that once Addendum is executed, the name of the buyer cannot be changed for title, closing or any other purpose due to the Short Sale Approval(s).

16. Seller will not pay for an Appraisal or Home Warranty.

17. Buyer understands and agrees that this addendum shall prevail and take precedence where any terms included herein conflict with the original Purchase Agreement.

DATED this *18th* day of *Nov* , 201*9*

**Trustee**

_____
Signature



_____
Print Name

**Buyer**

_____  11/15/2019
Signature

Yokang Zhou

_____
Print Name

**Buyer**

_____  11/15/2019
Signature

Guillermo Fernandez Castaneda

_____
Print Name

# Exhibit 7

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0


CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM**

(C.A.R. Form ADM, Revised 12/15)

**No.** _Two_

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other

dated _November 14, 2018_ , on property known as _155 Metate Place_

_Palm Desert,  92260_

in which _Yokang Zhou_ is referred to as ("Buyer/Tenant")

and _Lynda Bui, Trustee, for the BK Estate of Russel Hiles_ is referred to as ("Seller/Landlord").

_1) Buyer to pay a Bankruptcy Estate fee of $72,500 (Buyers premium) though escrow and at close.  This fee is in addition to the puchase price of $1,450,000._

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _____   11/15/2019

Buyer/Tenant _____
_Yokang Zhou_

Date __11/18/19__

Seller/Landlord _____
_Lynda Bui, Trustee, for the BK Estate of Russel Hiles_

Buyer/Tenant _____   11/15/2019
Guillermo Fernández Castaneda

Seller/Landlord _____

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**ADM REVISED 12/15 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**

# Exhibit 7

DocuSign Envelope ID: 0E6F2F93-44B1-421F-9F1E-038AB71C33D0

CALIFORNIA
ASSOCIATION
OF REALTORS®

**CONTINGENCY REMOVAL No.** _One_
(C.A.R. Form CR, Revised, 6/16)

C✸MPASS

In accordance with the terms and conditions of the: [X] Residential Purchase Agreement (C.A.R. Form RPA-CA), [ ] Request For Repair (C.A.R. Form RR), [ ] Response And Reply To Request For Repair (C.A.R. Form RRRR) or [ ] Other _____ ("Agreement"),
dated _11/15/2019_ , on property known as _____155 Metate Place , Palm Desert, CA  92260-7334_____ ("Property"),
between _____Yokang Zhou , Guillermo Fernandez Castaneda_____ ("Buyer")
and _____Bankruptcy Estate of Russel Hiles_____ ("Seller").

**I.   BUYER REMOVAL OF BUYER CONTINGENCIES:**

1.  With respect to any contingency and cancellation right that Buyer removes, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations and review of reports and other applicable information and disclosures; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility, and expense, **if any**, for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by law.

2.  Buyer removes those contingencies specified below.
    **A.   ONLY the following individually checked Buyer contingencies are removed:**
    1.  [ ] Loan (Paragraph 3J)
    2.  [ ] Appraisal (Paragraph 3I)
    3.  Buyer's Investigation Contingency (Paragraph 12)
        A.  [ ] Only the physical inspection portion of Buyer's Investigation (Paragraph 12)
        B.  [ ] All Buyer Investigations other than a physical inspection (Paragraph 12)
        C.  [ ] Entire Buyer's Investigation Contingency (Paragraph 12)
    4.  [ ] Condominium/Planned Development (HOA or OA) Disclosures (Paragraph 10F)
    5.  [ ] Reports/Disclosures (Paragraphs 7 and 10)
    6.  [ ] Title: Preliminary Report (Paragraph 13)
    7.  [ ] Sale of Buyer's Property (Paragraph 4B)
    8.  [ ] Review of documentation for leased or liened items (Paragraph 8B(5))
    9.  [ ] Other: _____
    10. [ ] Other: _____
    **OR B.   [ ] ALL Buyer contingencies are removed, EXCEPT:** [ ] Loan Contingency (Paragraph 3J); [ ] Appraisal Contingency (Paragraph 3I); [ ] Contingency for the Sale of Buyer's Property (Paragraph 4B); [ ] Condominium/Planned Development (HOA) Disclosures (Paragraph 10F); [ ] Other _____
    **OR C.   [X] BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**

3.  **Once all contingencies are removed, whether or not Buyer has satisfied him/herself regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.**

**NOTE:** Paragraph numbers refer to the California Residential Purchase Agreement (C.A.R. Form RPA-CA). Applicable paragraph numbers for each contingency or contractual action in other C.A.R. contracts are found in Contract Paragraph Matrix (C.A.R. Form CPM).

Buyer X _[signature: Yokang Zhou]_ _Yokang Zhou_    Date 11/15/2019

Buyer X _[signature: Guillermo Fernandez Castaneda]_ _Guillermo Fernandez Castaneda_    Date 11/15/2019

**II.   SELLER REMOVAL OF SELLER CONTINGENCIES:** Seller hereby removes the following Seller contingencies: [ ] Finding of replacement property (C.A.R. Form SPRP); [ ] Closing on replacement property (C.A.R. Form SPRP) [ ] Other

Seller X _[signature]_    Date 11/8/19

Seller _____    Date _____

( _____ / _____ ) (Initials) **CONFIRMATION OF RECEIPT:** A copy of this signed Contingency Removal was personally received by [ ] Buyer [ ] Seller or authorized agent on _____ (date), at _____ [ ] AM / [ ] PM.

© 2019. California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**CR REVISED 6/16 (PAGE 1 OF 1)**

**CONTINGENCY REMOVAL (CR PAGE 1 OF 1)**

# Exhibit 7

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**100 Spectrum Center Drive, Suite 600, Irvine, CA 92618**

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER: (1) AUTHORIZING THE SHORT SALE OF REAL PROPERTY OF THE ESTATE FREE AND CLEAR OF CERTAIN LIENS PURSUANT TO BANKRUPTCY CODE §§ 363(b)(1) AND (f), (2) APPROVING PAYMENT OF REAL ESTATE COMMISSION AND OTHER COSTS; AND (3) GRANTING RELATED RELIEF INCLUDING APPROVAL OF BANKRUPTCY CODE § 506(c) SURCHARGE; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS OF LYNDA T. BUI AND PATRICK BUTLER IN SUPPORT THEREOF [with Notice of Hearing on the Motion]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **December 9, 2019,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **December 9, 2019**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **Not Applicable**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 9, 2019 | Lorre Clapp | /s/ Lorre Clapp |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## NEF SERVICE LIST

- **Lynda T. Bui (TR)**    trustee.bui@shulmanbastian.com, C115@ecfcbis.com
- **Thomas H Casey**    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Everett L Green**    everett.l.green@usdoj.gov
- **Matthew C. Heyn**    Matthew.Heyn@doj.ca.gov, mcheyn@outlook.com
- **Kelly M Kaufmann**    bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com
- **Rika Kido**    rkido@shulmanbastian.com, avernon@shulmanbastian.com
- **Samuel Kornhauser**    skornhauser@earthlink.net
- **Nancy L Lee**    bknotice@mccarthyholthus.com, nlee@ecf.courtdrive.com
- **Joshua Lichtman**    joshua.lichtman@nortonrosefulbright.com,
  Rhonda.cole@nortonrosefulbright.com
- **Charity J Manee**    cmanee@goeforlaw.com, kmurphy@goeforlaw.com
- **William F McDonald**    wfmcdonald@gmail.com
- **Randall P Mroczynski**    randym@cookseylaw.com
- **Ronak N Patel**    rpatel@rivco.org, dresparza@rivco.org;mdominguez@rivco.org
- **Steven G. Polard**    spolard@ch-law.com, calendar-
  lao@rmkb.com;melissa.tamura@rmkb.com;anthony.arriola@rmkb.com
- **Steven G. Polard**    steven.polard@ropers.com, calendar-
  lao@rmkb.com;melissa.tamura@rmkb.com;anthony.arriola@rmkb.com
- **Jason K Schrader**    jason.K.Schrader@usdoj.gov
- **Anthony Sgherzi**    anthony.sgherzi@doj.ca.gov
- **Leonard M Shulman**    lshulman@shulmanbastian.com
- **United States Trustee (RS)**    ustpregion16.rs.ecf@usdoj.gov
- **Scott S Weltman**    colcaecf@weltman.com
- **Rebecca J Winthrop**    rebecca.winthrop@nortonrosefulbright.com,
  evette.rodriguez@nortonrosefulbright.com
- **Jennifer C Wong**    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com
- **Kristin A Zilberstein**    bknotifications@ghidottiberger.com;gbadmin@ecf.courtdrive.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**

## U.S. MAIL SERVICE LIST

**Judge's Copy**
Hon Wayne Johnson, US Bankruptcy Court, Suite 385, 3420 Twelfth Street, Riverside, CA 92501

**Buyer**
Yokang Zhou and Gullermo Fernandez Castaneda, 8 Serrano Way, Rancho Mirage, CA 92270

**Buyer's Agent/Broker**
Compass, Attn Doug Balog, 74199 El Paseo, Suite 200, Palm Desert, CA 92260

**Trustee's Agent/Broker**
GlassRatner Brokerage Services, Inc., Attn Steven Speier, 19800 MacArthur Boulevard, Suite 820, Irvine, CA 92612

**Trustee's Agent/Broker**
BK Global Real Estate Services, Attn Patrick Butler, 1095 Broken Sound Parkway, N.W., Suite 100, Boca Raton, FL 33487

**Secured Creditor**
Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust, c/o Carrington Mortgage Services, LLC, Attn President or Manager Agent, P.O. Box 3010, Anaheim, CA 92803

**De Castro**
De Castro, West, Chodorow, Mendler, Glickfield & Nass, Inc., Attn Mark L. Share, Vice President, 10960 Wilshire Blvd, Fourteenth Floor, Los Angeles, CA 90024-3881

**Franchise Tax Board**
Franchise Tax Board,  Bankruptcy Section MS A340, PO Box 2952, Sacramento CA 95812-2952

Franchise Tax Board Chief Counsel, c/o General Counsel Section,  P.O. Box 1720, MS: A-260, Rancho Cordova, CA 95741-1720

Xavier Becerra, Attorney General of California, Brian Wesley, Supervising Attorney General, Matthew C. Heyn, Deputy Attorney General, 300 South Spring Street, Suite 1702, Los Angeles, CA 90013

**Tax Collector**
Riverside County Tax Collector, Attn Debra Gomez, Attn Sandy Finley, Deputy Tax Collector, 4080 Lemon St., 4th Floor, Riverside, CA 92501

**Debtor's Spouse**
Melanie Nell Roe,  74-923 Highway 111, #226, Indian Wells, CA 92210

**Attorney for Bighorn Homeowners Association, Inc.**
Fiore Racobs & Powers, Attn Nicole A Lilomaiava, Esq, 6820 Indiana Avenue, Suite 140, Riverside, CA 92506-7202

**CONTINUED ON ATTACHED.**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

## Debtor, Creditors and all other Interested Parties

**DEBTOR**
RUSSEL DENNIS HILES III
44268 SILVER CANYON LANE
PALM DESERT, CA 92260-3075

**UNITED STATES TRUSTEE**
UNITED STATES TRUSTEE (RS)
3801 UNIVERSITY AVENUE, SUITE 720
RIVERSIDE, CA 92501-3255

**RFSN - ATTORNEY FOR BANK OF
AMERICA, N.A. AND CARRINGTON
MORTGAGE SERVICES, LLC, SERVICING
AGENT FOR WILMINGTON SAVINGS FUND
SOCIETY, FSB, AS TRUSTEE OF
STANWICH MORTGAGE LOAN TRUST A,
ITS ASSIGNEES AND/OR SUCCESSORS**
MCCARTHY & HOLTHUS, LLP
1770 FOURTH AVENUE
SAN DIEGO, CA 92101-2607

**CLAIM FILED**
DAIMLER TRUST
C/O BK SERVICING, LLC
PO BOX 131265
ROSEVILLE, MN 55113-0011

**COURT MAILING LIST**
EMPLOYMENT DEVELOPMENT DEPT.
BANKRUPTCY GROUP MIC 92E
P.O. BOX 826880
SACRAMENTO, CA 94280-0001

**COURT MAILING LIST**
FARMERS INSURANCE EXCHANGE
6301 OWENSMOUTH AVENUE
WOODLAND HILLS, CA 91367-2268

**RFSN - ATTORNEY FOR FARMERS
INSURANCE EXCHANGE, CLAIM FILED**
PETER MASON ESQ
JOSHUA LICHTMAN ESQ
REBECCA J. WINTHROP ESQ
NORTON ROSE FULBRIGHT US LLP
555 S. FLOWER STREET
41ST FLOOR
LOS ANGELES, CA 90071-2300

**COURT MAILING LIST**
FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS: A-340
P.O. BOX 2952
SACRAMENTO, CA 95812-2952

**RFSN - ATTORNEY FOR CYNTHIA HILES
CLAIM FILED**
STEVEN G POLARD ESQ
ROPERS MAJESKI KOHN & BENTLEY
445 SOUTH FIGUEROA STREET, SUITE
3000
LOS ANGELES, CA 90071

**COURT MAILING LIST**
WILMINGTON SAVINGS FUND SOCIETY,
FSB, AS TRU
C/O MCCARTHY & HOLTHUS, LLP
1770 FOURTH AVENUE
SAN DIEGO, CA 92101-2607

**COURT MAILING LIST**
RIVERSIDE DIVISION
3420 TWELFTH STREET,
RIVERSIDE, CA 92501-3819

**CLAIM FILED**
AMERICAN EXPRESS CENTURION BANK
C/O BECKET AND LEE LLP
PO BOX 3001
MALVERN  PA 19355-0701

**COURT MAILING LIST**
AMEX
CORRESPONDENCE
PO BOX 981540
EL PASO, TX 79998-1540

**COURT MAILING LIST**
ANTHONY CAPOBIANCO
CAPOBIANCO LAW OFFICES, P.C.
41990 COOK STREET, STE. 2006, BLDG. F
PALM DESERT, CA 92211-6105

**CLAIM FILED**
BIGHORN HOMEOWNERS ASSOCIATION,
INC.
C/O FIORE, RACOBS & POWERS
6820 INDIANA AVE., SUITE 140
RIVERSIDE, CA 92506-4261

**COURT MAILING LIST**
BANK OF AMERICA
P.O. BOX 31785
TAMPA FL 33631-3785

**CLAIM FILED**
BANK OF THE WEST
2527 CAMINO RAMON
SAN RAMON, CA 94583-4213

**COURT MAILING LIST**
BANK OF AMERICA
9000 SOUTHSIDE BLVD., BLDG 700 FILE
JACKSONVILLE, FL 32256-6705

**RFSN - CLAIM FILED**
BANK OF AMERICA NA
PO BOX 31785
TAMPA FL 33631-3785

**RFSN**
BANK OF AMERICA, N.A.
ATTN BANKRUPTCY DEPARTMENT
P.O. BOX 5170
SIMI VALLEY, CA 93062

**COURT MAILING LIST**
BANK OF THE WEST
2527 CAMINO RAMON
PO BOX 5172
SAN RAMON, CA 94583-5172

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**COURT MAILING LIST**
BARCLAYS BANK DELAWARE
PO BOX 8801
WILMINGTON, DE 19899-8801

**COURT MAILING LIST**
BIGHORN HOMEOWNERS ASSN MSC
855
PO BOX 29048
PHOENIX, AZ 85038-9048

**CLAIM FILED**
CENTRAL ELECTRIC COOPERATIVE,
INC.
PO BOX 846
REDMOND, OR 97756-0187

**CLAIM FILED - CLAIM ADDRESS**
CINDY ELLEN HILES
2485 MARYLSHIRE LN
LAKE OSWEGO, OR 97034-4014

**CLAIM FILED**
CRANFILL SUMNER & HARTZOG LLP
5420 WADE PARK BLVD., SUITE 300
RALEIGH, NC 27607-4189

**COURT MAILING LIST**
DE CASTRO WEST, ET AL.
10960 WILSHIRE BLVD., 14TH FL.
LOS ANGELES, CA 90024-3702

**COURT MAILING LIST**
DESCHUTES COUNTY TREASURER
1300 NW WATT ST., #200
BEND, OR 97701

**CLAIM FILED**
FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

**COURT MAILING LIST**
FARMERS INSURANCE COMAPNY, INC.
ATTN: DOREN E. HOHL, AGENT
6301 OWENSMOUTH AVE.
WOODLAND HILLS, CA 91367-2268

**COURT MAILING LIST**
FORD MOTOR CREDIT COMPANY
P O BOX 62180
COLORADO SPRINGS CO 80962-2180

**COURT MAILING LIST**
BIGHORN CLUBHOUSE PROJECT, MSC 614
PO BOX 52163
PHOENIX, AZ 85072-2163

**COURT MAILING LIST**
BIGHORN HOMEOWNERS ASSN.
255 PALOWET
PALM DESERT, CA 92260-7311

**COURT MAILING LIST**
CHASE CARD SERVICES
ATTN: CORRESPONDENCE DEPT
PO BOX 15298
WILMINGTON, DE 19850-5298

**COURT MAILING LIST**
CITI
CITICORP CR SRVS/CENTRALIZED
BANKRUPTCY
PO BOX 790040
S LOUIS, MO 63179-0040

**COURT MAILING LIST**
CRANFILL, SUMNER & HARTZOG
PO BOX 27808
RALEIGH, NC 27611-7808

**COURT MAILING LIST**
DE CASTRO WEST, ET AL.
ATTN: MICHAEL COHEN
10960 WILSHIRE BLVD., 14TH FL.
LOS ANGELES, CA 90024-3702

**CLAIM FILED**
DESCHUTES COUNTY TAX COLLECTOR
PO BOX 7559
BEND, OR 97708

**COURT MAILING LIST**
FARMER'S INSURANCE CO.
ATTN: DOREN E. HOHL, AGENT
6301 OWENSMOUTH AVE.
WOODLAND HILLS, CA 91367-2216

**COURT MAILING LIST**
FARMERS INSURANCE COMPANY, INC.
PO BOX 2450
GRAND RAPIDS, MI 49501-2450

**CLAIM FILED**
FORD MOTOR CREDIT COMPANY LLC
P.O. BOX 552679
DETROIT, MI 48255-2679

**CLAIM FILED**
BIGHORN GOLF CLUB-CLUBHOUSE
C/O JOSEPH A ROMAN
2825 E TAHQUITZ CYN WY
SUITE 202
PALM SPRINGS CA 92262-6995

**RFSN**
CARRINGTON MORTGAGE SERVICES LLC
818 WEST 7TH STREET
LOS ANGELES, CA 90017

**COURT MAILING LIST**
CHRISTOPHER T. BORGESON
2150 LADERA RD.
OJAI, CA 93023-8337

**RFSN - CLAIM FILED**
COUNTY OF SAN DIEGO - TREASURER-TAX
COLLECTOR
DAN MCALLISTER
ATTENTION: BANKRUPTCY DESK
1600 PACIFIC HWY., RM. 162
SAN DIEGO, CA 92101-2474

**COURT MAILING LIST**
DAIMLER TRUST
C/O BK SERVICING, LLC
PO BOX 131265
ROSEVILLE, MN 55113-0011

**COURT MAILING LIST**
DESCHUTES COUNTY ASSESSOR
PO BOX 6005
BEND, OR 97708-6005

**COURT MAILING LIST**
EISENHOWER MEDICAL CENTER
39000 BOB HOPE DRIVE
RANCHO MIRAGE, CA 92270-3221

**COURT MAILING LIST**
FARMERS INSRUANCE COMAPNY, INC.
C/O STOEL RIVES LLP
760 SW NINTH AVE. STE. 3000
PORTLAND, OR 97205-2586

**COURT MAILING LIST**
FARMERS INSURANCE EXCHANGE
6301 OWENSMOUTH AVENUE
WOODLAND HILLS, CA 91367-2268

**COURT MAILING LIST**
FRANCHISE TAX BOARD
ATTN-BANKRUPTCY
PO BOX 2952
SACRAMENTO, CA 95812-2952

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

**COURT MAILING LIST**
FRANCHISE TAX BOARD
PO BOX 942867
SACRAMENTO, CA 94267-0001

**COURT MAILING LIST**
INTERNAL REVENUE SERVICE
225 W. BROADWAY, STE. 200
GLENDALE, CA 91204-1345

**COURT MAILING LIST**
KATZ CASSIDY
11400 W. OLYMPIC BLVD., #1050
LOS ANGELES, CA 90064-1587

**COURT MAILING LIST**
KEYBANK NA
ATTN: RECOVERY PAYMENT PR
4910 TIEDEMAN ROAD (RTG CODE: 08-
01-
BROOKLYN, OH 44144-2338

**RFSN - ATTORNEY FOR CHRISTOPHER
T BORGESON, CLAIM FILED**
SAMUEL KORNHAUSER ESQ
LAW OFFICES OF SAMUEL
KORNHAUSER
155 JACKSON ST STE 1807
SAN FRANCISCO CA 94111-1936

**COURT MAILING LIST**
MB FIN SVCS
36455 CORPORATE DR
FARMINGTON HILLS, MI 48331-3552

**COURT MAILING LIST**
PAYCHEX
C/O CT CORPORATION SYSTEM
818 WEST SEVENTH ST. STE. 930
LOS ANGELES, CA 90017-3476

**COURT MAILING LIST**
RIVERSIDE COUNTY ASSESSOR-CLERK
PO BOX 751
RIVERSIDE, CA 92502-0751

**COURT MAILING LIST**
SAN DIEGO COUNTY TREASURER-TAX
1600 PACIFIC HWY., RM. 162
SAN DIEGO, CA 92101-2477

**COURT MAILING LIST**
FRANCHISE TAX BOARD
VEHICLE REGISTRATION COLLECTIONS
PO BOX 419001
RANCHO CORDOVA, CA 95741-9001

**COURT MAILING LIST**
INTERNAL REVENUE SERVICE
1973 N RULON WHITE BLVD
OGDEN, UT 84201-0021

**COURT MAILING LIST**
KEYBANK
PO BOX 94722
CLEVELAND, OH 44101-4722

**CLAIM FILED**
LOS ANGELES COUNTY TREASURER AND
TAX COLLECT
PO BOX 54110
LOS ANGELES CA 90054-0110

**COURT MAILING LIST**
LOMA LINDA MEDICAL CENTER
11234 ANDERSON ST.
LOMA LINDA, CA 92354-2804

**COURT MAILING LIST**
MERCEDES BENZ FIN'L SVCS
PO BOX 685
ROANOKE, TX 76262-0685

**COURT MAILING LIST**
PUBLIC STORAGE
11259 W. OLYMPIC BLVD.
LOS ANGELES, CA 90064-1720

**CLAIM FILED**
RIVERSIDE COUNTY TAX COLLECTOR
4080 LEMON ST 4TH FL
RIVERSIDE CA 92501-3634

**CLAIM FILED**
CALIFORNIA DEPARTMENT OF TAX AND
FEE ADMINISTRATION
(FUNCTIONAL SUCCESSOR TO BOARD OF
EQUALIZATION 7/1/17)
SPECIAL OPS, MIC:55
PO BOX 942879
SACRAMENTO, CA 94279-0055

**CLAIM FILED**
INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

**COURT MAILING LIST**
INTERNAL REVENUE SERVICE
PO BOX 145566
CINCINNATI, OH 45250-5566

**CLAIM FILED**
KEYBANK N.A.
4910 TIEDEMAN ROAD
BROOKLYN, OHIO 44144-2338

**COURT MAILING LIST**
LAW OFFICES OF RYNEAL & RYNEAL
3890 11TH STREET, STE. 116
RIVERSIDE, CA 92501-3572

**COURT MAILING LIST**
LOS ANGELES COLLECTION SERVICE INC.
2140 WESTWOOD BLVD., STE. 222
LOS ANGELES, CA 90025-6333

**COURT MAILING LIST**
MICHAEL & ASSOCIATES, PC
555 ST. CHARLES DR., STE. 204
THOUSAND OAKS, CA 91360-3992

**COURT MAILING LIST**
PUBLIC STORAGE
72150 FRED WARING DRIVE
PALM DESERT, CA 92260-2750

**COURT MAILING LIST**
RIVERSIDE COUNTY TAX COLLECTOR
BOX 12005
RIVERSIDE, CA 92502-2205

**COURT MAILING LIST**
CALIFORNIA STATE BOARD OF
EQUALIZATION
ACCOUNT REFERENCE GROUP MIC 29
P O BOX 942879
SACRAMENTO CA 94279-0029

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**CLAIM FILED**
SUNTRUST BANK
ATTN: SUPPORT SERVICES
P.O. BOX 85092
RICHMOND, VA 23286-0001

**COURT MAILING LIST**
SUNTRUST MORTGAGE/CC 5
ATTN:BANKRUPTCY DEPT
1001 SEMMES AVE VA-WMRK-7952
RICHMOND, VA 23224-2245

**RFSN - ATTORNEYS FOR BANK OF
AMERICA NA**
TIFFANY & BOSCO, P.A.

1230 COLUMBIA STREET
SUITE 680
SAN DIEGO, CA 92101

**COURT MAILING LIST**
VCA RANCHO MIRAGE ANIMAL
HOSPITAL
71-075 HWY. 111
RANCHO MIRAGE, CA 92270-4122

**CLAIM FILED**
VERITEXT CENTURY REPORTERS
20 CORPORATE PARK STE 350
IRVINE CA 92606-5190

**CLAIM FILED**
WILMINGTON SAVINGS FUND SOCIETY,
FSB
C/O CARRINGTON MORTGAGE SERVICES,
LLC
1600 SOUTH DOUGLASS ROAD, SUITE 200-
A
ANAHEIM, CA 92806-5948

**COURT MAILING LIST**
KATZ CASSIDY
11400 W. OLYMPIC BLVD SUITE 1050
LOS ANGELES, CA 90064-1587

**COURT MAILING LIST**
A. LAVAR TAYLOR LLP
LAVAR TAYLOR ESQ
3 HUTTON CENTER DRIVE SUITE 500
SANTA ANA, CA 92707-8711

**COURT MAILING LIST**
LAW OFFICES OF WM. A. BROWN, JR.
601 WEST 5TH STREET, 8TH FLOOR
LOS ANGELES, CA 90071

**CLAIM FILED - NOTICE ADDRESS**
VERIZON BY AMERICAN INFOSOURCE
LP AS AGENT
4515 N SANTA FE AVE
OKLAHOMA CITY, OK 73118

**CLAIM FILED - PAYMENT ADDRESS**
VERIZON BY AMERICAN INFOSOURCE LP
AS AGENT
PO BOX 248838
OKLAHOMA CITY, OK 73124-8838

**COURT MAILING LIST**
GLASSRATNER BROKERAGE SERVICES
INC.
19800 MACARTHUR BLVD SUITE 820
IRVINE, CA 92612-2427

**TRUSTEE'S ACCOUNTANT**
KARL T. ANDERSON
340 S FARRELL DRIVE, SUITE A210
PALM SPRINGS, CA 92262-7932

RETURNED MAIL

**COURT MAILING LIST**
COURTESY NEF
**UNDELIVERABLE**

**COURT MAILING LIST**
CYNTHIA ELLEN HILES
**UNDELIVERABLE**

**COURT MAILING LIST**
CHRISTOPHER T BORGESON
**UNDELIVERABLE**

**COURT MAILING LIST**
ATTY OF HILES RE FARMERS &
GORGESON
**UNDELIVERABLE**

**COURT MAILING LIST**
CHRISTOPHER T. BORGESON
155 JACKSON ST STE 1807
SAN FRANCISCO CA 94111-1936
**DUPLICATE**

**COURT MAILING LIST**
FARMERS INSURANCE EXCHANGE
C/O NORTON ROSE FULBRIGHT
ATTN: PETER MASON & JOSHUA
LICHTMAN
555 SOURTH FLOWER STREET
LOS ANGELES, CA 90071
**DUPLICATE**

**COURT MAILING LIST**
CHRISTOPHER T BORGESON
LAW OFFICES OF SAMUEL KORNHAUSER
155 JACKSON ST STE 1807
SAN FRANCISCO CA 94111-1936
**DUPLICATE**

**COURT MAILING LIST**
INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY
OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346
**DUPLICATE**

**COURT MAILING LIST**
INTERNAL REVENUE SERVICE
PO BOX 7346
PHILADELPHIA, PA 19101-7346
**DUPLICATE**

**COURT MAILING LIST**
CALIFORNIA STATE BOARD OF
EQUALIZATION
ACCOUNT REFERENCE GROUP MIC 29
P O BOX 942879
SACRAMENTO CA 94279-0029
**DUPLICATE**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**COURT MAILING LIST**
CALIFORNIA STATE BOARD OF
EQUALIZATION
ACCOUNT REFERENCE GROUP MIC 29
P O BOX 942879
SACRAMENTO CA 94279-0029
**SEE PROOF OF CLAIM ADDRESS**

**COURT MAILING LIST**
PONDEROSA PROPERTIES, LLC
221 S ASH
SISTERS, OR 97759-1080
**RETURNED 1/26/2018, 2/20/2018,
UNDELIVERABLE**

**COURT MAILING LIST**
MERCEDES BENZ FINANCIAL SERVICES
PO BOX 17466
BALTIMORE, MD 21297-1466
**RETURNED 2/1/2018, 3, 5, 2018,
UNDELIVERABLE**

**CLAIM FILED**
CINDY ELLEN HILES
13327 ATWATER LANE
LAKE OSWEGO, OR 97034-2127
**FORWARD TIME EXPIRE RTS, SEE
ADDRESS LISTED ON PROOF OF CLAIM**

**COURT MAILING LIST**
ANTHONY CAPOBIANCO
CAPOBIANCO LAW OFFICES, P.C.
41990 COOK STREET, BLDG. F STE. 200
PALM DESERT, CA 92211-6105
**RETURNED 3-18-2019,
UNDELIVERABLE, SEE NEW
CORRECTED FROM CA STATE BAR**

**RFSN - ATTORNEY FOR CYNTHIA HILES
CLAIM FILED**
STEVEN G POLARD ESQ
COLEMAN & HOROWITZ, LLP
1880 CENTURY PARK E, STE 404,
LOS ANGELES, CA 90067-1604
**SEE NEW ADDRESS PER DOCKET 442**

**COURT MAILING LIST**
ALLIED PUBLIC STORAGE
11259 W . OLYMPIC BLVD
WA 99064
**UNDELIVERABLE**

**COURT MAILING LIST**
PORSCHE FINANCIAL SRVC
980 HAMMOND DR
ATLANTA, GA 30328-8186
**RETURNED 1/29/2018, UNDELIVERABLE**

**COURT MAILING LIST**
MASTER CARD
837 3RD ST.
SANTA MONICA, CA 90403-1159
**RETURNED 2/12/2018, 2/20/2018,
UNDELIVERABLE**

**COURT MAILING LIST**
BANK OF AMERICA
NC4-105-03-14
PO BOX 26012
GREENSBORO, NC 27420-6012
**FORWARD TIME EXPIRE RTS**

**DEBTOR**
RUSSEL DENNIS HILES III
155 METATE PLACE
PALM DESERT, CA 92260-7334
**RETURNED 6/3/19. SEE NEW ADDRESS
PER US POSTAL SERVICE**

**COURT MAILING LIST**
LAW OFFICES OF WM. A. BROWN, JR.
865 FIGUEROA ST., #2640
LOS ANGELES, CA 90017-5472
**RETURNED 1/24/2018, UNDELIVERABLE,
SEE NEW ADDRESS FROM CA STATE BAR**

**COURT MAILING LIST**
CONCIERGE AUCTIONS, LLC
405 LEXINGTON AVENUE
NEW YORK, NY 10174-0002
**RETURNED 1/30/2018, UNDELIVERABLE**

**RFSN - ATTORNEY FOR CYNTHIA HILES**
STEVEN G POLARD ESQ
DAVIS WRIGHT TREMAINE LLP
865 S FIGUEROA STREET, SUITE 2400
LOS ANGELES, CA 90017-2566
**SEE PROOF OF CLAIM ADDRESS**

**RFSN - ATTORNEY FOR CYNTHIA HILES
CLAIM FILED**
STEVEN G POLARD ESQ
EISNER JAFFE APC
9601 WILSHIRE BLVD SUITE 700
BEVERLY HILLS, CA 90210
**RETURNED 3-18-2019, UNDELIVERABLE,
SEE NEW ADDRESS FROM CA STATE BAR**

**COURT MAILING LIST**
GLASSRATNER BROKERAGE SERVICES
INC.
19800 MACARTHUR BLVD SUITE 820
IRVINE, CA 92612-2427
**DUPLICATE**

---

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**